UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN A. KAMEN                      )
                                    )     Case No. 1:06CV01063 (RMC)
            Plaintiff,              )
                                    )
      v.                            )
                                    )
INTERNATIONAL BROTHERHOOD           )
OF ELECTRICAL WORKERS, AFL-CIO and  )
EDWIN D. HILL, an individual,       )
                                    )
            Defendants.             )
_____ )

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COUNTS II, III
AND MOST OF COUNT IV OF THE AMENDED COMPLAINT

INTRODUCTION

Count I of the Amended Complaint in the above-entitled action alleges that the
International Brotherhood of Electrical Workers, AFL-CIO (hereafter "IBEW"), an
unincorporated labor organization, discriminated against plaintiff Steven A. Kamen on the basis
of his disability in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. 12101 *et
seq.* (hereafter "ADA"). Count II of the Amended Complaint alleges that defendant IBEW and
Edwin D. Hill, IBEW International President, discriminated against plaintiff Kamen because of
his disability in violation of the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951 *et
seq.* (hereafter "PHRA"). Count III of the Amended Complaint alleges defendants IBEW and
Hill terminated plaintiff Kamen's employment by the IBEW "in order to interfere with his
continuing receipt of medical and other benefits included in Defendant's employee welfare
benefit plan" in violation of the Employee Retirement Income Security Act (hereafter "ERISA").
In addition, Count IV of the Amended Complaint alleges that defendants IBEW and Hill

Rights Act of 1977, D.C. CODE ANN. § 2-1401.01 *et seq.* (hereafter "DCHRA"). Finally, Count V of the Amended Complaint alleges that defendant Hill tortiously interfered with plaintiff Kamen's business relations with the IBEW resulting in termination of his employment.

## STATEMENT OF THE FACTS

The IBEW hired plaintiff Kamen as an International Representative on or about July 1, 1997. Amended Complaint at ¶ 16. The IBEW subsequently promoted plaintiff Kamen to the position of Senior International Representative. *Id.*

Plaintiff Kamen alleges that he became ill and required hospitalization on or about February 20, 2004. *Id.* at ¶ 19. Plaintiff further alleges that, during his hospitalization, doctors concluded that he has contracted the human immunodeficiency virus (HIV). *Id.* at ¶ 20. Plaintiff Kamen also claims that defendants IBEW and Hill knew about his diagnosis shortly after his physicians informed him that he had contracted HIV. *Id.* at ¶ 21. In addition, plaintiff Kamen alleges that he is homosexual, and that defendants IBEW and Hill became aware of his sexual preference at or about the same time that they became aware that he was HIV-positive. *Id.* at ¶¶ 22 & 23.

Plaintiff Kamen also alleges that he returned to work for the IBEW on or about May 1, 2004. *Id.* at ¶ 28. He claims that he was capable of performing the essential functions of his position as a Senior International Representative when he returned to work from his medical leave, with or without a reasonable accommodation. *Id.* at ¶ 32. However, plaintiff alleges that he was denied training opportunities, was not permitted to assist at manufacturing conferences, was never given back duties he had been assigned prior to taking a medical leave, and was not promoted to a vacant position at the IBEW Headquarters Office in Washington, D.C. even though he was the most qualified candidate for the position. *Id.* at ¶ 33. Subsequently, plaintiff

Kamen alleges that defendants IBEW and Hill terminated his employment on December 8, 2004. *Id*. at ¶ 36.

<u>EEOC/PHRC Administrative Complaint Process</u>

Plaintiff Kamen's legal counsel, Joseph M. Chivers, sent a letter dated April 24, 2005 to Ronald Dean, Intake Supervisor, Equal Employment Opportunity Commission, Pittsburgh, Pennsylvania. Exhibit No. 1 attached to Declaration of Terry R. Yellig in Support of Motion to Dismiss Counts II and IV of the Amended Complaint (hereafter "Yellig Dec.") at ¶ 3. Attorney Chivers enclosed copies of a one page document entitled "GENERAL INFORMATION QUESTIONNAIRE," a 12-page document entitled ""GENERAL INTAKE QUESTIONNAIRE," and a three-page document entitled "WITNESS INFORMATION" with his letter to Mr. Dean. *Id.* at ¶ 4. Each of these enclosures is hand-written and contains information related to plaintiff Steven A. Kamen's allegations that the IBEW and Edwin D. Hill discriminated against him because of his physical disabilities. *Id.*

Exhibit No. 1 was not provided to defendant IBEW or any officer, agent or representative of the IBEW until a copy was transmitted by facsimile to the undersigned by plaintiff Kamen's legal counsel, Mr. Chivers, at approximately 3:00 p.m. on August 10, 2006, after defendants IBEW and Hill filed a motion to dismiss a part of the initial Complaint filed in the above-entitled action. Yellig Dec. at ¶ 5.

Plaintiff Kamen subsequently filed a charge of discrimination with the EEOC in the Pittsburgh, Pennsylvania area office on July 6, 2005, which alleged that the IBEW discriminated against him because of his "medical conditions, and/or my disabilities, and/or my perceived disabilities, in violation of the Americans with Disabilities Act of 1990. . . ." Exhibit No. 2 attached to the Yellig Declaration. The July 6, 2005 EEOC charge further alleged that defendant

Hill informed plaintiff Kamen on December 8, 2004 that he "was being let go because [he] had been delinquent in filing weekly reports, the expense reports, and several other assignments." *Id.*

The July 6, 2005 EEOC charge was cross-filed the same day with the Pennsylvania Human Relations Commission ("PHRC"). *Ibid.* Subsequently, defendant IBEW received a letter dated September 27, 2005 from Ms. Peggy J. Raynock, PHRC Director of Compliance, which stated that the EEOC forwarded the July 6, 2005 charge to the PHRC in accordance with its Work Sharing Agreement with the PHRA. Exhibit No. 3 attached to the Yellig Declaration. Ms. Raynock explained that, pursuant to a EEOC/PHRC Work Sharing Agreement, the PHRC waived the opportunity to investigate the July 6, 2005 EEOC charge back to the EEOC. *Id.* Nevertheless, Ms. Raynock stated that the PHRC "reserve[d] the right to docket, serve and require an answer at some future date. Should PHRC elect to docket the EEOC charge as a PHRC complaint, PHRC will serve the complaint and an answer will be required." *Id.* Finally, she explained that if the case was still pending after one year, the PHRC would notify plaintiff Kamen of his right to file in the appropriate court of common pleas. *Ibid.*[1]

---

[1]    Section 10(c) of the PHRA, 43 Pa. Stat. Ann. § 962(c), states:

(c)(1) In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. ***If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.***

(2) An action under this subsection shall be filed within two years after the date of notice from the Commission closing the complaint. Any complaint so filed shall be served on the Commission at the time the complaint is filed in court. The Commission shall notify the complainant of this requirement.

(Emphasis added.)

Subsequently, the EEOC issued a right to sue letter to plaintiff Kamen on March 15, 2006 pursuant to his request that the EEOC cease processing his July 6, 2005 charge of discrimination. Exhibit No. 4 attached to the Yellig Declaration.

DCOHR Administrative Complaint Process

Plaintiff Kamen also filed an administrative complaint of discrimination with the District of Columbia Office of Human Rights (hereafter "DCOHR") against defendants IBEW and Hill on May 4, 2005, which DCOHR date-stamped as received on May 9, 2005. Exhibit No. 5 attached to the Yellig Declaration. The May 4, 2005 DCOHR administrative complaint asserted that the IBEW discriminated against plaintiff Kamen because he is disabled by HIV infection and because of his sexual orientation. Specifically, the May 3, 2005 DCOHR administrative complaint alleged that the IBEW denied his requests to attend conferences, subjected him to anti-gay remarks, jokes and comments, denied his request for promotion to the position of Director of the IBEW Broadcasting Department for which he alleges he was the only qualified candidate, and terminated his employment because he is HIV positive and a homosexual. *Id.*

Plaintiff Kamen filed a second administrative complaint of discrimination with DCOHR dated March 10, 2006, which alleged that the IBEW denied him training opportunities, refused to permit him to assist at manufacturing conferences, denied a promotion for which he claimed to be the only qualified applicant, never gave back the duties he was assigned to perform before he became ill and was absent from work on sick leave in February 2004; and terminated his employment as an IBEW Senior International Representative because of his disabling HIV infection and his sexual orientation. Exhibit No. 6 attached to the Yellig Declaration. Subsequently, plaintiff Kamen filed a revised administrative complaint with the DCOHR dated April 24, 2006, which asserted that the IBEW's alleged discriminatory actions were based

exclusively on his sexual orientation, not on his disability, as he originally claimed in his March 10, 2006 administrative complaint. Exhibit No. 7 attached to the Yellig Declaration.

Thereafter, plaintiff Kamen, through his attorney, asked the DCOHR in a letter dated May 8, 2006 to cancel mediation of the allegations in his revised administrative complaint scheduled two days hence. Exhibit No. 8 attached to the Yellig Declaration. Plaintiff Kamen's attorney explained in his May 8, 2006 letter to the DCOHR that his client no longer wished to participate in mediation of his administrative complaint because he had recently received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") and that he intended to file a lawsuit against the IBEW alleging that his client was the victim of discriminatory treatment by the IBEW because of his disability and sexual orientation. *Id.*

## STATEMENT OF THE CASE

Plaintiff Kamen filed the initial Complaint in this case on June 6, 2006. The Court granted defendants' Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint on Minute Order issued on July 12, 2006. Thereafter, defendants filed a Motion to Dismiss for Lack of Jurisdiction on July 21, 2006. Plaintiff Kamen then filed a Motion for Leave to File and Amended Complaint on August 14, 2006. The issued a Minute Order on August 21, 2006, which permitted plaintiff Kamen to file an Amended Complaint as a matter of right pursuant to Rule 15(a), Fed. R. Civ. P. Next, the Court issued a Minute Order on August 22, 2006, which denied defendants' Motion to Dismiss as moot.

Defendants IBEW and Hill now move to dismiss Counts II, III and most of the claims in Count IV of the Amended Complaint, which are based on the PHRA, ERISA, and the DCHRA, respectively, because they are time-barred.

**STANDARD FOR DISMISSAL OF CLAIMS UNDER RULE 12(b)(1), FED. R. CIV. P.**

Under Rule 12(b)(1), Fed. R. Civ. P., the plaintiff "bears the burden of proving by a preponderance of the evidence that the Court possesses jurisdiction over the subject matter of his claims." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998); *see also Carter v. Washington Post*, No. 05-1712, 2006 U.S. Dist. LEXIS 29424, *10 (D.D.C. 2006); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002).

Although the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)*, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), the "court need not accept legal conclusions as true." *Sierra Club v. Mainella*, No. 04-2012, 2005 U.S. Dist LEXIS 18911, *14 (D.D.C. 2005) (citing *Boyd v. O'Neill*, 273 F. Supp. 2d 92, 95 (D.D.C. 2003)). Furthermore, because the plaintiff has the burden of proof to establish jurisdiction, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F. Supp. 2d at 13-14 (citation omitted) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (2d ed. 1990).

Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case. *See Coalition for Underground Expansion v. Mineta*, 357 U.S. App. D.C. 72, 333 F.3d 193, 198 (D.C. Cir. 2003); *EEOC v. St.*

*Francis Xavier Parochial School*, 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 n. 3 (D.C. Cir.

1997); *Hohri v. United States*, 251 U.S. App. D.C. 145, 782 F.2d 227, 241 (D.C. Cir. 1986).

Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts

evidenced in the record." *Coalition for Underground Expansion*, 333 F.3d at 198 (quoting

*Herbert v. Nat'l Acad. of Sciences,* 297 U.S. App. D.C. 406, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Accordingly, the court may undertake an independent inquiry to assure itself of its own subject

matter jurisdiction without triggering unnecessary discovery or converting the motion to one for

summary judgment pursuant to Fed. R. Civ. P. 56. *Haase v. Sessions*, 266 U.S. App. D.C. 325,

835 F.2d 902, 907-08 (D.C. Cir. 1987).

## ARGUMENT

### PLAINTIFF'S CLAIMS UNDER THE PHRA, THE DCHRA AND ERISA ARE TIME-BARRED.

#### I.    Plaintiff's Claim of Disability Discrimination under the PHRA is Time-Barred.

Count II of the Amended Complaint alleges that defendants IBEW and Hill terminated

plaintiff Kamen's employment in violation of the PHRA's prohibition against discrimination

based on an individual's disability. Amended Complaint ¶¶ 68 - 72. In order to sue under the

PHRA, however, a plaintiff must first file an administrative complaint with the PHRC within 180

days of the alleged act of discrimination. 43 PA. STAT. ANN. §§ 959(a)-(h). *Woodson v. Scott

Paper Co.*, 109 F.3d 913, 925 (3d. Cir. 1997).

The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly

held that "persons with claims that are cognizable under the Human Relations Act must avail

themselves of the administrative process of the Commission or be barred from the judicial

remedies authorized in Section 12(c) of the Act." *Id.* (citing *Vincent v. Fuller Co.*, 616 A.2d 969,

974 (Pa. 1992); *Fye v. Central Transp. Inc.*, 409 A.2d 2 (Pa. 1979); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917 (Pa. 1989); *Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir. 1971) ("Since plaintiff failed to file a charge with the respective Commissions within the appropriate time periods, he is now foreclosed from pursuing the remedies provided by the Acts.")).

Moreover, the Pennsylvania Supreme Court held in *Vincent v. Fuller Co.* that failure to file a timely administrative complaint with the PHRC precludes seeking judicial relief under the PHRA. 616 A.2d at 974. Specifically, the Court stated:

> By necessary implication, one who files a complaint with the Commission that is later found to be untimely cannot be considered to have used the administrative procedures provided in the Act. To hold otherwise would be to permit any complainant to bypass the administrative mechanism established by the legislature by merely allowing the Act's limitation period to pass, filing a complaint that would inevitably be dismissed, and then commencing an action in court.

*Id.*

In this case, plaintiff Kamen filed with the EEOC in Pittsburgh, Pennsylvania a charge of employment discrimination based on his disability on July 6, 2005. Pursuant to a Work Sharing Agreement with the PHRC, EEOC transmitted plaintiff Kamen's July 6, 2005 charge of disability discrimination to the PHRC.[2] As such, plaintiff Kamen filed his

---

[2]     The Pennsylvania courts have ruled that, if the EEOC transmits the claim to the PHRC, the filing requirement of the PHRA is satisfied. The Pennsylvania Superior Court has held that the verified complaint filing requirement of the PHRA is satisfied if the EEOC actually transmits the EEOC charge to the PHRC. See *Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431 (Pa. Super. 1980). In that case, the Superior Court noted that the EEOC charge satisfied the pleading requirements of 43 PA. CONS. STAT. § 959, and moreover, that the PHRC treated the EEOC charge as capable of triggering PHRC action since it notified the EEOC that it was terminating its investigation of plaintiff's complaint. *Id.* at 452-53. The Pennsylvania Supreme Court has cited *Lukus*, in *dicta*, for the proposition that the PHRA filing requirement is satisfied if the EEOC forwards a charge to the PHRC. *Vincent v. Fuller Co.*, 616 A.2d at 971. Hence, there is no

administrative complaint 210 days after the defendant IBEW terminated his employment on December 8, 2004. Amended Complaint at ¶ 36.

The Amended Complaint alleges for the first time that plaintiff Kamen filed administrative complaints with the EEOC and the PHRA on April 26, 2005, which would be within 180 days of the alleged act of discrimination. The Amended Complaint offers no additional information regarding this allegation. However, subsequent to filing defendants' Motion to Dismiss, defendants' counsel received from plaintiff's counsel a copy of an EEOC Intake Questionnaire and Supporting Documents completed by plaintiff Kamen and submitted to the EEOC Office in Pittsburgh, Pennsylvania. A cover letter from plaintiff's counsel dated April 26, 2005 accompanied this information. *See* Exhibit No. 1 attached to the Yellig Declaration.

The April 26, 2005 letter from plaintiff's counsel asked the EEOC Intake Supervisor to treat the Intake Questionnaire and Supporting Documents "as plaintiff Kamen's verified Charge and Complaint of Discrimination (disability)." *Id.* Plaintiff Kamen apparently contends that submission to the EEOC of an Intake Questionnaire and Supporting Documents on April 26, 2005 satisfied the PHRA 180-day statute of limitations.

Nonetheless, as already stated hereinabove, in order to sue under the PHRA, a plaintiff must first file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. 43 PA. STAT. ANN. §§ 959(a), 962. Failure to file a timely administrative complaint with the PHRC effectively precludes complaining parties from judicial relief under the PHRA. *Woodson v. Scott Paper Co.*, 109 F.3d at 925. The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process

---

question that plaintiff Kamen's administrative complaint was filed with the PHRC, *albeit* 30 days beyond the applicable statute of limitations.

of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." *Id.* (quoting *Vincent v. Fuller Co.*, 616 A.2d at 974 (citing *Fye v. Central Transp. Inc.*, 487 Pa. 137, 409 A.2d 2 (Pa. 1979); *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (Pa. 1989); *Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir. 1971) ("Since plaintiff failed to file a charge with the respective Commissions within the appropriate time periods, he is now foreclosed from pursuing the remedies provided by the Acts."))).

In addition, the PHRA states:

> Any person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission *a verified complaint*, in writing, which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of, and *which shall set forth the particulars thereof and contain such other information as may be required by the Commission.* Commission representatives shall not modify the substance of the complaint.

43 PA. STAT. ANN. § 959(a) (emphasis added).

In *Murphy v. Commonwealth of Pennsylvania*, 486 A.2d 388, 392 (Pa.), *appeal dismissed sub. nom.* 486 U.S. 1132 (1985), the Pennsylvania Supreme Court held that a filing which does not comply with the strictures of Section 959(a) of the PHRA "improperly invokes the [PHRC's] jurisdiction and is in fact a nullity." Thus, the court held in *Murphy* that a complaint filed in 1974 against the Crown Cork and Seal Co. by the PHRC, *i.e.* a "Commissioner's Complaint," several years after the alleged discrimination occurred, was time-barred under Section 959(a) of the PHRA even though it was filed in order to cure procedural defects in an otherwise timely Commissioner's Complaint originally filed in 1970 against the Company. Specifically, the court explained:

> Firstly, it is clear that the original complaint, being substantially similar to the one of which we disapproved in [*Pennsylvania Human Relations Commn. U.S. Steel Corp.*, 325 A.2d 910 (Pa. 1974)] was defective and appellants do not seriously contend otherwise. Secondly, it is equally clear that the power of the

Human Relations Commission results from the legislature's delegation of such power. As such the limits of that power must be strictly construed.

By statute the jurisdiction of the Human Relations Commission may be invoked by filing a verified complaint "which shall set forth the particulars" of the discriminatory practice complained of. 43 P.S. § 959. *See U.S. Steel, supra.* A filing which does not comply with these strictures improperly invokes the Commission's jurisdiction, and is in fact a nullity.

Appellants have argued that the original pleading sufficiently put the Company and Union on notice, and like a praecipe for a writ of summons, should be sufficient to toll the statute of limitation. We find no merit in this argument. As stated above, proceedings before the Human Relations Commission are strictly governed by the statute devised by our legislature. They are wholly distinct from proceedings pursuant to the Rules of Civil Procedure, and decisions thereunder are not dispositive of proceedings before the Commission.

Since the 1970 complaint was defective, the Commission was without jurisdiction to rule on the merits of this case until the properly pleaded "Amended Complaint," and thus we find no merit in appellant's tolling argument. Similarly we dismiss their contention that the second pleading corrected the first, since the "Amended Complaint" could not properly be construed to convey *ex post facto* jurisdiction for a period beyond the statutory limit.

*Murphy*, 486 A.2d at 392 (citations omitted).

Subsequently, in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*, 562 A.2d 313 (Pa. 1989), the court considered the issue of whether a verified complaint, filed beyond the PHRA statute of limitations period (at that time ninety days), was sufficient to invoke the PHRC's jurisdiction when the complainant had timely filed a nonverified PHRC questionnaire alleging impermissible race discrimination. Specifically, in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*, the PHRC received a completed Questionnaire from a charging party, which alleged that the defendant School District had discriminated against her son because of his race. The EEOC received the Questionnaire within the 90-day statutory time limit. 562 A.2d at 314. Subsequently, the charging party filed a verified complaint with the PHRC, which

contained the same allegations set forth in the earlier Questionnaire. *Id.* Nonetheless, the charging party filed the verified complaint well beyond the statutory time limit. *Ibid.*

A PHRC hearing officer denied the School District's motion to dismiss the complaint as untimely filed, because he held that the Questionnaire was an unverified complaint, the lack of verification of which was subsequently "corrected" within a reasonable time by the filing of a verified complaint, albeit outside the statutory time limit. *Ibid.* Therefore, the PHRC hearing officer deemed the complaint timely filed since the EEOC received the Questionnaire within 90 days of the last possible incident of alleged discrimination. *Ibid.* The defendant School District obtained review of the hearing officer's ruling by declining to comply with the PHRC's subsequent subpoena. *Ibid.* The Pennsylvania Commonwealth Court rejected the PHRC's reasoning and denied its petition for enforcement of the subpoena. *Ibid.* On appeal, the timeliness issue equally divided the Pennsylvania Supreme Court. As a result, the Pennsylvania Supreme Court affirmed the lower court's decision. 562 A.2d at 317.

The Opinion in Support of Affirmance in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*, citing *Murphy*, 486 A.2d at 392, reasoned:

> Although we isolated the particularity requirement of the statute because it was relevant to the facts in *Murphy*, the same reasoning applies fully to the verification requirement found in the same sentence of the [PHRA]. Whatever else the Commission's regulations may do, they cannot enlarge the statutory period for filing a verified complaint. As in *Murphy*, I reject "the contention that the second pleading corrected the first, since [it] could not properly be construed to convey *ex post facto* jurisdiction beyond the statutory limit." *Id.*

562 A.2d at 314-15. Thus, the Opinion in Support of Affirmance in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* held that neither a PHRC regulation nor a rule of court could alter the verification requirement because it is a requirement created by the Pennsylvania legislature.

- 13 -

Those justices in favor of reversal of the lower court in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* reasoned in the Opinion in Support of Reversal that the verification requirement was a technical rule, which was more a matter of form than substance, and, as such, the subsequent filing of a verified complaint cured the jurisdictional defect. 562 A.2d at 315-17.

Over the years, the Pennsylvania Supreme Court has not resolved the split opinion in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*. In *Vincent v. Fuller Co.*, 616 A.2d 969 (Pa. 1992), the plaintiff sued his former employer for firing him because of his age in violation of state and federal law. Plaintiff had filed a verified charge of discrimination with the EEOC more than 90 days after the Philadelphia School District eliminated his position and he was laid-off. 616 A.2d at 970. The EEOC promptly forwarded the charge to the PHRC. *Id.* Subsequently, the EEOC notified the plaintiff that it would not proceed further with his charge of age discrimination. *Id.* Thereafter, plaintiff's attorney sent a letter to the PHRC accompanied by a copy of his original EEOC Charge of Discrimination, which he called a "Complaint," within 90 days of the date on which plaintiff's lay-off became a final termination, but nearly two years after his employer notified him it no longer needed his services. *Ibid.* Plaintiff then filed a verified complaint with the PHRC more than 90 days after his lay-off became a final termination, which alleged "that on or about or until [the date on which his lay-off became a final termination two years after he was laid-off] the Respondent [his former employer] dismissed him," and further alleged that he was "fully qualified for positions which have been filed . . . during the two (2) year period." *Ibid.*

The trial court dismissed the plaintiff's state age discrimination claim as time-barred because the charge of discrimination was filed with the EEOC more than 90 days after the date

of his layoff. *Vincent v. Fuller Co.*, 6 Pa. Dist. & Cnty.4th 585, 1990 Pa. D. & C. LEXIS 181 (Court of Common Pleas, Civil Division, of Northampton County, 1990). On appeal, the Pennsylvania Superior Court acknowledged that the Pennsylvania Supreme Court clearly held in *Murphy* that a complaint filed with the PHRC that does not set forth the particulars concerning a discriminatory practice could not operate to invoke jurisdiction. *Vincent v. Fuller Co.*, 582 A.2d 1367, 1372 (Pa. Super. Ct. 1990). The court observed that there was no precedential guidance on the question "whether unverified information submitted . . . with a copy of a previously verified complaint can operate to invoke [the PHRC's] jurisdiction," because the Pennsylvania Supreme Court was equally divided in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia. Id.* Unlike the court of common pleas, the "[c]ogent remarks in the opinion in support of reversal" persuaded the Pennsylvania Superior Court to treat the verification provision of the statute as more of a technicality than a requirement that the complaint set forth the particulars of the discriminatory practice complained of, and found it would elevate form over substance to deny the PHRC jurisdiction over a complaint such as the one in that case. *Ibid.* The court supported its conclusion with comparisons to cases treating the significance of verification in civil practice and procedure, *e.g., In re Johnson*, 502 A.2d 142 (Pa. 1985), and in practice before the EEOC, *e.g., Weeks v. Southern Bell Telephone and Telegraph*, 408 F.2d 228 (5th Cir.1969). *Ibid.*

On appeal, the Pennsylvania Supreme Court reversed the holding of the Pennsylvania Superior Court in *Vincent v. Fuller Co.*, 616 A.2d 969 (Pa. 1992), that the former employer's failure to recall the plaintiff during the two year period following his layoff and thus automatic termination of his employment at the end of that period, constituted an action separate from the layoff itself for purposes of a claim of discrimination that occurred within the 90-day statute of limitations period immediately preceding plaintiff's later submission to the PHRC. The Supreme

Court relied on numerous federal court decisions that held "the limitations period is not extended merely because the effects of an alleged violation continue to be experienced by the employee and thus the mere refusal to recall or rehire an employee does not convert an initial layoff to a continuing violation." 616 A.2d at 972 (citations omitted). Thus, the Pennsylvania Supreme Court stated in *Vincent v. Fuller Co.* that it "need not resolve the question that divided the Court in [*Commonwealth of Pennsylvania v. School Dist. of Philadelphia*] to determine that [plaintiff's later submission to the PHRC] was untimely." 616 A.2d at 972. There has been no further comment by the Pennsylvania courts about this issue in the intervening years since the court's decision in *Vincent v. Fuller Co.*[3/]

---

[3/]       On the other hand, the U.S. District Court for the Eastern District of Pennsylvania has on several occasions addressed the issue of whether technical defects in an initial pleading are fatal and incurable by untimely amendment under the PHRA. Most recently, in *Allen v. City of Philadelphia*, C.A. No. 05-2755, 2006 U.S. Dist. LEXIS 9048, *2 (E.D. Pa., Mar. 8, 2006), the court rejected plaintiff's contention that the Charge of Discrimination, which he filed with the EEOC that was cross-filed with the PHRC beyond the 180-day statutory time limit, related back to a Charge Questionnaire he submitted earlier to the EEOC within 180 days after he was discharged from employment by the City. The court said the plaintiff's argument "is not supported by statute or case law." *Cf. O'Neil v. Montgomery County Community College*, C.A. No. 05-5169, 2006 U.S. Dist. LEXIS 39059 (E.D. Pa., June 12, 2006) (where plaintiff never filed a verified complaint with either the EEOC or the PHRC, submission of a questionnaire to the PHRC did not toll 180-day statute of limitations); *but see Valentin v. American Red Cross, Penn Jersey Region*, C.A. No. 01-6609, 2003 U.S. Dist. LEXIS 7612 (E.D. Pa., Apr. 11, 2003) (predicted that the current Pennsylvania Supreme Court would adopt the Opinion in Support of Reversal in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* and permit complainants to cure any defects in their otherwise timely administrative complaints filed with the PHRC even after expiration of the 180-day statute of limitations); *Hayman v. WYXR-FM*, C.A. No. 91-6444, 1992 U.S. Dist. LEXIS 12501, 16-17 (E.D. Pa., Aug. 21, 1992) (predicted that the Pennsylvania Supreme Court would adopt the Opinion in Support of Reversal in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* and permit complainants to cure any defects in their otherwise timely administrative complaints filed with the PHRC even after expiration of the 180-day statute of limitations relying on Pennsylvania Superior Court opinion in *Vincent v. Fuller Co.* (subsequently reversed by the Pennsylvania Supreme Court), but held that plaintiff in that case failed properly to proceed under the PHRA and concluded, therefore, that she was not entitled to seek judicial relief under the PHRA. *Cf. Vuong v. J.C. Penney*, C.A. No. 04-3940, 2005 U.S. Dist. LEXIS 19150 (E.D. Pa., June 1, 2005) (court "ascribed to the reasoning" in *Valentin* and *Hayman* even though it acknowledged that *Commonwealth of*

As a result, the Pennsylvania Supreme Court split decision, which affirmed the Pennsylvania Commonwealth Court decision in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* that concluded the PHRC's jurisdiction was not properly invoked. Consequently, *Commonwealth of Pennsylvania v. School Dist. of Philadelphia* has left the state of Pennsylvania law such that technical defects in an initial pleading are fatal, and incurable by untimely amendment. For this reason, the Court can not treat the Intake Questionnaire and Supporting documents submitted by counsel to the EEOC on behalf of plaintiff Kamen on April 26, 2005 as a timely filed administrative complaint under the PHRA simply because he subsequently filed a verified Charge of Discrimination with the EEOC, albeit outside the PHRA 180-day statute of limitations period. Accordingly, the Court should dismiss plaintiff Kamen's claim of discrimination in violation of the PHRA in Count II of the Amended Complaint because it is time-barred by the 180-day statute of limitations in the PHRA.

## II. Plaintiff's Claim of Sexual Orientation Discrimination under the DCHRA is Time-Barred.

Count IV of the Amended Complaint alleges that plaintiff Kamen was denied training opportunities, not permitted to assist at IBEW manufacturing conferences, never given back duties he had been assigned before going on sick leave, denied promotion to the position of Director in Washington, D.C. even though he was the only candidate for the position, and finally terminated from employment for false and pretextural reasons, *inter alia*, because of his sexual orientation in violation of the DCHRA.[4] Amended Complaint at ¶¶ 33-34, 38, 41-42, and 81-82.

---

*Pennsylvania v. School Dist. of Philadelphia Commonwealth of Pennsylvania v. School Dist. of Philadelphia* "leav[es] the state of Pennsylvania law such that technical defects in an initial pleading are fatal, and incurable by untimely amendment").

[4]    The DCHRA makes it unlawful for an employer to terminate an employee "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion,

In addition, the Amended Complaint states that plaintiff Kamen exhausted his administrative remedies by, *inter alia*, filing with the DCOHR, and that "["t]he EEOC issued a Right to Sue, and Plaintiff filed the initial Complaint . . . within one year of defendants' ***continuing violation*** of the DCHRA." Amended Complaint at ¶ 7 (emphasis added). The Amended Complaint further alleges that "[t]he IBEW has had and continues to have a practice of systematic hostility toward homosexuals. Amended Complaint at ¶ 57. The Amended Complaint also alleges that defendants IBEW and Hill "have had and continue to maintain through the present a policy and practice of hostility and prejudice towards homosexuals" that "is a ***continuing violation*** of the DCHRA." *Id.* at ¶¶ 83 & 84 (emphasis added).

Section 2-1403-16(a) of the DCHRA, D.C. CODE ANN. § 2-1403.16(a), provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided, that where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this chapter may file the same complaint with the Office. ***A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof,*** except that the limitation shall be within 2 years of the unlawful discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real estate transactions brought pursuant to this chapter or the FHA. The timely filing of a complaint with the Office, or under the administrative procedures established by the Mayor pursuant to § 2-1403.03, shall toll the running of the statute of limitations while the complaint is pending.

---

national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual." D.C. CODE ANN. § 2-1402.11(a).

### A. Filing an Administrative Complaint with the DCOHR Does Not Toll the Statute of Limitations.

Plaintiff Kamen filed the initial Complaint in this case on June 6, 2006. According to Section 2-1403-16(a) of the DCHRA, claims based on alleged acts of discrimination that occurred more than one year prior to the filing of a complaint are time-barred. Yet, in *Blake v. American College of Obstetricians & Gynecologists*, 608 F. Supp. 1239 (D.D.C. 1985), a former employee filed charges of racial discrimination and retaliation with the DCOHR after her employment was terminated. The DCOHR issued a probable cause determination, but the former employee withdrew her complaint and sought redress through the judicial process.

Thereafter, the employer sought dismissal of the DCHRA claims in *Blake* because the plaintiff filed them more than one year and nine months after the employer terminated the plaintiff's employment. The plaintiff countered that the court should read tolling principles into the DCHRA to suspend running of the one-year statute of limitations during the pendency of her administrative action, which she initiated four months after her discharge. *Blake*, 608 F. Supp. at 1241. The court agreed.

However, in *Anderson v. United States Safe Deposit Co.*, 552 A.2d 859, 863 (D.C. 1989), the District of Columbia Court of Appeals subsequently refuted the holding in *Blake*. The court held in *Anderson* that the DCHRA statute of limitations bars any claim not brought within one year of its occurrence, regardless of whether the plaintiff initially filed an administrative complaint with the DCOHR. The court explained that *Blake* was erroneously based on "a perceived resemblance" between the DCHRA and Title VII of the Civil Rights Act, which caused the court to conclude that "the policy in support of conciliation and voluntary compliance through administrative proceedings would be short circuited" unless the statute of limitations was tolled during the agency process. *Anderson*, 552 A.2d at 862.

Specifically, the court held:

> With all deference, it appears to us that in reaching this conclusion, [*Blake*] overlooked two crucial distinctions between the D.C. Act and its federal "counterpart," Title VII of the Civil Rights Act. It is true that the latter enactment is plainly intended to prefer administrative remedies before resort to the courts. We perceive no such policy in our local act, as the commission of a discriminatory practice immediately vests a person aggrieved thereby with "a cause of action in any court of competent jurisdiction unless such person has filed a complaint . . . [*i.e.*, an OHR complaint]." *See* § 1-2556(a), supra note 4. In short, unlike the federal statute, the Act provides for an *ab initio* election of remedies.

*Anderson*, 552 A.2d at 862-863 (footnotes omitted).

Thereafter, in *Weiss v. International Brotherhood of Electrical Workers*, 729 F. Supp. 144, 146 (D.D.C. 1990), this Court adopted the District of Columbia Court of Appeals' reasoning in *Anderson. See also Clifton v. Federal National Mortgage Ass'n*, 76 Fair Empl. Prac. Cas. (BNA) 732 (D.D.C. 1997) (filing an administrative complaint with DCOHR does not toll the statute of limitations in the DCHRA).

Plaintiff Kamen filed the initial Complaint in the above-entitled action more than eighteen months after the most recent alleged violation of the DCHRA occurred on December 8, 2004, when defendants IBEW and Hill terminated his employment. Therefore, the Court should dismiss Count IV of the Complaint inasmuch as the claims therein against defendants IBEW and Hill are time-barred by the DCHRA's one-year statute of limitations.

### B. The Allegations of Discrete Acts of Discrimination in Count IV of the Amended Complaint Can Not be Made Timely under the Continuing Violation Doctrine.

In an apparent attempt to circumvent the one-year statute of limitations period in the DCHRA, the Amended Complaint alleges defendants IBEW and Hill maintain a systematic policy and practice of discrimination against homosexuals, which constitutes a continuing violation of the DCHRA that confers jurisdiction on the Court to consider Count IV. Amended Complaint at ¶¶ 52-55 and 83-84

In this Circuit, it has been held that a plaintiff may litigate claims under the "continuing violation" doctrine that fall beyond the applicable limitations period if the plaintiff can prove either a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Anderson v. Zubieta*, 336 U.S. App. D.C. 394, 180 F.3d 329, 336-37 (D.C. Cir. 1999) (quoting *McKenzie v. Sawyer*, 221 U.S. App. D.C. 288, 684 F.2d 62, 72 (D.C. Cir. 1982)); *see Palmer v. Kelly*, 305 U.S. App. D.C. 137, 17 F.3d 1490, 1495 (D.C. Cir. 1994); *Milton v. Weinberger*, 207 U.S. App. D.C. 145, 645 F.2d 1070, 1075-76 (D.C. Cir. 1981); *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 193 U.S. App. D.C. 326, 595 F.2d 711, 721, 724 (D.C. Cir. 1978); *Singletary v. District of Columbia*, 225 F. Supp. 2d 43, 61 (D.D.C. 2002). Under the case law in this Circuit, a plaintiff could establish a continuing violation on a case-by-case review of the facts. *See Pleasants v. Allbaugh*, 185 F. Supp. 2d 69, 74 (D.D.C. 2002) (citing *Albritton v. Kantor*, 944 F. Supp. 966, 970 (D.D.C. 1996)).

It appears that plaintiff Kamen is trying to invoke the "continuing violation" doctrine as a means of making timely alleged discriminatory acts described in the Amended Complaint, such as denial of training opportunities, job assignments, promotion and termination of employment, which allegedly occurred more than one year before he filed the initial Complaint in this case. The Amended Complaint asserts these alleged discriminatory acts are part of an ongoing policy and practice of systematic hostility toward homosexuals, which allegedly continues to remain in effect. Recently, however, the Supreme Court rejected this and similar formulations of the test for a continuing violation. *See National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101, 107-08 (2002) (rejecting similar formulation employed by Ninth Circuit).

In *Morgan*, the Court addressed the continuing violation doctrine with respect to employment discrimination claims, retaliation claims, and claims of hostile work environment brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The Court expressly held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. Each isolated act of discrimination rewinds the clock for filing charges alleging that discriminatory act. *Id.* Therefore, a complainant must file a separate charge within the statutorily allowed time-period after each discrete act occurs. *Ibid.* The Court also held in *Morgan* that because discrete acts of discrimination (denial of a promotion, failure to hire, termination, etc.) and acts of retaliation necessarily take place on a particular day, that is the day the discriminatory act "occurred," and thus the day from which the statute of limitations runs. *Id.* at 114.

On the other hand, the Court held in *Morgan* that hostile work environment claims are qualitatively different from claims based on discrete acts of discrimination. *Id.* at 115. Specifically, the Court held that the continuing violation doctrine is applicable to hostile work environment claims because the unlawful practice of creating a hostile work environment "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Accordingly, a complainant may base a hostile work environment claim in part on acts outside of the statutory period under certain circumstances. *Id.* at 117.[5/]

_____

[5/]     The D.C. Court of Appeals adopted, "for cases filed under the DCHRA, the Supreme Court's hostile work environment analysis governing federal civil rights claims as it is set forth in *Morgan.*" *Lively v. Flexible Packaging Assn.*, 830 A.2d 874, 890 (D.C. 2003) (*en banc*). ("*Morgan* highlights the fundamental difference between a discrete discriminatory act and a hostile work environment claim by emphasizing both the cumulative effect of incidents

Therefore, although the Amended Complaint is silent as to whether plaintiff Kamen was aware of the discriminatory nature of the adverse employment actions allegedly committed by defendants IBEW and Hill, he may argue that he should be permitted to relate back to his termination from employment and the other discrete acts of discrimination alleged in the Amended Complaint even though each such act occurred more than one year before he filed the initial Complaint in this case, because he also alleges that defendants IBEW and Hill have pursued an ongoing policy and practice of systematic hostility toward homosexuals. This pleading strategy is, nevertheless, unavailing.

Normally, alleged manifestations of an ongoing policy and practice of systematic hostility toward homosexuals cannot be part of a hostile environment claim that culminated in termination of plaintiff Kamen's employment more than one year before he filed this case. This Circuit has made clear that a plaintiff may not avail himself or herself of the continuing violation doctrine to save otherwise untimely claims unless he or she lacked notice or awareness, until after the limitations period, that the complained-of actions were unlawful:

> For statute of limitations purposes, a continuing violation is "one that could not reasonably be expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was

---

comprising that [latter] claim, and its unitary nature - that is, it is one unlawful employment practice."). The D.C. Court of Appeals also quoted *Morgan* to the effect that a discrete retaliatory act "occurs" on the day that it happens. *Id.* at 889. Thus, this Court noted:

> while the local court has not explicitly adopted *Morgan* to hold that a continuing violation theory is unavailable under the DCHRA for cases involving discrete retaliatory acts, most probably because *Lively* did not raise the question, the Court anticipates that it will do so when the occasion arises.

*Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 160 (D.D.C. 2004) (citing *Lively*, 830 A.2d at 887 (The D.C. Court of Appeals has "'often looked to cases construing Title VII to aid us in construing the [DCHRA].'"); *see also Zuurbier v. Medstar Health, Inc.*, 895 A.2d 905 (D.C. 2006) (the doctrine of continuing violations is not applicable to claims of disparate pay based on sex because each paycheck is a discrete discriminatory act).

repeated during the limitations period", [citation omitted], typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality . . . .

*Taylor v. Federal Deposit Ins. Corp.*, 328 U.S. App. D.C. 52, 132 F.3d 753, 765 (D.C. Cir. 1997) (quoting *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)); *see also Stoller v. Marsh*, 221 U.S. App. D.C. 22, 682 F.2d 971, 974 (D.C. Cir. 1982) (under Title VII, if employee did not know or have reason to know that employment decision was discriminatory in nature, time limits for filing administrative complaint may be tolled).

In *Taylor v. FDIC*, for example, former Resolution Trust Corporation employees alleged that their employer had retaliated against them, in violation of a whistleblower statute, for making protected disclosures. Specifically, the former employees alleged that their employer had reassigned them to a less desirable department called "Special Projects" and then, in the years following the reassignment, isolated them in "an occupational Siberia" by misdirecting their mail, giving them poor telephone service and deliberately assigning them unsuitable work. *See Taylor*, 132 F.3d at 765. As to some of the allegedly retaliatory acts, the former employees' claims were untimely under the applicable statute of limitations, so they contended that the employer's later acts were part of the same continuing violation as the earlier acts. The district court declined to apply the doctrine, and the D.C. Circuit affirmed. The Circuit Court affirmed explaining, "The banishment of [the two employees] to Special Projects, as they allege it, amply manifested itself as a possible retaliation from the start. Just as the continuing low pay entailed by a demotion cannot toll the statute of limitations covering the demotion, so continuing hardship in Special Projects cannot qualify as . . . [part of the] retaliation [which took place within the limitations period]." *Taylor*, 132 F.3d at 765. C*f. Campbell v. National Railroad Passenger Corp.*, 222 F. Supp. 2d 8, 10 (D. D.C. 2002) (where a former employee alleges that he

or she was terminated for discriminatory reasons, the continuing violation doctrine may apply if the plaintiff is subjectively unaware of the discriminatory nature of the firing until some point in time that falls within the statute of limitations period).

Thus, plaintiff Kamen cannot avail himself of the continuing violation doctrine to save his otherwise untimely claims as to alleged discriminatory acts such as denial of training opportunities, job assignments, promotion and termination of employment. According to plaintiff Kamen's own account of the facts set forth in the administrative complaint he filed with the DCOHR on May 4, 2005, he believed *at that time* that each of the alleged discriminatory acts by defendants IBEW and Hill described in the Amended Complaint is attributable, in whole or in part, to his sexual orientation. *See* Exhibit No. 5 attached to the Yellig Declaration.

Therefore, plaintiff Kamen cannot claim that he was unaware of the alleged discriminatory nature of the adverse employment actions about which he now complains until sometime within one year of June 6, 2006 when he filed the initial Complaint in this case. This is consistent with this Court's well-settled approach to the continuing violation doctrine. *Kilpatrick v. Riley*, 98 F. Supp. 2d 9, 19 (D.D.C. 2000); *see also Keith v. Duffey*, 77 F. Supp. 2d 46, 49 (D.D.C. 1999) ("Even if the facts of this case could [otherwise] support a finding of a 'continuing violation,' the Court would hesitate to extend such equitable relief to plaintiff when he demonstrated knowledge of the existence of a potential claim in his 1989 letter accepting [a certain position] but failed to act at that time"); *Childers v. Slater*, 44 F. Supp. 2d 8, 18 n.8 (D.D.C. 1999) (refusing to apply continuing violation doctrine where the incidents complained of were "determinative decisions which would have alerted the plaintiff to the need to engage the administrative process"); *Bettucci v. United States*, 14 F. Supp. 2d 45, 52-53 (D.D.C. 1998) (affirming agency's grievance board's refusal to consider untimely claims under continuing

violation theory where plaintiff had "failed to set forth any evidence establishing that he was unaware of the ground for the claims . . . or unable to discover them through reasonable diligence."); *Harvey v. District of Columbia*, 949 F. Supp. 878, 881 (D.D.C. 1996) (Title VII sexual harassment plaintiff could not avail herself of continuing violation theory where she failed to report alleged rape to supervisors for one year and failed to file charge with EEOC for two years).

Lastly, plaintiff Kamen's untimely claim as to the alleged discriminatory acts described in the Amended Complaint cannot be saved by any notion that the effects of those alleged acts continued into the limitations period (so as to avert statute-of-limitations-based dismissal), nor by the contention that the otherwise untimely discriminatory acts described in the Amended Complaint continued to manifest themselves in the form of later actions as to which a timely complaint was filed (so as to avert dismissal for failure to exhaust). "It is well settled that 'effects' alone are not sufficient to defeat a time bar, even under a 'continuing violations' theory of liability." *Kilpatrick v. Riley*, 98 F. Supp. 2d at 19 (quoting *Palmer v. Barry*, 282 U.S. App. D.C. 290, 894 F.2d 449, 453 (D.C. Cir. 1990) (citing *United Air Lines v. Evans*, 431 U.S. 553, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977) and *Milton v. Weinberger*, 207 U.S. App. D.C. 145, 645 F.2d 1070 (D.C. Cir. 1981)); *see also Pender v. National Railroad Passenger Corp.*, 625 F. Supp. 252, 255 (D.D.C. 1985) (continuing impact of demotion over a year ago did not establish present violation necessary to avoid statute of limitations via continuing-violation theory).

Hence, plaintiff Kamen cannot satisfy the conditions needed for this Court to apply the continuing violation doctrine to the alleged discriminatory acts by defendants IBEW and Hill described in the Amended Complaint. Accordingly, the Court should dismiss Count IV of the

Amended Complaint as to each of these alleged acts for failure to seek judicial relief on those claims within the one-year limitations period in the DCHRA.[6/]

### III.    The Claim in Count III of the Amended Complaint that Defendants IBEW and Hill Violated ERISA Should be Dismissed Because it is Untimely.

In Count III of the Amended Complaint, plaintiff Kamen alleges that termination of his employment by defendants IBEW and Hill violated Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.  In essence, Count III alleges that defendants IBEW and Hill violated ERISA when they terminated plaintiff Kamen's employment in order to interfere with his continuing receipt of health benefits under an IBEW-sponsored employee welfare benefit plan. Amended Complaint at ¶¶ 45-50.  Dismissal of Count III is appropriate because it is time-barred by the applicable statute of limitations.

---

[6/]      Defendants do not move to dismiss Count IV of the Amended Complaint in its entirety at this time because it alleges, *inter alia*, "[d]efendants have had and continue to maintain through the present a policy and practice of hostility and prejudice toward homosexuals." Amended Complaint at ¶ 83. Therefore, Count IV cannot be dismissed in its entirety at this time inasmuch as the Court must accept as true all the factual allegations contained in the Amended Complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. at 164; which cannot be refuted by undisputed facts evidenced in the record. *Coalition for Underground Expansion*, 333 F.3d at 198 (quoting *Herbert v. National Acad. of Sciences*, 974 F.2d at 197). Accordingly, the Court should not dismiss this portion of Count IV inasmuch as defendants IBEW and Hill cannot prove at this stage of the case that plaintiff Kamen will be unable to establish any set of facts that supports the allegation that defendants currently maintain a policy and practice of hostility and prejudice toward homosexuals. Thus, even though it is highly unlikely that the remaining portion of Count IV states a claim upon which relief can be granted to plaintiff Kamen, nevertheless, that is an issue for a later motion by defendants IBEW and Hill for summary judgment.

Neither Section 510 of ERISA nor its enforcement provision, Section 502, 29 U.S.C. § 1132, include a limitations period for actions alleging a violation of Section 510.[7] When Congress fails to establish a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. *Watts v. Parking Management*, C.A. No. 02-2132, 2006 U.S. Dist. LEXIS 12873, *8 (D.D.C. 2006) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33 (1995); *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)).

In order to determine the appropriate local limitations period, the Court should look "to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiff." *Id*. In *Watts v. Parking Management*, the court held that for claims brought in the District of Columbia, "the statute most closely analogous to Section 510 [of ERISA is] the District of Columbia's wrongful discharge/employment discrimination statute – the DCHRA." *Id*. at *10-11. In reaching this conclusion, the court considered the basis of the plaintiff's complaint, which in *Watts* was an allegation that plaintiff's employer terminated him because of his age to prevent him from receiving retirement benefits. *Id*. at *10. The court reasoned in *Watts* that the facts alleged in the complaint were "precisely the kind of facts and type of allegations one would expect to see in a claim for wrongful or discriminatory termination based

---

[7]     Section 510 of ERISA provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [*8] for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pensions Plan Disclosure Act.

29 U.S.C. § 1140 (2005).

on age." *Id.*  In concluding that the DCHRA's one-year statute of limitations is the most appropriate limitations period applicable to claims in the District of Columbia under Section 510 of ERISA, the court rejected plaintiff's argument in *Watts* that either the three-year statute of limitations applicable to contract actions or the three-year "catch-all" statute of limitations should apply. *Ibid.*

In addition, application of the DCHRA's one-year statute of limitations to plaintiff Kamen's ERISA claim in Count III of the Amended Complaint is consistent with decisions by nearly all of the other jurisdictions that have addressed this issue. *See Watts*, id. at *13-14 (listing consistent decisions in the Second, Fifth, Sixth, Seventh, Ninth and Eleventh Circuit).  Indeed, as the court noted in *Watts*, "the D.C. Circuit in *Andes v. Ford Motor Co.* cited with approval the decisions of the other jurisdictions to apply the state statute of limitations for wrongful discharge or employment discrimination to Section 510 claims." *Watts*, *id* at *13 (citing *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1337 n.7 (D.C. Cir. 1995)).

That Count IV of the Amended Complaint alleges a cause of action under the DCHRA against defendants IBEW and Hill further supports a finding that it is the state law most analogous to a Section 510 claim.  Plaintiff Kamen's DCHRA and Section 510 claims in the Amended Complaint arise out of the same factual circumstances, and are predicated on allegations that defendants IBEW and Hill wrongfully or discriminatorily terminated his employment because of his sexual orientation. Consequently, the Court should apply the DCHRA's one-year statute of limitations to the claim in Count III of the Amended Complaint under Section 510 of ERISA.

As previously discussed, plaintiff Kamen's Section 510 claim accrued no later than December 8, 2004, when he received a termination letter from defendant Hill.  Plaintiff Kamen

did not file the initial Complaint in this case until June 6, 2006, eighteen months after he alleges defendants IBEW and Hill terminated his employment in order to interfere with his continuing receipt of health benefits under an IBEW-sponsored employee welfare benefit plan in violation of Section 510 of ERISA. Consequently, the Court should dismiss Count III of the Amended Complaint because it is untimely.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims in Count II of the Amended Complaint based on the PHRA, most of the claims in Count IV based on the DCHRA, and the claim in Count III based on ERISA because they are time-barred by the respective statutes of limitations in the PHRA and the DCHRA.

Respectfully submitted,

_____
TERRY R. YELLIG (D.C. Bar No. 946095)

SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 SEVENTH STREET, N.W.
SUITE 1000
WASHINGTON, D.C. 20001
TELEPHONE NO. (202) 785-9300

Attorneys for Defendant International Brotherhood of Electrical Workers, AFL-CIO

Dated: September 5, 2006