WORKSHARING AGREEMENT
BETWEEN

THE PENNSYLVANIA HUMAN RELATIONS COMMISSION

and

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FOR FISCAL YEAR 2002

I. INTRODUCTION

  A. The Pennsylvania Human Relations Commission (PHRC), hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of 4 or more employees occurring within the Commonwealth of Pennsylvania, based on race, color, religious creed, ancestry, age (40 and older), sex, national origin, disability, use of guard dog or support animal because of the blindness, deafness, or physical disability of an individual with whom the person is known to have a relationship or association pursuant to Section 5 of the Pennsylvania Human Relations Act.

  The Equal Employment Opportunity Commission, hereinafter referred to as EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act (ADEA) of 1967, as amended (29 U.S.C.§ 621 et.seq.), for unequal wages based on sex under the Equal Pay Act of 1963 (29 U.S.C.§ 206), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1991,(42 U.S.C. § 12101).

  B. In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate Commonwealth of Pennsylvania and Federal laws.

II. FILING OF CHARGES OF DISCRIMINATION

  A. In order to facilitate the assertion of employment rights, the

127

EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both EEOC and the FEPA for the purposes of Section 706 & and (e)(1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this agreement or by other mutual agreement.

B. The FEPA shall take all charges alleging a violation of Title VII, ADEA, EPA, or the ADA where both the FEPA and EEOC have mutual jurisdiction, or where EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III. A. 1. below, refer them to the EEOC for initial processing.

C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction.

Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the Pennsylvania Human Relations Commission within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES).

D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge.

E. For charges which are to be dual-filed with EEOC, the FEPA will forward a copy of the charge to EEOC. Also, the FEPA will provide a monthly listing to EEOC's Philadelphia District Office of charges which have been docketed by the FEPA as dual-filed charges.

In addition, the FEPA will provide notification to the Charging Party and to the Respondent that the charge has been dual-filed with EEOC. EEOC and the FEPA will devise mutually agreed upon letters and forms for use by the FEPA in its notification to the parties of the dual-filing and of the subsequent rights and obligations. This notification to the parties will normally occur within ten days of the FEPA's docketing of the charge and the EEOC provided documents will be included with the FEPA's own

notification to the parties of the charge filing.

III. DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A. EEOC and the FEPA will process all Title VII, ADA, and ADEA charges that they originally receive.

1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

In addition, the EEOC will initially process the following charges:

-- All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

-- All disability-based charges which may not be resolved by the FEPA in a manner consistent with the ADA.

-- All concurrent Title VII/EPA charges;

-- All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision making process;

-- All charges filed by EEOC Commissioners;

-- Charges also covered by the Immigration Reform and Control Act;

-- Complaints referred to EEOC by the Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691.

-- Any charge where EEOC is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees

129

which have features relevant to the disposition of subsequent charges;

-- Any charge alleging retaliation for filing a charge with EEOC or for cooperating with EEOC; and

-- All charges against Respondents which are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

2. The FEPA will initially process the following types of charges:

-- Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

-- Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

-- All charges which allege more than one basis of discrimination where at least one basis is not covered by the laws administered by EEOC but is covered by the FEPA Ordinance, or where EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but FEPA can process that charge.

-- All charges against Respondents which are designated for initial processing by FEPA in a supplementary memorandum to this Agreement; and

-- All disability-based charges against Respondents over which EEOC does not have jurisdiction.

B. Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within 30 working days.

IV. EXCHANGE OF INFORMATION

A. Both the FEPA and EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities. Such information shall include, but not

130

necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, ADEA, and ADA.

B. In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

V. RESOLUTION OF CHARGES

A. Both agencies will adhere to the procedures set out in EEOC's Order 916, Substantial Weight Review Manual, and the State and Local Handbook as revised.

B. For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

1. jurisdictional requirements,

2. investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

3. relief, if appropriate,

4. mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

C. In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles.

D. For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

VI. IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A. Each agency will designate a person as liaison official for

131

the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be Peggy Raynock, Assistant to the Director of Compliance. The liaison official for the EEOC will be Charles F. Brown, Coordinator of State and Local Programs.

B. The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C. EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D. If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Field Programs for resolution.

E. This Agreement shall operate from the first (1st) day of October 2001 to the thirtieth (30th) day of September 2002 and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date _____  _____
Marie M. Tomasso, District Director
U.S. Equal Employment Opportunity Commission
Philadelphia District Office

Date _____  _____
Homer C. Floyd, Executive Director
Pennsylvania Human Relations Commission

132

# ADDENDUM TO THE WORKSHARING AGREEMENT BETWEEN THE EEOC AND THE PHRC FOR CONTRACT YEAR 2002

The following procedures will apply for all charges initially received by the Equal Employment Opportunity Commission(EEOC) which are co-jurisdictional with the Pennsylvania Human Relations Commission(PHRC).

1. EEOC will provide "walk-in" and "mail-in" Charging Parties two documents: (1) the pamphlet entitled **"Know your Rights"** which explains the differences between the Federal Statutes enforced by EEOC and the PHRAct; and (2) the form entitled **"Information for Complainants & Election Option to Dual File a Complaint with the Pennsylvania Human Relations Commission"**, attached hereto as Attachment A and incorporated herein. This form advises the Charging Parties of their right to file the charge with PHRC and will provide instructions for doing so. The Charging Party will be asked to sign the form and elect the option of either dual filing or not dual filing his/her complaint with PHRC.

2. A copy of the signed form will be given to the Charging Party. The original form will be sent to the PHRC with the deferral correspondence. EEOC will also retain a copy of the signed form in its case file.

3. If the complainant elects to dual file with PHRC, EEOC will serve a copy of the form on the respondent when the EEOC 5 is served. When EEOC serves the Election Option form with its charge, this will constitute service by PHRC.

4. EEOC's Philadelphia and Pittsburgh Offices will provide closure printouts on a monthly basis to PHRC identifying co-jurisdictional charges closed by EEOC the previous month. These offices will also provide PHRC with printouts of pending co-jurisdictional charges upon request.

5. PHRC will notify the EEOC Philadelphia and Pittsburgh Offices in writing, on a periodic basis of closed charges which were dual filed with PHRC as "Lukus" charges and for which EEOC closure documentation is requested.

6. EEOC will send to PHRC within 30 days of such notification appropriate closure correspondence/documentation for the charges closed by EEOC. Moreover, upon request to do so, EEOC will provide the entire EEOC file to PHRC for review

133

and/or copying.

7. When forwarding requested documentation to PHRC, EEOC will include written notice that it will refrain from case destruction for 60 days, even if the case were otherwise eligible for destruction under EEOC's destruction schedules. If PHRC has not requested a copy of the complete case file by the date indicated, the file will be eligible for destruction by EEOC in accordance with EEOC's case disposition schedules.

8. EEOC will attempt to make closures such as settlements, withdrawals, unable to locate or failure to cooperate applicable to PHRC as well as EEOC.

9. Where a case has been closed by EEOC as adjusted and the Charging Party notifies PHRC that the terms of the agreement have not been met, PHRC will refer the Charging Party to the EEOC for enforcement of the EEOC agreement.

The above procedures may be modified at any time upon mutual consent of the parties.

2/8/02
Date

_for_ Marie M. Tomasso, District Director
Equal Employment Opportunity Commission
Philadelphia District Office

2/2/2002
Date

Homer C. Floyd, Executive Director
Pennsylvania Human Relations Commission

134

# ADDENDUM TO WORKSHARING AGREEMENT
# BETWEEN EEOC AND PHRC

<u>Miscellaneous:</u>

PHRC will submit a copy of a dual-filed charge to EEOC upon request on an as-needed basis when EEOC is responding to requests for information to other EEOC offices or EEOC Headquarters, or when any other unforseen matter arises which requires EEOC to obtain a copy of a dual-filed charge.

Date: November 4, 2002

Marie M. Tomasso, District Director
Equal Employment Opportunity Commission
Philadelphia District Office

Date: Nov 8, 2002

Homer C. Floyd
Executive Director
Pennsylvania Human Relations Commission

-2-

135

## FY 2003 EXTENSION OF WORKSHARING AGREEMENT

Inasmuch as there have been no substantive changes in the processes, procedures, statutes, policies or regulations that would adversely affect or substantially alter the worksharing arrangement between the _Philadelphia_ District Office and the _PA Human Relations Comm_, or that would affect the processing of charges filed under the pertinent Federal, state or local statutes, the parties agree to extend the current worksharing agreement that was executed on _2002_ through the FY 2003 Charge Resolution Contract Option Period. This agreement, as well as the attendant Worksharing Agreement may be reopened and amended by mutual consent of the parties.

_____  _____  _____  _____
For the PEPA                Date      For the EEOC District Office  Date

136