## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEVEN A. KAMEN** | ) | **Case No. 1:06CV01063(RMC)** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRICAL WORKERS, AFL-CIO and** | ) | |
| **EDWIN D. HILL, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Count I of the Amended Complaint in the above-entitled action alleges that the International Brotherhood of Electrical Workers, AFL-CIO (hereafter "IBEW"), an unincorporated labor organization, discriminated against plaintiff Steven A. Kamen on the basis of his disability in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. 12101 *et seq*. (hereafter "ADA").

Count II of the Amended Complaint alleges that defendant IBEW and Edwin D. Hill, IBEW International President, discriminated against plaintiff Kamen because of his disability in violation of the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq*. (hereafter "PHRA"). Count III of the Amended Complaint alleges defendants IBEW and Hill terminated plaintiff Kamen's employment by the IBEW "in order to interfere with his continuing receipt of medical and other benefits included in Defendant's employee welfare benefit plan" in violation of the Employee Retirement Income Security Act (hereafter "ERISA").

In addition, Count IV of the Amended Complaint alleges that defendants IBEW and Hill discriminated against him on the basis of his sexual orientation in violation of the D.C. Human Rights Act of 1977, D.C. CODE ANN. § 2-1401.01 *et seq.* (hereafter "DCHRA"). Finally, Count V of the Amended Complaint alleges that defendant Hill tortiously interfered with plaintiff Kamen's business relations with the IBEW resulting in termination of his employment.

Defendants IBEW and Edwin D. Hill have moved to dismiss Counts II, III and most of Count IV of the Amended Complaint based on the expiration of the statute of limitations applicable to the respective causes of action pursuant to Rule 12(b)(1), Fed. R. Civ. P. Plaintiff Kamen counters, however, that the Court is bound to accept all allegations in the Amended Complaint as true in deciding a motion to dismiss and give him the benefit of every favorable inference that can be drawn from those allegations. Hence, it appears that plaintiff Kamen contends the Court is precluded from considering matters outside the pleadings and accompanying legal memoranda, which both parties have submitted, that amplifies the general allegations concerning the timeliness of the claims set forth in Counts II, III, and IV of the Amended Complaint.

Plaintiff Kamen clearly regards the defendants' motion to dismiss as one based on Rule 12(b)(6), Fed. R. Civ. P., dismissal for failure to state a claim upon which relief can be granted, a dismissal that is confined to the legal sufficiency of the plaintiff's pleadings rather than one based on Rule 12(b)(1), Fed. R. Civ. P.

However, plaintiff Kamen's effort to restrict the Court's consideration to the facts alleged in his Amended Complaint, and thereby avoid dismissal of the challenged claims, disregards the fact that the proviso in Rule 12(b)(6) ), Fed. R. Civ. P., allows the Court to consider matters outside the pleadings and accompanying legal memoranda by converting the motion into one for

summary judgment and affording all parties "reasonable opportunity to present all material made pertinent to such motion by Rule 56." Thus, even under Rule 12(b)(6), the Court can dismiss an action provided there are no material issues of fact in dispute that preclude resolution of the legal disputes between the parties.

The distinctions between Rule 12(b)(1) ), Fed. R. Civ. P., and Rule 12(b)(6) ), Fed. R. Civ. P., are important and well understood. Rule 12(b)(1) ), Fed. R. Civ. P., presents a threshold challenge to the court's jurisdiction, whereas Rule 12(b)(6) presents a ruling on the merits with *res judicata* effect. When a party files a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the plaintiff[] bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). A court considering a motion to dismiss for lack of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences that can be derived from the facts alleged. *Jerome Stevens Pharms., Inc. v. Federal Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). However, such allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350). Moreover, the Court may consider matters outside the pleadings. *Lipsman v. Secretary of the Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003). It is for these reasons that defendants IBEW and Hill characterize their motion to dismiss as one made pursuant to Rule 12(b)(1) ), Fed. R. Civ. P.

However, a dispute concerning the proper method for raising a defense of limitation should not preclude dismissal of untimely claims at the pre-answer stage of the litigation where there are no material issues of fact in dispute. In *Gordon v. National Youth Work Alliance*, 675

F.2d 356, 360 (D.C. Cir. 1982), the D.C. Circuit reversed a district court order dismissing a former employee's civil rights action against her former employer for lack of jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., due to an alleged failure to file suit in accordance with the 90-day time limit prescribed in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1). The court pointed out that the proper method for raising a defense of limitation was in a motion under Rule 12(b)(6), Fed. R. Civ. P., pursuant to which the district court could not have reviewed evidence outside the pleadings concerning the date the plaintiff received her right-to-sue letter from the EEOC without converting the motion to one under Rule 56, Fed. R. Civ. P. *Id.* Thus, the court held in *Gordon* that the district court erred by considering evidence outside the pleadings without affording the parties an opportunity to respond. *Id.*

Admittedly, the court stated, "the proper method for raising a defense of limitation is a motion under Rule 12(b)(6), not a motion under Rule 12(b)(1)." *Ibid.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1277 at 331-332 (1969 ed.)). However, the court was not so much concerned about which procedural rule was used to raise the timeliness issue in *Gordon* as much as it was troubled by the apparent lack of fairness in the process whereby the district court granted the employer's Rule 12(b)(1) motion to dismiss. The court explained:

> Fairness, not excessive technicality, is the guiding principle under both Title VII and the Federal Rules of Civil Procedure. The mandatory language in which Rule 12(b)'s proviso is couched underscores the importance of providing plaintiffs with the essential safeguards of summary judgment procedure whenever they face a motion to dismiss that turns on questions of fact. Even under Rule 12(b)(1), procedural safeguards equivalent to those in Rule 56 are required, with Rule 56 used selectively as a guide to ensuring fairness. *Where facts material to a jurisdictional time limit are in dispute, both fairness and analogy to Rules 12(b)(6) and 56 require that the court provide the parties a full opportunity to air their factual dispute. Furthermore, they direct the court to take evidence on the question if the parties' affidavits do not suffice to eliminate all genuine issues of material fact.*

> *The importance of fair procedures in factfinding at any stage requires this approach, whether or not the parties invoke the precise words in the Federal Rules. Under either Rule 12(b)(1) or Rule 12(b)(6), a court need not consider matters outside the pleadings at all. But once it decides to consult such matters it should so inform the parties and set a schedule for submitting additional affidavits and documents if the parties wish.*

> Accordingly, since the District Court did not so notify the parties, we may sustain the dismissal only if it meets the stringent standard for dismissal without regard to matters outside the pleadings: "(I)t appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Gordon*, 675 F.2d at 360-61 (internal citations and footnote omitted and emphasis added).

In this case, unlike *Gordon*, the Court's consideration of defendants' motion pursuant to the standards of Rules 12(b)(1) will not prejudice plaintiff Kamen. Here, there is no disagreement about the facts but rather the parties disagree about purely legal issues, which have been fully briefed, and neither party has requested the opportunity to submit additional evidence because presumably they have submitted the documentary evidence they believe supports their respective arguments. *See cf. Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 161 (D.D.C. 2003) (court treated defendants' motion to dismiss pursuant to Rule 12(b)(6) or in the alternative for summary judgment pursuant to Rule 56 as a motion for dismissal pursuant to Rule 12(b)(1) citing the *Gordon* fairness principles).

Thus, regardless of whether the Court applies Rule 12(b)(1), Fed. R. Civ. P., or Rule 12(b)(6), Fed. R. Civ. P., and converts defendants' motion to a motion for summary judgment in order to consider matters outside the pleadings and the legal memoranda submitted by the parties, there are no outstanding issues of material fact in dispute that should preclude the Court from resolving the purely legal issues regarding application of

statute of limitations to the claims in Counts II and III as well as most of the claims in

Count IV of the Amended Complaint.

## ARGUMENT

I.    **Filing an Unverified EEOC Intake Questionnaire and Supporting Documents that Plaintiff Characterizes as a Verified Charge and Complaint of Discrimination Does Not Satisfy the 180-day Time Limit in the PHRA for Filing a Verified Complaint.**

Defendants IBEW and Hill contend that the claim in Count II of the Amended Complaint

that they terminated plaintiff Kamen's employment in violation of the PHRA's prohibition

against discrimination based on an individual's disability is barred by the statute of limitations in

the PHRA, which require a plaintiff to file an administrative complaint with the PHRC within

180 days of the alleged act of discrimination as a prerequisite to filing suit under the PHRA. 43

PA. STAT. ANN. §§ 959(a)-(h). *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d. Cir. 1997).

There is no dispute that plaintiff Kamen submitted an Intake Questionnaire and

Supporting Documents to the EEOC Intake Supervisor in Pittsburgh, Pennsylvania under cover

of a letter from his counsel dated April 26, 2005, which asked that this material be treated "as

plaintiff Kamen's verified Charge and Complaint of Discrimination (disability)." *See* Exhibit No.

1 attached to the Yellig Declaration. Moreover, there is no dispute that the EEOC promptly

transmitted plaintiff Kamen's Intake Questionnaire and Supporting Documents to the PHRC.

Plaintiff Kamen contends that submission to the EEOC of an Intake Questionnaire and

Supporting Documents on April 26, 2005, which were promptly cross-filed with the PHRC,

"clearly" satisfied the PHRA 180-day statute of limitations and, therefore, Count II of the

Amended Complaint is timely. Plaintiff's Response in Opposition to Defendants' Partial Motion

to Dismiss Amended Complaint (Document # 11) (hereafter "Plaintiff's Opp. Mem.") at 2.

Specifically, plaintiff Kamen asserts that the unverified EEOC Intake Questionnaire and

Supporting Documents that his attorney submitted to the EEOC on April 25, 2005 satisfies the standards set forth in the PHRA, 43 PA. STAT. ANN. §§ 959(a), which states, "any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the [PHRC] a verified complaint . . . ." However, as discussed by defendants IBEW and Hill, the Supreme Court of Pennsylvania split evenly on the question of whether submission by a charging party to the PHRC of a questionnaire that alleged an employer had committed unlawful discriminatory practices satisfies the verification requirement in the PHRA. Memorandum of Points and Authorities in Support of Motion to Dismiss Counts II, III, and Most of Count IV of the Amended Complaint (Document # 9) (hereafter "Defendants' Mem.") at 12-14 (citing *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*, 562 A.2d 313 (Pa. 1989)). As a result, the Supreme Court of Pennsylvania affirmed the holding of the Pennsylvania Commonwealth Court that filing an unverified questionnaire with the PHRC does not satisfy the PHRA requirement that before a plaintiff may sue under the Act, he or she must first file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. *Id.*

Plaintiff Kamen did not satisfy the verification requirement in the PHRA because the Intake Questionnaire and Supporting Documents submitted to the EEOC, and in turn to the PHRC on April 25, 2005 were not signed in the presence of a notary, nor were they signed under penalty of perjury. *See* Exhibit No. 1 attached to Defendants' Mem. As the Opinion in Support of Affirmance stated in *Commonwealth of Pennsylvania v. School Dist. of Philadelphia*, 562 A.2d 313, 314 (Pa. 1989), "[a] filing which does not comply with [the] strictures [of the Act] improperly invokes the Commission's jurisdiction, and is in fact a nullity." Because Kamen did not file a ***valid*** Charge of Discrimination within the 180-day time limit, the Court should dismiss Count II of the Amended Complaint.

II.    **The D.C. Superior Court's Holding in** *Vitikacs v. American Legion*
**that the One-Year Statute of Limitations Period in the DCHRA is**
**Tolled While an Administrative Complaint is Pending Before the**
**DCOHR is Contrary to** *Anderson v. United States Safe Deposit Co.,*
*which is Binding Precedent.*

Defendants IBEW and Hill also maintain that most of the claims in Count IV of the
Amended Complaint, which alleges that plaintiff Kamen was denied training opportunities, not
permitted to assist at IBEW manufacturing conferences, never given back duties he had been
assigned before going on sick leave, denied promotion to the position of Director in Washington,
D.C. even though he was the only candidate for the position, and finally terminated from
employment for false and pretextural reasons because of his sexual orientation in violation of the
DCHRA, are barred by the one-year statute of limitations period applicable to claims under that
Act. Defendants' Mem. at 17-27.

Defendants IBEW and Hill explained that, unlike most other state fair employment
practices statutes, filing an administrative complaint with the DCOHR does not toll the DCHRA
statute of limitations period. Defendants' Mem. at 19-20 (citing *Anderson v. United States Safe
Deposit Co.*, 552 A.2d 859, 863 (D.C. 1989) (holding the DCHRA statute of limitations bars any
claim not brought within one year of its occurrence, regardless of whether the plaintiff initially
filed an administrative complaint with the DCOHR); *Weiss v. International Brotherhood of
Electrical Workers*, 729 F. Supp. 144, 146 (D.D.C. 1990) (adopting the reasoning of the opinion
in *Anderson*); *Clifton v. Federal National Mortgage Ass'n*, 76 Fair Empl. Prac. Cas. (BNA) 732
(D.D.C. 1997) (filing an administrative complaint with DCOHR does not toll the DCHRA statute
of limitations period). Thus, defendants IBEW and Hill contend that most of the claims asserted
in Count IV of the Amended Complaint, which was filed more than one year after the IBEW
terminated plaintiff Kamen's employment, are barred by the DCHRA statute of limitations even

though it is undisputed that he earlier filed an administrative complaint with the DCOHR within the one-year period..

Notwithstanding, plaintiff Kamen argues *Vitikacs v. American Legion*, No. 02-CA-1-202, 2003 WL 22004935 (D.C. Super. June 8, 2003), held that filing an administrative complaint with the DCOHR tolls the DCHRA state of limitations period and, therefore, none of the claims in Count IV of the Amended Complaint are time-barred. Plaintiff's Opp. Mem. at 7

In *Vitikacs*, the plaintiff conceded that he filed his judicial claim under the DCHRA more than one year after the defendant terminated his employment. However, he argued that his claim was nevertheless timely because the pendency of his administrative complaint against the defendant employer before the DCOHR tolled the DCHRA limitations period. The D.C. Superior Court agreed with the plaintiff and denied defendant employer's motion to dismiss plaintiff's claim under the DCHRA.

However, in *Anderson v. United Safe Deposit Co.* the D.C. Court of Appeals held that, unlike Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(c), which is intended to prefer administrative remedies before resort to the courts:

> We perceive no such policy in our local act, as the commission of a discriminatory practice immediately vests a person aggrieved thereby with "a cause of action in any court of competent jurisdiction *unless such* person has filed a complaint . . . [*i.e.*, an OHR complaint]." *See* § 1-2556(a).[1] In short, unlike the federal statute, the Act provides for an *ab initio* election of remedies.

> The same subsection discloses that the exercise of choice to go the administrative route does not forever bar a complaint from access to the courts. If complainant decides to reverse course and withdraws the OHR complaint

---

[1]    Section 316 of the D.C. Human Rights Act of 1977, D.C. Law 2-38, title III, § 316, 24 DCR 6038 (Dec. 13, 1977), 1981 Ed., § 1-2556, was numbered in the D.C. Code at the time *Anderson v. United Safe Deposit Co.* was decided in 1989 as § 2-2556. Section 316 of the DCHRA was subsequently renumbered in the D.C. Code as § 2-1403.16.

(presumably before the deadline fixed by § 1-2544[2/]) a proviso states that the complainant "shall maintain all rights to bring suit, *as if no complaint had been filed*." The underscored clause makes it clear, that a grievant who files an administrative complaint and then withdraws it in timely fashion is on no better footing than a grievant who passes up the administrative process and elects to sue. If the latter does not commence suit until fourteen months after the allegedly discriminatory discharge, such suit would obviously be barred by the one year limitations period. Plainly the first grievant is not entitled to different treatment upon also failing to file suit within a year.

We deem the proviso to subsection 1-2556(a) as dispositive of the tolling issue and therefore hold that the appellant's failure to begin her action in the Superior Court within one year after the asserted discriminatory act occurred, was a compelling ground for dismissal.

*Anderson v. United Safe Deposit Co.*, 552 A.2d at 862-63 (footnotes and internal references to footnotes omitted and emphasis in the original). *See also Coleman v. Potomac Electric Power Co.*, Case No. 04-7043, 2004 U.S. App. LEXIS 21820 (D.C. Cir. 2004), *affirming Coleman v. Potomac Electric Power Co.*, 310 F. Supp. 2d 154. 159 (D.D.C. 2004) (the filing of an administrative complaint with the DCOHR does not toll the DCHRA's one-year statute of limitations).

The D.C. Superior Court opinion in *Vitikacs* contradicts the holding in *Anderson* without even mentioning it. The D.C. Superior Court is obliged to follow the precedent established by the D.C. Court of Appeals. Consequently, the holding in *Vitikacs* that filing an administrative complaint with the DCOHR tolls the DCHRA statute of limitations period is without merit and the Court should not rely on it. Instead, the Court should dismiss the claims in Count IV of the Amended Complaint that occurred more than one year before plaintiff Kamen initiated this judicial action on June 6, 2005

---

[2/]    Section 304 of the D.C. Human Rights Act of 1977, D.C. Law 2-38, title III, § 304, 24 DCR 6038 (Dec. 13, 1977), 1981 Ed., § 1-2544, was numbered in the D.C. Code at the time *Anderson v. United Safe Deposit Co.* was decided in 1989 as § 1-2544. Section 316 of the DCHRA was subsequently renumbered in the D.C. Code as § 2-1403.04.

III.    **The "Catch-All" Statute of Limitations in the D.C. Code Applicable to Claims for Wrongful Discharge Against Public Policy Does not Apply to Applies to ERISA § 510 Claims.**

Finally, defendants IBEW and Hill argue that Count III of the Amended Complaint, which alleges that they terminated plaintiff Kamen's employment in violation of Section 510 of ERISA, 29 U.S.C. § 1140, is time-barred because the termination of employment occurred more than one year before this judicial claim was filed on June 6, 2006. Specifically, defendants IBEW and Hill contend that inasmuch as neither Section 510 of ERISA nor its enforcement provision, Section 502, 29 U.S.C. § 1132, include a limitations period for actions alleging a violation of Section 510, the Court should look "to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiff." Defendants' Mem. at 28 (quoting *Watts v. Parking Management*, C.A. No. 02-2132, 2006 U.S. Dist. LEXIS 12873, *8 (D.D.C. 2006)).

Defendants explained that the court held n *Watts v. Parking Management* that for claims brought in the District of Columbia, "the statute most closely analogous to Section 510 [of ERISA is] the District of Columbia's wrongful discharge/employment discrimination statute – the DCHRA." *Id.* at *10-11. In reaching this conclusion, the court considered the basis of the plaintiff's complaint, which in *Watts* was an allegation that plaintiff's employer terminated him because of his age to prevent him from receiving retirement benefits. *Id.* at *10. The court reasoned in *Watts* that the facts alleged in the complaint were "precisely the kind of facts and type of allegations one would expect to see in a claim for wrongful or discriminatory termination based on age." *Id.* In concluding that the DCHRA's one-year statute of limitations is the most appropriate limitations period applicable to claims in the District of Columbia under Section 510 of ERISA, the court rejected plaintiff's argument that either the three-year statute of limitations

applicable to contract actions or the three-year "catch-all" statute of limitations should apply. *Ibid.*

Plaintiff Kamen asserts that the most analogous state statute of limitations applicable to ERISA claim in Count III of the Amended Complaint is a two-year statute of limitations, which he maintains is applicable to claims in the District of Columbia for wrongful discharge against public policy. Plaintiff's Opp. Mem. at 5 (citing *Berger v. AXA Network, LLC*, 459 F.3d 804 (7th Cir. 2006)).[3/]

Plaintiff Kamen's argument is erroneous for two reasons. First, it ignores this Court's recent decision in *Watts v. Parking Management*, which makes a strong case for application of the DCHRA's one-year statute of limitations to claims in the District of Columbia under Section 510 of ERISA.

Second, the case on which plaintiff Kamen relies, *Berger v. AXA Network, LLC*, does not support his argument that the Court should apply the statute of limitations applicable to claims in the District of Columbia for wrongful discharge against public policy to claims under Section 510 of ERISA. That is, *Berger* did not hold that the state law claim most analogous to a cause of action under Section 510 of ERISA is a wrongful discharge against public policy claim.

In *Berger*, the Seventh Circuit held that under New York law, the state cause of action most closely analogous to a claim under Section 510 of ERISA is the tort of retaliatory discharge contained in *New York Workers' Compensation Law* § 120. 459 F.3d at 814-15 (citing *Teumer v. General Motors Corp.*, 34 F.3d 542, 549 (7th Cir. 1994) (the Illinois tort of retaliatory discharge is the most analogous cause of action because it captures the essence of a claim under

---

[3/]    The statue of limitations applicable to a wrongful discharge claim is the three-year "catch all" statute of limitations set forth in D.C. CODE § 12-301(8) (2006). *Stephenson v. American Dental Ass'n*, 789 A.2d 1248, 1250 (D.C. 2002).

Section 510 of ERISA); *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 335-36 (2d Cir. 1997) (Section 120 of the *New York Workers' Compensation Law*, which protects against the same employer actions as Section 510 of ERISA, is the most analogous state statute)).

Based on the holding in *Berger*, plaintiff Kamen, at best, could argue that the most analogous claim under D.C. law is one for retaliatory discharge for the filing a workers' compensation claim. However, this does not advance his argument that the ERISA-based claim in Count III of the Amended Complaint is timely, because the statute of limitations applicable to claims for retaliation or interference with the exercise of rights created by the D.C. Workers' Compensation Act is apparently one year. *See* D.C. CODE § 32-1542 (2006) (creating cause of action for retaliatory discharge), D.C. CODE § 1514 (2006) (setting the time limit of one year for the filing of a workers' compensation claim). *See also Watts*, 2006 U.S. Dist. LEXIS 12873, at *12 ("Similarly, an action alleging discrimination in connection with workers' compensation benefits must be brought within one year in the District of Columbia.").[4] Accordingly, the Court should dismiss the claim in Count III of the Amended Complaint alleging that defendants IBEW and Hill violated ERISA because it is untimely.

## CONCLUSION

For the reasons stated in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Counts II, III and Most of Count IV of the Amended Complaint as well as for the foregoing reasons, the Court should dismiss the claims in Count II of the Amended Complaint based on the PHRA, most of the claims in Count IV based on the DCHRA, and the

---

[4]    The D.C. Code citations used by the Court in *Watts v. Parking Management*, 2006 U.S. Dist. LEXIS 12873, *12, to support this statement appear to be inaccurate, probably because confusion caused by recent renumbering of much of the Code.

claim in Count III based on ERISA because they are time-barred by the respective statutes of limitations in the PHRA and the DCHRA.

Respectfully submitted,

TERRY R. YELLIG (D.C. Bar No. 946095)

SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 SEVENTH STREET, N.W.
SUITE 1000
WASHINGTON, D.C. 20001
TELEPHONE NO. (202) 785-9300

Attorneys for Defendants International Brotherhood of Electrical Workers, AFL-CIO, and Edwin D. Hill

Dated: October 12, 2006.