# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN A. KAMEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1063 (RMC) |
| | ) | |
| INTERNATIONAL BROTHERHOOD | ) | |
| OF ELECTRICAL WORKERS (IBEW), | ) | |
| AFL-CIO and EDWIN D. HILL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Steven A. Kamen sues his former employer, the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW") and its president, Edwin D. Hill, asserting that they violated the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code Ann. § 2-1401.01 *et seq.,* the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and tortiously interfered with his employment contract, when they discharged him from his position as a Senior International Representative. Defendants move to dismiss Counts II (PHRA), III (ERISA) and most of Count IV (DCHRA) of the Amended Complaint as time-barred by the respective statutes. *See* Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss Counts II, III, and most of Count IV of the Am. Compl. ("Defs.' Mem.") [Dkt. #9]. Mr. Kamen opposes the motion. Because there are no facts in dispute and the points have been fully briefed, the Court will grant Defendants' motion.

## I.  BACKGROUND FACTS

Steven A. Kamen worked as an International Representative for the IBEW for years before he became ill and was hospitalized in February 2004. Am. Compl. ¶ 19.  During his hospital stay, he was diagnosed as having contracted the human immunodeficiency virus ("HIV").  Am. Compl. ¶ 20.  About the time that he was diagnosed as HIV-positive, the IBEW became aware of that Mr. Kamen is a homosexual and that he had contracted HIV.  *Id*. ¶¶ 21-23.

Mr. Kamen returned to work for the IBEW on or about May 1, 2004.  *Id*. ¶ 28.  He asserts that he was capable of performing the essential functions of his position as a Senior International Representative when he returned to work, with or without a reasonable accommodation. Id. ¶ 32.  He alleges, however, that he was denied training opportunities, was not permitted to assist at manufacturing conferences, was never given back duties he had been assigned prior to taking a medical leave, and was not promoted to a vacant position at IBEW Headquarters in Washington, D.C., even though he was the most qualified candidate for the position.  *Id*. ¶ 33.

Mr. Kamen contends that the Defendants illegally terminated his employment on December 8, 2004. *Id*. ¶ 36.

### A.  EEOC/PHRC Administrative Complaint Process

Through his legal counsel, Mr. Kamen submitted a one-page General Information Questionnaire, a four-page General Intake Questionnaire, an eight-page ADA Intake Questionnaire, and a three-page document entitled Witness Information to Ronald Dean, Intake Supervisor, Equal Employment Opportunity Commission ("EEOC"), Pittsburgh, Pennsylvania, on April 26, 2005. *See* Pl.'s Response in Opp. to Defs.' Partial Mot. to Dismiss Am. Compl. ("Pl.'s Opp."), Ex. 1.  The cover letter asked that the documents be filed "as Claimant Steven A. Kamen's verified Charge and

Complaint of Discrimination (disability)." *Id*. at 1.  It also asked that the charge "be dual-filed with

the PHRC, with the EEOC to take the lead in the investigation." *Id.*  At the end of the General

Intake Questionnaire, the ADA Intake Questionnaire, and the Witness Information document was

the following:

> I hereby verify that the statements contained in this complaint are true and
> correct to the best of my knowledge, information and belief.

> You must sign and date below:

> Signature of Mr. Kamen and date of 4/16/05.

*Id.* (boxes around statement of verification and signature omitted).

Thereafter, on July 6, 2005, Mr. Kamen filed a formal Charge of Discrimination with

the EEOC, charging the Defendants with discrimination in violation of the ADA. *See* Defs.' Mem.,

Yellig Decl. Ex. 2. This charge stated that "[o]n December 8, 2004, Edwin D. Hill, International

President, informed me that I was being let go because I had been delinquent in filing the weekly

reports, the expense reports, and several other assignments." *Id*.  This document was signed and

dated under the statement, "I declare under penalty of perjury that the above is true and correct." *Id.*

The blocks for signing before a notary – "*When necessary for State and Local Agency Requirements*"

– were left blank. *Id*. (italics in original).  This formal charge was cross-filed with the PHRC on the

same day.

By letter dated September 27, 2005, the PHRC notified the IBEW that it had received

the charged filed by Mr. Kamen but that it was waiving its opportunity to investigate the charge.  See

Defs.' Mem., Yellig Decl. Ex. 3.  "This means that EEOC will not have to wait 60 days to take

action on the charge." *Id*.  But PHRC reserved the right "to docket, serve and require an answer to

the charge at some future date." *Id.* This procedure was followed as a result of a work sharing agreement between the PHRC and the EEOC. The Work Sharing Agreement was adopted by the EEOC and the PHRA "to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate Commonwealth of Pennsylvania and Federal laws." *See* Pl.'s Opp. Ex. 2 ¶ I.B. When a charge is filed with the EEOC, federal law requires EEOC to send a copy of the charge to PHRC. Defs.' Mem., Yellig Decl. Ex. 3. This happens because the EEOC must afford state agencies, such as the PHRC, the opportunity to investigate the complaint for 60 days. *Id*. PHRC has the discretion to waive the opportunity to investigate the charge, as it did in this case. *Id*.

The EEOC in Pittsburgh issued its Notice of Right to Sue (on request) to Mr. Kamen on March 15, 2006. *See id*., Ex. 4 (noting that 180 days had passed since the filing of the charge and that the EEOC terminated its processing of the charge).

**B. DCOHR Administrative Complaint Process**

Mr. Kamen filed an administrative complaint of discrimination against Defendants with the District of Columbia Office of Human Rights ("DCOHR") on May 3, 2005, which was date-stamped as received on May 9, 2005. *See id*., Ex. 5. This complaint alleged that the IBEW and Mr. Hill discriminated against Mr. Kamen because he is disabled by HIV infection and because of his sexual orientation. *Id.*, Ex. 5 at 2. It stated that IBEW denied his requests to attend conferences; avoided granting him benefits; failed to accommodate his disability; created a hostile work environment; retaliated against him; subjected him to anti-gay remarks, jokes and comments; denied a promotion to the position of Director of the IBEW Broadcasting Department for which he was the only qualified candidate; and fired him because he is HIV positive and a homosexual. *Id.* at 3. This

-4-

complaint was signed before a notary public and sworn to be true and correct.  *Id.* at 8.

Mr. Kamen filed a second, notarized charge of discrimination with the DCOHR on March 16, 2006, and a third notarized charge of discrimination with the DCOHR on April 13, 2006, advancing the same essential allegations.  *See id.*, Ex. 6 & 7.  Mr. Kamen withdrew from DCOHR mediation on May 8, 2006, after receiving the EEOC Right to Sue letter, which gave him the right to file this suit.  *Id.*, Ex. 8.

## II.  LEGAL STANDARDS

Defendants move to dismiss Counts II, III, and most of Count IV of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the expiration of the statute of limitations applicable to the respective causes of action.  *See* Defs.' Mem. at 7.  Mr. Kamen asserts that the proper standard of review is Federal Rule of Civil Procedure 12(b)(6).  *See* Pl.'s Opp. at 1-2.  "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  The Court will construe the Motion to Dismiss as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1]  The Court notes that "[f]airness, not excessive technicality is the guiding principle under … the Federal Rules of Civil Procedure."  *Flynn v. Ohio Building Restoration, Inc.*, 260 F. Supp. 2d 156, 161 n. 4 (D.D.C. 2003) (citing *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982)).  In this case, the parties will not be prejudiced by the Court's consideration of Defendants' motion pursuant to the standards of Rule 12(b)(6).  The parties do not disagree about the facts but rather about purely legal issues, which have been fully briefed, and neither party has requested the opportunity to submit additional evidence because presumably they have submitted the documentary evidence they believe supports their respective arguments.  Federal Rule of Civil Procedure 12(b)(6) allows the Court to consider matters outside of the pleadings and accompanying

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning*, 292 F.3d at 242.

In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt, v. Chao*, 226 F. Supp. 2d at 196 (D.D.C. 2002) (citation omitted). When a district court is not sitting as an appellate court and the district judge looks outside the complaint to factual matters, he or she must convert a motion to dismiss into a motion for summary judgment. *See Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (citing *Gordon*, 675 F.2d at 360). "'[C]oversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude the

memoranda by converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6).

extraneous matters.'" *See Microsensor, Inc. v. SMK Corp.*, 228 F.R.D. 39, 40 (D.D.C. 2005) (citing

*Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir. 1993)).  Because the facts in this case are not in dispute,

and the Court will look to the undisputed facts contained in the submissions by the parties,

Defendants' Rule 12(b)(6) motion is hereby considered as a motion for summary judgment.  *See*

*Microsensor, Inc.*, 228 F.R.D. at 40; *see also Swedberg v. Marotzke*, 339 F.3d 1139 (9th Cir. 2003)

(conversion from Rule 12(b)(6) to Rule 56 cannot take place unless court indicates that it is not

excluding material presented beyond the pleadings); *Finley Lines Joint Protective Bd. Unit 200 v.*

*Norfolk S. Corp.*, 109 F.3d 993, 995-97 (4th Cir. 1997) (same).

      Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To

determine which facts are "material," a court must look to the substantive law on which each claim

rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose

resolution could establish an element of a claim or defense and, therefore, affect the outcome of the

action.  *Celotex*, 477 U.S. at 322.

      In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id*. at 252.  To prevail on a motion for

summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a

showing sufficient to establish the existence of an element essential to the party's case, and on which

that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  By pointing to the absence

of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Id.*

## III.  ANALYSIS

Defendants argue that Mr. Kamen's allegations that they violated the PHRA, the

DCHRA, and ERISA are time-barred.  Thus, they assert, the Court should dismiss those claims from

the Complaint.

### A.  Claim of Disability Discrimination under the PHRA

The PHRA requires a claimant to file a verified administrative complaint with the

PHRC within 180 days of the alleged action of discrimination as a prerequisite to filing suit.  43 Pa.

Stat. Ann. §§ 959(a)-(h); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) ("To bring

suit under the PHRA, plaintiff must first have filed an administrative complaint with the PHRC

within 180 days of the alleged act of discrimination.").

Without doubt, Mr. Kamen submitted Intake Questionnaires and other documentation

to the EEOC Intake Supervisor in Pittsburgh on April 26, 2005, and asked that the documents be

treated "as plaintiff Kamen's verified Charge and Complaint of Discrimination (disability)."  *See*

Defs.'s Mem., Yellig Decl. Ex. 1.  Without doubt, the EEOC promptly transmitted that

documentation to the PHRC.  The Intake Questionnaire and supporting documents contained

substantive information concerning his charge and were filed within 180 days of his discharge.

Mr. Kamen argues that this filing was timely and that his signature, under a box on

the form that states, "I hereby verify . . ." with the instruction to sign and date below, *id.*, was

sufficient to satisfy the EEOC and, by extension, the PHRC, under the Work Share Agreement

between them.    He warns that "Defendant[s are] asking this Court to ignore the clear

pronouncements of both the federal and state agencies regarding not only the process for filing a

Charge of Discrimination but also to ignore both agencies' obvious acceptance of Kamen's charge

for jurisdictional purposes."  Pl.'s Resp. to Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss at

2.[2]  Mr. Kamen distinguishes *Commonwealth of Pennsylvania v. School District of Philadelphia*, 616

A.2d 969 (Pa. 1992),[3] because plaintiff in that case had failed to file any charge, whether verified or

not, until nearly two years after he was told that his contract would not be renewed.   *Id.* at 970-971.

Inasmuch as there is no doubt that Mr. Kamen's Intake Questionnaires were timely submitted to the

EEOC and PHRC, and "verified" by his signature as directed, Mr. Kamen urges the Court to reject

Defendants' motion to dismiss Count II.

Defendants do not rely on the 1992 case which Mr. Kamen has ably distinguished

from his own situation.  Rather, they cite *Commonwealth of Pennsylvania v. School District of*

*Philadelphia*, 562 A.2d 313 (Pa. 1989), a completely different case.  In the 1989 case, the mother

of an African-American student filed an unverified charge with PHRC complaining that her son had

been discriminated against by his school.  The unverified charge was filed on or about July 1, 1986,

by way of a "completed Commission questionnaire from Sandra Lewis alleging that the School

District of Philadelphia had discriminated against her son because of his race."  *Id.* at 314.  This

---

[2]  The Court grants Mr. Kamen's opposed Motion for Leave to File Response to
Defendants' Reply Memorandum in Support of Motion to Dismiss [Dkt. #13].

[3]  The Court notes that Mr. Kamen's citation to 616 A.2d 969 (Pa. 1992) is actually
*Vincent v. Fuller, Co.*, 616 A.2d 969 (Pa. 1992), which involved another decision by the
Supreme Court of Pennsylvania that held that filing an unverified age discrimination complaint
with the state Human Rights Commission, along with a previously verified complaint, was
insufficient to invoke the Commission's jurisdiction.

questionnaire was filed within 90 days after the alleged discrimination, as the law then required. A

verified charge containing the same allegations was filed on November 24, 1986, more than 90 days

after the student left the offending school. *Id.* When the school district moved to dismiss the charge

as time-barred, a hearing officer ruled against it. "The hearing officer treated the questionnaire as

an unverified complaint, the lack of verification having been 'corrected' within a reasonable time

by the filing of the complaint form in November." *Id.*; *see* 16 Pa. Code § 42.11(d) ("complaints that

do not fully conform with § 42.31 . . . will be considered filed on the date received by the

Commission but may be quashed at the discretion of the Commission if such non-conformity is not

remedied by amendment or otherwise within a reasonable time"). The PHRC attempted to

investigate the charge by serving a subpoena on the school district, which refused to comply in order

to obtain judicial review of whether the charge was timely. "The Commonwealth Court rejected the

Commission's reasoning and denied its petition for enforcement of the subpoena," instead finding

that timely verification was necessary. *Id.*

   The evenly split (3-3) Pennsylvania Supreme Court left the decision of the

Commonwealth Court the current state of the law in Pennsylvania. Two Justices joined Justice

Zappala in a decision affirmed the lower court. The decision quoted *Murphy v. Commonwealth*, 486

A.2d 388, 392 (Pa. 1985), which held:

> [b]y statute the jurisdiction of the Human Relations Commission may be
> invoked by filing a verified complaint 'which shall set forth the particulars'
> of the discrimination practice complained of.  43 P.S. § 959. (citation
> omitted).  A filing which does not comply with these strictures improperly
> invokes the Commission's jurisdiction, and is in fact a nullity.

*Commonwealth v.  School District of Philadelphia*, 562 A.2d at 314. Applying the same reasoning,

Justice Zappala "reject[ed] 'the contention that the second pleading corrected the first, since [it]

-10-

could not properly be construed to convey ex post facto jurisdiction beyond the statutory limit.'" *Id.* at 31-315 (quoting *Murphy v. Commonwealth*, 486 A.2d at 392).

Two other Justices joined Justice Larsen in an Opinion in Support of Reversal. *Commonwealth v. School District of Philadelphia*, 562 A.2d at 315. Justice Larsen described formal verification as only a "technical rule of pleading and practice," *id.* at 316 (citation omitted), and held that the PHRA should be liberally construed to give effect to its purpose. Therefore, Justice Larsen concluded that "the failure of Mrs. Lewis to conform to the verification requirement was cured by the filing, within a reasonable time, of the second verified complaint." *Id.* at 316-317.

This 1989 decision of the Pennsylvania Supreme Court applies with special force here. While the Justices split on whether an initial unverified questionnaire could be corrected by a later verified complaint, all agreed that a formally verified complaint must be filed with the PHRC to invoke its jurisdiction. Mr. Kamen filed his administrative complaint with the PHRC in Pittsburgh, Pennsylvania, on July 6, 2005. *See* Defs. Mem., Yellig Decl., Ex. 2. This was not within the 180 days of the alleged act of discrimination; the IBEW terminated the Mr. Kamen's employment on December 8, 2004.[4] *See* Am. Compl. ¶ 36. The willingness of the federal EEOC to accept Mr. Kamen's Questionnaires notwithstanding, each State establishes for itself the requirements for invoking its administrative processes. Thus, for instance, all the charges that Mr. Kamen filed with the DCOHR were formally notarized. Indeed, the formal EEOC charge form itself provides a block for notarization if required by a State or local EEO agency.

The difference of opinion among the Justices of the Pennsylvania Supreme Court has

---

[4] By this calculation, Mr. Kamen's administrative complaint was filed 210 days after his employment was terminated.

not been clarified in the years since the 1989 opinion. The federal courts in Pennsylvania have therefore held that technical defects in an initial pleading are fatal and incurable without a timely amendment under the PHRA. *See Allen v. City of Philadelphia*, No. 05-2755, 2006 U.S. Dist. LEXIS 9048, *2 (E.D. Pa. Mar. 8, 2006) (rejecting argument that Charge of Discrimination, filed with EEOC and cross-filed with PHRC 7 days after 180-day statutory time limit, related back to Charge Questionnaire submitted to EEOC within 180 days of discharge). Some courts have predicted that the Pennsylvania Supreme Court will adopt Justice Larsen's Opinion in Support of Reversal. *Valentin v. Am. Red Cross, Penn Jersey Region*, No. 01-6609, 2003 U.S. Dist. LEXIS 7612 (E.D. Pa. Apr. 11, 2003); *Hayman v. WYXR-FM*, No. 91-6444, 1992 U.S. Dist. LEXIS 12501, 16-17 (E.D. Pa. Aug. 21, 1992); *Vuong v. J.C. Penney*, No. 04-3940, 2005 U.S. Dist. LEXIS 19150 (E.D. Pa. June 1, 2005). The *Vuong* court "ascribed to the reasoning" of *Valentin* and *Hayman*, but acknowledged that the 1989 decision in *Commonwealth v. School District of Philadelphia* "leav[es] the state of Pennsylvania such that technical defects in an initial pleading are fatal, and incurable by untimely amendment." *Vuong,* 2005 U.S. Dist. LEXIS 19150 at *11.

Having belatedly filed his administrative complaint with the PHRC, Mr. Kamen cannot now sue for alleged violations of the PHRA. Count II of his complaint must be dismissed as a matter of law.

### B. Claims of Sexual Orientation Discrimination under the DCHRA

The initial complaint in this matter was filed on June 6, 2006, soon after Mr. Kamen received the Right to Sue letter from the EEOC. Defendants argue that most of the claims in Count IV, which allege violations of the DCHRA because of Mr. Kamen's sexual orientation, are time-barred because suit was not filed within one year of his discharge on December 8, 2004, even though

it is undisputed that he filed timely administrative complaints within the one-year period.[5]  *See* Defs.

Mem., Yellig Decl. Ex. 5 (administrative complaint received May 9, 2005).  Mr. Kamen argues that

*Vitikacs v. Am. Legion*, No. 02-CA-1-202, 2003 WL 22004935 (D.C. Super. June 8, 2003),

recognized that filing an administrative complaint with DCOHR tolls the DCHRA statute of

limitations and, therefore, none of the claims in Count IV is time-barred.  *See* Pl.'s Opp. at 4.

The only problem with Mr. Kamen's argument, which understandably relies on

*Vitikacs*, is that the D.C. Court of Appeals had already held, in *Anderson v. United Safe Deposit Co.*,

552 A.2d 859, 863 (D.C. 1989), that filing an administrative complaint with the DCOHR does not

toll the DCHRA statute of limitations period of one year to file a court complaint.  *Id.* (holding that

DCHRA statue of limitations bars any court suit not brought within one year of its occurrence,

regardless of whether plaintiff initially filed an administrative complaint).  *See also Weiss v. Int'l

Bhd of Elec. Workers*, 729 F. Supp. 144, 146 (D.D.C. 1990) (following *Anderson*); *Clifton v. Fed.

Nat'l Mortgage Ass'n*, No. 97-2302, 1998 WL 419741, at *2 (D.D.C. Jan. 14, 1997) (finding that

filing an administrative complaint with DCOHR does not toll DCHRA statute of limitations period).

*Vitikacs* did not cite or distinguish *Anderson* and, in any case, the D.C. Court of Appeals serves as

the supreme court for the District of Columbia and has the final word on questions of law.  *Anderson*

---

[5]  Defendants do not move to dismiss those allegations in Court IV of the Amended
Complaint that allege that Defendants "have had and continue to maintain through the present a
policy and practice of hostility and prejudice towards homosexuals."  Am. Compl. ¶ 83.  The
Court must accept all factual allegations of a complaint as true when considering a motion to
dismiss pursuant to Rule 12(b)(1), unless they can be refuted by undisputed facts evidenced in
the record.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S.
163, 164 (1993); *Coalition for Underground Expansion*, 333 F.3d 193, 198 (D.C. Cir. 2003).
Defendants admit that at this stage of the litigation they cannot assert that Mr. Kamen will be
unable to establish a set of facts that support the allegation that defendants currently maintain a
policy and practice of hostility and prejudice toward homosexuals.  *See* Defs. Mem. at 27 n. 6.

clearly distinguished Title VII, which does toll the statute of limitations during the administrative

process, from the DCHRA:

> We perceive no such policy [preferring administrative remedies before court
> suits] in our local act, as the commission of a discriminatory practice
> immediately vests a person aggrieved thereby with "a cause of action in any
> court of competent jurisdiction *unless such* person has filed a complaint .
> . . [with the OHR]." In short, unlike the federal statute, the Act provides for
> an *ab initio* election of remedies.
>
> The same subsection discloses that the exercise of choice to go the
> administrative route does not forever bar a complaint from access to the
> courts. If complainant decides to reverse course and withdraws the OHR
> complaint (presumably before the deadline fixed by § 1-2544)[6] a proviso
> states that the complaint "shall maintain all rights to bring suit, *as if no
> complaint had been filed.*" The underscored clause makes it clear, that a
> grievant who files an administrative complaint and then withdraws it in
> timely fashion is on no better footing than a grievant who passes up the
> administrative process and elects to sue. If the latter does not commence
> suit until fourteen months after the allegedly discriminatory discharge, such
> suit would obviously be barred by the one year limitations period. Plainly
> the first grievant is not entitled to different treatment upon also failing to
> file suit within a year.
>
> We deem the provision to subsection 1-2556(a) as dispositive of the tolling
> issue and therefore hold that the appellant's failure to begin her action in the
> Superior Court within one year after the asserted discriminatory act
> occurred, was a compelling ground for dismissal.

*Anderson*, 552 A.2d at 862-63 (footnotes and internal references to footnotes omitted and emphasis

in original). *Anderson* has been fully accepted by the federal courts in the District of Columbia.

*See Coleman v. Potomac Electric Power Co.*, No. 04-7043, 2004 U.S. App. LEXIS 21820, at * 2

(D.C. Cir. Oct. 19, 2004) ("In addition, the district court correctly held appellant's claim under the

D.C. Human Rights Act of 1977 ('DCHRA') time-barred. *See* D.C. Code § 2-1403.16(a) (statute

---

[6] Section 304 of the DCHRA was numbered in the D.C. Code at the time of *Anderson* at
§1-2544. It has subsequently been renumbered in the D.C. Code as § 2-1403.04.

of limitations for DCHRA claims is one year)", *aff'g Coleman v. Potomac Electric Power Co.*, 310 F. Supp. 2d 154, 159 (D.D.C. 2004).

        As a result, the claims in Count IV that Mr. Kamen was denied training opportunities, not permitted to assist at IBEW manufacturing conferences, never restored duties he had been assigned before his sick leave, denied promotion, and terminated because of his sexual orientation, are time barred by the one-year statute of limitations period under the DCHRA. *Vitikacs* notwithstanding, the controlling precedent of the D.C. Court of Appeals and the United States Court of Appeals for the District of Columbia Circuit compel this conclusion.

### C. Claim of Wrongful Discharge Under ERISA § 510

        Count III of the Amended Complaint alleges that Defendants terminated Mr. Kamen's employment in violation of § 510 of ERISA, 29 U.S.C. § 1140.[7] Essentially, Mr. Kamen alleges that Defendants violated ERISA when they terminated his employment in order to interfere with his continuing receipt of health benefits under an IBEW-sponsored employee welfare benefit plan. Defendants argue that this claim is time-barred because Mr. Kamen's termination occurred more than one year before suit was filed. Mr. Kamen argues that the applicable statute of limitations

---

[7] Section 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pensions Plan Disclosure Act.

29 U.S.C. § 1140 (2005).

allows two years after discharge to file suit and, therefore, his ERISA claim is timely.

The uncertainty arises because § 510, which allows complaints of discrimination based on ERISA benefits, does not contain its own statute of limitations. When Congress fails to establish a time limitation for a federal cause of action, the courts adopt a local time limitation if it is not inconsistent with federal policy to do so. *Watts v. Parking Mgmt.*, No. 02-2132, 2006 U.S. Dist. LEXIS 12873, *8 (D.D.C. March 12, 2006) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33 (1995) & *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)).

A court looks "to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiff" in order to determine the federal limitations period. *Id.* In *Watts*, the plaintiff complained that the employer had terminated him because of his age so as to prevent him from receiving retirement benefits. *Id.* at *10. The court found that these allegations were "precisely the kind of facts and type of allegations one would expect to see in a claim for wrongful or discriminatory termination based on age." *Id.* Therefore, it held that "the statute most closely analogous to Section 510 is the District of Columbia's wrongful discharge/employment discrimination statute – the DCHRA." *Id.* at *10-11. The *Watts* court rejected the plaintiff's arguments that the three-year statute of limitations applicable to contract actions or the "catch-all" three-year statute of limitations should apply. *Id. Watts* itself was following the precedents of the Second, Fifth, Sixth, Seventh, Ninth and Eleventh Circuits, *id.* at 13-14, which the D.C. Circuit had already cited approvingly. *Id.* at 13 (noting that "the D.C. Circuit in *Andes v. Ford Motor Co.* [70 F.3d 1332, 1337 n.7 (D.C. Cir. 1995)] cited with approval the decisions of the other jurisdictions to apply the state statute of limitations for wrongful discharge or employment discrimination to Section 510 claims").

-16-

Defendants urge the Court to adopt the reasoning of *Watts* and to apply the one-year statute of limitations from the DCHRA because the gravamen of Mr. Kamen's complaint is that they wrongfully terminated his employment because of his sexual orientation, and his ERISA claim is based on the same set of facts. *See* Defs.' Mem. at 28-29.  Mr. Kamen counters that the most apt limitations period under local law is two years for wrongful discharge in violation of public policy. He cites the analysis used by the Seventh Circuit in *Berger v. AXA Network, LLC*, 459 F.3d 804 (7th Cir. 2006).  *Berger*, however, looked to the tort of retaliatory discharge contained in state workers' compensation law, not wrongful discharge against public policy.  *Id.* at 814-15.  An action for retaliatory discharge for filing a workers' compensation claim in the District of Columbia is one year, D.C. Code § 1514 (2006), so the *Berger* analogy is of no assistance of Mr. Kamen.

In the District of Columbia, the statute of limitations applicable to a claim of wrongful discharge in violation of public policy is the three-year "catch-all" statute of limitations set forth in D.C. Code § 12-301(8) (2006).  *Stephenson v. Am. Dental Ass'n*, 789 A.2d 1248, 1249 (D.C. 2002) ("There is no dispute that his claim, based on public policy, is governed by the three-year statute of limitations set forth in D.C. Code § 12-301(8) (2001).").  Ultimately, this case law is of no help to Mr. Kamen.  The District of Columbia Court of Appeals has recognized a "public policy exception to the 'at-will' employment doctrine . . . based on the employee's refusal to perform an illegal act."  *Stephenson*, 789 A.2d at 1249 (citing *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 33 (D.C. 1991)).  No similar allegation is made here to show an analogous public policy breach.

The Court agrees with Defendants that Mr. Kamen's claim in Count III, although arising under ERISA § 510, most closely resembles a discrimination claim under the DCHRA. Therefore, a one-year statute of limitations from the DCHRA should be borrowed, which means that

-17-

the suit was filed too late to be maintained under ERISA.  Count III will be dismissed.

## IV.  CONCLUSION

For the reasons stated in this memorandum opinion, Counts II, III and most of Count

IV will be dismissed.  A memorializing order accompanies this opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: August 15, 2007

-18-