UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN A. KAMEN | ) | Case No. 1:06CV01063(RMC) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD | ) | |
| OF ELECTRICAL WORKERS, AFL-CIO and | ) | |
| EDWIN D. HILL, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

## DECLARATION OF EDWIN D. HILL

I, Edwin D. Hill, make this declaration based on personal knowledge:

1.  I am International President of the International Brotherhood of Electrical Workers, AFL-CIO (hereafter "IBEW").

2.  I have been a member of IBEW Local No. 712 in Beaver, Pennsylvania since 1960 when I became an apprentice electrician.

3.  I was appointed International President of the IBEW on January 29, 2001 by the IBEW International Executive Council to complete the unexpired term of IBEW International President John J. Barry, who retired from office on that date.

4.  I was subsequently elected IBEW International President for a five-year term at the 36th IBEW International Convention in September 2001 and again at the 37th IBEW International Convention in September 2006.

5.  Prior to becoming IBEW International President, I served from April 1, 1997 until January 29, 2001 as both IBEW International Secretary and International Secretary-Treasurer.

6.     Before I was appointed by International President Barry to complete my predecessor's unexpired term as IBEW International Secretary on April 1, 1997, I served from May 1, 1994 until March 31, 1997 as International Vice-President of the IBEW Third District, which provides support services to Local Unions affiliated with the IBEW that are located in Delaware, New Jersey, New York, and Pennsylvania,.

7.     Preceding my appointment as IBEW International Vice-President of the Third District, I served as an IBEW International Representative assigned to the IBEW Third District from August 1, 1982 when I was appointed to that position by Charles H. Pillard, IBEW International President, UNTIL May 1, 1994 when I was appointed International Vice-President of the IBEW Third District.

8.     Preceding my service with the IBEW, I actively participated on various committees in IBEW Local No. 712 and served as Vice-President and President of Local No. 712 from 1964–1970, and later as Business Manager of Local No. 712 from 1970 to 1982.

9.     My records indicate that Mr. Steven Kamen was appointed an IBEW International Representative by IBEW International President Barry effective July 1, 1997 pursuant to the terms and conditions stated in a letter of employment dated June 26, 1997 and signed by IBEW International President. *See* Exhibit No. 1 attached hereto.

10.     President Barry's June 26, 1997 letter of employment expressly stated that it "is intended to inform you of the various current aspects of your employment" and that it "does not constitute a contract of employment nor does it establish a fixed term of employment inasmuch as you serve at the pleasure of the International President." *Id.*

11.     Mr. Kamen was assigned by International President Barry to the IBEW Third District under the supervision and direction of IBEW International Vice-President Lawrence E. Rossa.

12.     "International Representative" is a designation given by the IBEW to professional staff selected by the International President, on the basis of the recommendations of one of eleven IBEW Vice-Presidents, primarily but not exclusively from among members of IBEW Local Unions.

13.     There are 65 International Representatives assigned to the IBEW's headquarters in Washington, D.C. and approximately 139 others assigned to the IBEW's eleven vice-presidential districts and elsewhere.

14.     IBEW International Representatives share the same job title and compensation regardless of the particular department or operation to which they are assigned.

15.     When they are appointed, IBEW International Representatives are informed that they are at the disposal of the International President, and are subject to reassignment operationally and geographically at any time.

16.     The annual salary of Senior International Representatives, which is currently $128,576.00, is set annually on October 1 based on a formula set forth in the IBEW International Constitution.

17.     Newly-appointed International Representatives are treated as "probationary" for approximately two years before they are designated as "Senior International Representatives."

18.     The salaries of International Representatives not yet "Senior" are less than the salary of a Senior International Representative; however, they are expected to perform the same kind of duties performed by Senior International Representatives.

19.    Therefore, designation as a Senior International Representative is not a promotion, as such, inasmuch as both International Representatives not yet "Senior" and Senior International Representatives are "employees at will" and serve at the pleasure of the International President.

20.    Thus, the significance of designating an International Representative as a "Senior International Representative" relates to his or her salary, not his or her job responsibilities.

21.    I became aware that Mr. Kamen was sexually attracted to men in 2001 when I was informed about an episode that occurred at the IBEW Manufacturing Conference, which was held February 28 – March 2, 2001 in Chicago, Illinois.

22.    Mr. Kamen passed a note to a male IBEW member, who was also attending the conference, in which Mr. Kamen proposed a sexual liaison with him.

23.    The recipient of the note from Mr. Kamen gave it to an IBEW International Representative assigned to the Sixth Vice-Presidential District, which was hosting the conference because Chicago, Illinois is in its geographic jurisdiction.

24.    The International Representative then gave Mr. Kamen's note to Jeremiah O'Connor, IBEW International Secretary-Treasurer, who until two months earlier had served as the IBEW Sixth District International Vice-President.

25.    International Secretary-Treasurer O'Connor met with me about Mr. Kamen's note during which I said, "Just give me the note. I know Steve, I'll talk to him."

26.    Subsequently, I made a point of discussing the note with Mr. Kamen the next time he saw him.

27.     I told Mr. Kamen at that meeting that I don't care about his sexual preference; however, I told him that I resented the fact that he had propositioned a fellow IBEW member at an IBEW meeting.

28.     I gave the note back to Mr. Kamen and said, "Please don't let it ever happen again."

29.     Mr. Kamen assured me that he would "keep it out of the Brotherhood [IBEW]."

30.     Mr. Kamen then wrote a personal letter to me in which he expressed embarrassment that the episode had occurred during a "working situation," apologized for the incident, and promised that it would never happen again.

31.     Thus, I have had reason to believe that Mr. Kamen is a homosexual since 2001; however, I never discussed Mr. Kamen's sexual orientation with anyone other than Mr. Kamen and International Secretary-Treasurer O'Connor.

32.     On November 30, 2004, International Vice-President Donald C. Siegel called to inform me that he had met with Mr. Kamen on that date and advised him that his services as an International Representative were no longer needed in the Third District.

33.     International Vice-President Siegel also sent an e-mail message to me on November 30, 2004 attached to which was a copy of a letter addressed to me from him, which set forth the reasons for Vice-President Siegel's decision not to retain Mr. Kamen as an International Representative on the Third District staff.

34.     International Vice-President Siegel also sent a copy of his November 30, 2004 letter to me by U.S. Postal Service mail. *See* Exhibit No. 2 attached hereto.

35.     I did not read Vice-President Siegel's November 30, 2004 letter until December 3, 2004, which date I noted directly underneath the date that appears at the top the letter. *Id.*

36.    In addition, Vice-President Siegel placed in the U.S. Postal Service mail a memorandum to me with a copy of spread sheets, which track the date on which the weekly activity reports submitted by each International Representative assigned to the Third District, is received in the Third District Office.

37.    Mr. Kamen sent an e-mail message to me on December 1, 2004, which requested a meeting with me "as soon as possible, at a location and time convenient for [me]." *See* Exhibit No. 3 attached hereto.

38.    I was absent from the office for several days during this time and, as a result, I did not read Mr. Kamen's e-mail until I returned on December 8, 2004.

39.    I had decided, based on International Vice-President Siegel's November 30, 2004 letter, that Mr. Kamen's tenure as an IBEW International Representative should be terminated inasmuch as it appeared that he was unable to perform the duties and responsibilities of that position in the manner that I expect.

40.    Accordingly, I had asked my staff to prepare a draft letter of termination for my consideration when I returned to the office on December 8, 2004.

41.    In the meantime, Mr. Kamen sent another e-mail message to me on December 8, 2004, which stated that he "plan[ned] to continue to perform [his] duties, servicing [his] Locals, attending previously scheduled meetings including a Steward's Training" inasmuch as he had received no further communication or direction since he met with Vice-President Siegel on November 30, 2004. *See* Exhibit No. 4 attached hereto.

42.    After reading Mr. Kamen's December 8, 2004 e-mail, I inquired about the status of the draft letter of termination, which I had directed my staff to prepare for my consideration

before left the office, and I immediately replied to Mr. Kamen's e-mails. *See* Exhibit No. 5 attached hereto.

43.    I apologized in my December 8, 2004 e-mail for failing to answer Mr. Kamen's earlier e-mails explaining that I was away from my office for a few days and that I was trying to get caught up with the work that had accumulated in his absence. *Id.*

44.    I assured Mr. Kamen in my December 8, 2004 e-mail that I was aware of the situation and, therefore, I advised him that I was putting him on administrative leave and directed him "not to continue with [his] assignments." *Id.*

45.    I then stated in my December 8, 2004 e-mail to Mr. Kamen that I would "be in touch with [him] shortly to advise [him] what to do." *Ibid.*

46.    Later that day, I prepared a letter to Mr. Kamen, which notified him that based on International Vice-President Siegel's assessment of his job performance his employment as an International Representative of the IBEW would be terminated effective December 31, 2004. *See* Exhibit No. 6 attached hereto.

47.    I was not aware that Mr. Kamen was infected by the human immunodeficiency virus (HIV) at the time I terminated his employment as an IBEW International Representative on December 8, 2004.

48.    In fact, I was not aware that Mr. Kamen was infected by HIV until I read the Complaint that Mr. Kamen filed in the above-referenced case against me and the IBEW on June 6, 2006, which alleges that I terminated his employment with the IBEW on December 8, 2004 because, among other things, I knew he was infected by HIV.

49.    I have reviewed the Amended Complaint that Mr. Kamen filed in the above-referenced case against me and the IBEW on August 14, 2006.

50.    Specifically, paragraph 83 of the Amended Complaint alleges that the IBEW and I "have had and continue to maintain through the present a policy and practice of hostility and prejudice towards homosexuals."

51.    Neither I nor the IBEW maintain any policy and/or practice of hostility and/or prejudice towards homosexuals.

52.    In fact, just the opposite is true.

53.    In October 1998, the IBEW adopted a revised "Anti-Harassment Policy," which was distributed to every IBEW employee, including International Representatives, and incorporated it in the IBEW Personnel Policy Manual. *See* Exhibit No. 7 attached hereto.

54.    I issued this revised Anti-Harassment Policy, which prohibits "unwelcome conduct, whether verbal or physical that is based upon a person's . . . protected group status," which includes sexual orientation, in my capacity as IBEW International Secretary.

55.    The IBEW "Anti-Harassment Policy," states that "the IBEW will not tolerate harassing conduct that . . . creates an intimidating, hostile, or offensive working environment," and "[i]f an investigation confirms that harassment has occurred, the IBEW will take corrective action, including such discipline, up to and including immediate termination of employment, as is appropriate."

56.    Accordingly, Mr. Kamen should have notified the Director of the Personnel Department or, more appropriately under the circumstances, the IBEW International Secretary-Treasurer if he believed the IBEW and I maintain a policy and practice of hostility and prejudice towards homosexuals.

57.    To the best of my knowledge and belief, however, Mr. Kamen never invoked the IBEW's Anti-Harassment Policy to have the IBEW's alleged policy and practice of hostility and

prejudice towards homosexuals investigated and, if the investigation confirmed that such a policy or practice exists, to take corrective action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Edwin D. Hill

Dated: February 25, 2008.





June 26, 1997

**INTERNATIONAL
BROTHERHOOD
OF ELECTRICAL
WORKERS**

1125 Fifteenth Street, N.W.
Washington, DC 20005
(202) 833-7000

Mr. Steven A. Kamen
19 Placid Avenue
Middletown, New York  10941

Dear Brother Kamen:

**J. J. BARRY**
International President

**EDWIN D. HILL**
International Secretary

This is to notify you of your employment as an International Representative, effective July 1, 1997. You will work under the supervision of, and report to, Lawrence E. Rossa, International Vice President of the Third District. Your credential folder is enclosed, along with an identification card which you may carry in your wallet.

You will be reimbursed for actual expenses for hotel and meals, when away from home city, in accordance with the Rules and Instructions of May 1, 1995, which is enclosed.  You will also be reimbursed for actual transportation costs, if public transportation is used, or thirty-one cents per mile for use of your automobile when used on business of the Brotherhood, and for faxes, postage, etc. Claims for reimbursement are to be submitted in accordance with the Rules and Instructions of May 1, 1995.

Our workweek is Sunday through Saturday, inclusive.  Your expense account (original and copy) is to be submitted to Vice President Rossa every two weeks.  Your first expense account should be for the period of July 1 through July 14, 1997, and every two weeks thereafter.

Enclosed is an Employee's Withholding Exemption Certificate, which is to be filled out and returned to this office as soon as possible.  International Representatives are also covered by the National Electrical Benefit Fund Retirement Plan, as well as the Brotherhood's Retirement Plan (IBEW Constitution, Article III, Section 11).

You will be covered under the following plans established by the Brotherhood for its International Officers and Representatives:

1) Group Life Insurance (paid in full by the International Office and effective the first of the month following the date of your employment).

2) Blue Cross and Blue Shield family coverage (paid in full by the International and effective on the day of your employment).

JUN 3 0



**DEFENDANT'S
EXHIBIT
No. 1**





**INTERNATIONAL
BROTHERHOOD
OF ELECTRICAL
WORKERS**

Mr. Steven A. Kamen
June 26, 1997
Page Two

3) **Delta Dental Plan** (effective on the day of your employment).

4) **Insurance (Workers' Compensation Policy).** You are fully covered by a Workers' Compensation Policy for on-the-job injuries. All such injuries should be reported immediately.

5) **Vision Care Plan** (effective the first of the month following the date of your employment).

6) **Paid Prescription Plan** (effective on the day of your employment).

7) **Prepaid Legal Services Plan** (which covers you and the members of your immediate family).

Please be further advised that the above statement is intended to inform you of the various current aspects of your employment. It does not constitute a contract of employment, nor does it establish a fixed term of employment, inasmuch as you serve at the pleasure of the International President.

You will be expected to carry a paid-up dues receipt on your person at all times.

Best wishes.

Fraternally yours,

J. J. Barry
International President

JJB:edh
Enclosures
Copies to: Edwin D. Hill, I.S.
          IVP Rossa
          Accounting Department

# International Brotherhood
# of Electrical Workers

2004 DEC 3 PM 45



**Donald C. Siegel,** International Vice President
500 CHERRINGTON PARKWAY, SUITE 325
CORAOPOLIS, PA 15108
(412) 269-4963  •  Fax (412) 269-4964

**Edwin D. Hill,** International President
Jeremiah J. O'Connor, International Secretary-Treasurer

| New York | New Jersey | Pennsylvania | Delaware |

November 30, 2004
Dec. 3, 04

SCAN

Edwin D. Hill
International President
International Brotherhood of
  Electrical Workers
1125 15th Street NW
Washington, DC 20005

           RE:    International Representative Steven Kamen

Dear Sir & Brother:

This is to inform you that I no longer have a need for the services of International Representative Steve Kamen on the 3rd District Staff.  Since becoming International Vice President in March 2002, I have had several conversations with Representative Kamen regarding his timely submission of weekly work reports, expense reports and the completion of his assignments.  In each instance he assured me that he would attend to this and that his reports would be submitted on time.  Regrettably, that has not been the case.

I received 13 weekly reports on May 27, 2004 for the weeks of February 7 through May 1, 2004. I have not received any reports from him since, a time frame covering 30 weeks to date. Additionally, he has not responded to several emails from this office requesting information.  In checking with the computer department, they inform me that there is no recent record of Kamen logging in, although there is a record of his Outlook being accessed on October 14, 2004; however, he did not respond to an email sent to him on October 5, 2004 requesting his reporting form for the per capita objection plan nor has he called.

I met with Representative Kamen at the Progress meeting in Atlantic City on May 11 of this year to discuss these and other matters regarding his timely completion of assignments.  Again, he assured me that he would bring everything up to date and file his reports and complete his assignments on time in the future.  As stated above, he has not followed through with that commitment and indeed this problem has gotten worse.  I also spoke with him about his lack of response to emails and told him that if he were having any problems with his laptop to report it immediately and it would be addressed.  I also offered to provide specific training if necessary in using his laptop.

DEFENDANT'S
EXHIBIT
No. 2

International Brotherhood of Electrical Workers
Third District

Edwin D. Hill
November 30, 2004
Page 2

He has not requested any training nor has he reported any problems with his laptop since this meeting. As you know, the duties of an International Representative in the field require a great deal of self-direction. All of the 3rd District Staff is expected to perform their duties with a minimum of supervision. They are assigned to service a number of Local Unions on a regular basis and to carry out the timely completion of assignments from both the 3rd District Office and the International Office. Additionally, all Representatives in the 3rd District are frequently notified of pending assignments in their file and are expected to complete those assignments in a timely manner. In spite of repeated requests to clear his pending assignments, he has three in his file dating as far back as 1999. In one case, Representative Kamen took no action on a particular assignment for over seven months and it became necessary for me to assign another Representative who completed the assignment in less than 30 days.

During my discussions with Representative Kamen about these matters, he has always apologized and reassured me that he would take steps to improve his performance. He has stated that deaths in his family and illness have hampered his performance. I have taken these matters into consideration and have exercised much patience with him during my tenure; however, I have come to the conclusion that he is either incapable of improving or unwilling. In either case it has become quite clear that I no longer have the patience to tolerate his lack of attention to his duties as an International Representative. This neglect and complaints from some of the local unions that he serviced has forced me to reassign local unions to other staff members. I am now in the midst of reorganizing the staff for the coming year and in all good conscience, I can no longer accept this behavior from him.

I met with Steve on this date and when I informed him of the above, he again offered no other reasons than personal problems. I told him that I no longer needed him on the Third District staff and that I would so notify you. He did bring to the meeting most of his delinquent weekly and expense reports. This is worth noting because I did not mentioned to him in my letter or email the purpose of our meeting.

At the conclusion of our meeting, I in no way inferred anything other than I would be referring this matter to you and that he would hear from your office. Therefore, I am herewith notifying you that I no longer have any need for Representative Kamen on the 3rd District Staff.

Best wishes.

Fraternally yours,

Donald C. Siegel
International Vice President

DCS:jm

**Kamen, Steven**

**To:**          Hill, Edwin D.
**Subject:**    Meeting

Dear Brother Hill,

I had a meeting yesterday with Vice President Siegel. He stated you were aware of both the meeting and the situation. I would like to meet with you as soon as possible, at a location and time convenient for you. I await your reply.

Fraternally,

Steven A. Kamen, IR

1

DEFENDANT'S
EXHIBIT

tabbies®

No.  3

**Kamen, Steven**

**From:**   Kamen, Steven
**Sent:**   Wednesday, December 08, 2004 1:07 PM
**To:**    Hill, Edwin D.

December 8, 2004

Dear President Hill,

   I am sorry to bother you again, as I am sure you are very busy.

When I met with Vice President Siegel last week, he had harsh words to say about certain aspects of my job performance. To date, I have received no other communication or direction. Consequently I plan to continue to perform my duties, servicing my Locals, attending previously scheduled meetings including a Steward's Training.

Fraternally,

Steven A. Kamen, IR

**Tracking:**      Recipient          Delivery
             Hill, Edwin D.      Delivered: 12/8/2004 1:07 PM

1

**DEFENDANT'S EXHIBIT**
No. 4

**Kamen, Steven**

| | |
|---|---|
| **From:** | Hill, Edwin D. |
| **Sent:** | Wednesday, December 08, 2004 2:49 PM |
| **To:** | Kamen, Steven |
| **Cc:** | Siegel, Donald C.; Neidig, Jr., Lawrence F; O'Connor, Jeremiah J.; Larry Cohen (cohen@shermandunn.com) |
| **Subject:** | RE: Meeting |

Steve:

I am sorry for not getting back to you until now, however I was away for a few days and am just getting caught up.

I am aware of the situation and at this time am putting you on administrative leave and you are not to continue with your assignments.

I will be in touch with you shortly to advise you what to do.

Thanks

Ed Hill

-----Original Message-----
From: Kamen, Steven
Sent: Wednesday, December 01, 2004 4:34 PM
To: Hill, Edwin D.
Subject: Meeting

Dear Brother Hill,

I had a meeting yesterday with Vice President Siegel. He stated you were aware of both the meeting and the situation. I would like to meet with you as soon as possible, at a location and time convenient for you. I await your reply.

Fraternally,

Steven A. Kamen, IR

DEFENDANT'S
EXHIBIT
No. 5



**INTERNATIONAL
BROTHERHOOD
OF ELECTRICAL
WORKERS**®

*1125 Fifteenth Street, N.W.
Washington, DC 20005
(202) 833-7000
http://ibew.org*

**EDWIN D. HILL**
*International
President*

**JEREMIAH J. O'CONNOR**
*International
Secretary-Treasurer*

December 8, 2004

Mr. Steven Kamen
605 Slippery Rock Road
Slippery Rock, PA 16057

Dear Brother Kamen:

Under date of June 26, 1997, you received a letter from International President Barry notifying you of your employment as an International Representative of the IBEW, effective July 1, 1997. The letter stated that you were being employed by the International President, and it added that the letter "does not constitute a contract of employment, nor does it establish a fixed term of employment, inasmuch as you serve at the pleasure of the International President." That statement is consistent with Article IV, Section 3(d) of the IBEW Constitution, which states that the International President has the power to employ International Representatives and that "he has the power to discharge them."

Since the date of your employment, you have been working under the supervision of the International Vice President for the Third District, who is currently Donald C. Siegel. Based on a report of your performance as an International Representative that I have received from Vice President Siegel under date of November 30, 2004, I find that it is necessary to exercise my authority to discharge you from your position as an International Representative of the IBEW. Vice President Siegel's report demonstrates that you have been seriously delinquent in the filing of your required reports over a period of years, and that you have failed on a number of occasions to complete the assignments you have received from the Third District Office.

With respect to the former, Vice President Siegel advises me that he has had several conversations with you about your failure to file required reports in a timely manner. On some occasions, the reports are weeks late, and on other occasions they have been late by several months. For the period beginning May 1 of this year, no reports were received by Vice President Siegel until you delivered them to him late last month. Additionally, even when reports are turned in, you have frequently failed to provide all of the required information on the back of the form. Vice President Siegel also advises me that you have acknowledged several times that you had failed to file your reports as required, and that you have apologized for the failure on each occasion. Your failure with respect to the required reports is not new, and



DEFENDANT'S
EXHIBIT
No. 6





**INTERNATIONAL
BROTHERHOOD
OF ELECTRICAL
WORKERS®**

actually goes back a number of years. In fact, I am advised that there are several letters of apology, dating back to 1999, from you to me and to then Vice President Rossa in your file about this very issue.

Perhaps even more serious has been your inability on numerous occasions to carry out assignments received from the Third District Office. As you know, International Representatives are expected to perform their duties with a minimum of supervision, and they are expected to service their local unions and to complete assignments from the Third District Office on a timely basis. Vice President Siegel, however, has frequently experienced an inability to reach you at times when it was important to do so, and you have on many occasions not responded to e-mails from his office. I am advised that in spite of repeated requests to do so, you have failed to clear a number of assignments from the Third District, and you have three unfulfilled assignments in your file that date back as far as 1999. Included in your file is an April 21, 2003, letter from Vice President Siegel to you, expressing his displeasure with your being late in assignments and not handing in work and expense reports. His letter was a clear warning to you that improvement in your performance was required.

On one occasion, you failed to complete an assignment for more than six months, and it became necessary for Vice President Siegel to assign another Representative, who completed the assignment in less than thirty days. On another occasion, you were assigned to assist Local Union 1968 in its scheduled bargaining negotiations. The Local Union at that time had a brand new business manager, who was in need of assistance from an experienced International Representative. Even though you were scheduled to be at the Local Union for the negotiations, you failed to show up, and the Local Union could not reach you. On still another occasion, an assignment that you received in April of 2002 was not completed by you until January 2004. In addition, there have been complaints about your work from some of the locals that you service, which required Vice President Siegel to reassign some of your local unions to other members of his staff.

In sum, your performance as an International Representative has, for some time, been unacceptable. Vice President Siegel has spoken to you about these problems on several occasions, most recently in Atlantic City in May of this year. You assured him at that time that you would bring your reports up to date and complete your assignments on time in the future. According to Vice President Siegel, you have not followed through with those and earlier commitments you made, and the problems with your assignments and reports have only gotten worse. For all of these reasons, Vice President Siegel advised





**INTERNATIONAL
BROTHERHOOD
OF ELECTRICAL
WORKERS®**

you, when he met with you on November 30, 2004, that because of your failings, he no longer wished to retain you on the Third District staff.

In view of the lengthy history of your failings, and your inability to improve your performance as an International Representative in spite of warnings to you to improve and your commitments to do so, I must, in order to fulfill my obligations as International President of the IBEW, terminate you from employment as an International Representative of the IBEW, effective December 31, 2004.

You are to return all IBEW furnished credit cards and any property of the IBEW to Vice President Siegel upon receipt of this letter. Arrangements will be made by the Third District Office to pick up your IBEW leased vehicle.

Fraternally yours,

Edwin D. Hill
International President

EDH:nlc
Copy to International Vice President Donald Siegel, IBEW Third District

4.3

| SUBJECT: | **ANTI-HARASSMENT** | EFFECTIVE DATE: | 08/10/92 |
|---|---|---|---|
| APPROVED BY: | EDH | REVISION DATE: | 10/01/98 |

The International Brotherhood of Electrical Workers is committed to maintaining a work environment that is free of discrimination. In keeping with this commitment, we will not tolerate harassment of IBEW Employees by anyone, including any staff member, supervisor, co-worker, or patron of the IBEW.

Harassment consists of unwelcome conduct, whether verbal or physical, that is based upon a person's protected status; such as sex, color, race, ancestry, religion, national origin, age, physical handicap, medical condition, disability, marital status, veteran status, citizenship status, or other protected group status. The IBEW will not tolerate harassing conduct that affects tangible job benefits, that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile, or offensive working environment.

Sexual harassment deserves special mention. Unwelcome sexual advances, requests for sexual favors, or other sexually offensive behavior constitute sexual harassment when (1) submission to the conduct is an explicit or implicit term or condition of employment, (2) submission to or rejection of the conduct is used as the basis for an employment decision, or (3) the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

All IBEW Employees are responsible to help assure that we avoid harassment. If you feel that you have experienced or witnessed harassment, you are to notify immediately the Director of the Personnel Department; or in his absence, the International Secretary-Treasurer or his Executive Assistant over Personnel. The IBEW forbids retaliation against anyone for reporting sexual harassment, assisting in making a sexual harassment complaint, or cooperating in a sexual harassment investigation.

The IBEW's policy is to investigate all such complaints thoroughly and promptly. To the fullest extent practicable, the IBEW will keep complaints and the terms of their resolution confidential. If an investigation confirms that harassment has occurred, the IBEW will take corrective action, including such discipline, up to and including immediate termination of employment, as is appropriate.

**DEFENDANT'S EXHIBIT**

No. 7