**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN A. KAMEN** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:06cv01063 (RMC)** |
| | ) | |
| **v.** | ) | **JUDGE ROSEMARY M. COLLYER** |
| | ) | |
| **INTERNATIONAL BROTHERHOOD OF** | ) | |
| **ELECTRICAL WORKERS (IBEW)** | ) | |
| **and EDWIN D. HILL, an individual,** | ) | **Electronically Filed** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**CONCISE STATEMENT OF MATERIAL FACTS**

**AND NOW COMES** Plaintiff, Steven A. Kamen, by and through his counsel, Joseph H.

Chivers, Esquire, and respectfully submits his Response to Defendants' Concise Statement of

Material Facts and Plaintiff's Proposed Undisputed Material Facts.

**Defendant's Concise Statement of Material Facts**

1.       Steven A. Kamen (hereafter "plaintiff Kamen") began his employment by the IBEW as an

International Representative on or about July 1, 1997, pursuant to the terms and

conditions stated in a letter of employment dated June 26, 1997 and signed by IBEW

International President J.J. Barry. Declaration of Edwin D. Hill, International President,

International Brotherhood of Electrical Workers (hereafter "Hill Dec.") at ¶ 9 and Exhibit No. 1 attached thereto.

**Plaintiff's Response**

**Admitted.**

2.    IBEW International President Barry's June 26, 1997 letter of employment expressly stated that it "is intended to inform you of the various current aspects of your employment" and that it "does not constitute a contract of employment nor does it establish a fixed term of employment inasmuch as you serve at the pleasure of the International President." *Id.* at ¶ 10 and Exhibit No. 1 attached thereto.

**Plaintiff's Response**

**Admitted.**

3.    The annual salary of Senior International Representatives, which is currently $128,576.00, is set annually on October 1 based on a formula set forth in the IBEW International Constitution.

**Plaintiff's Response**

**Admitted.**

4.    Plaintiff Kamen was assigned by International President Barry to the IBEW Third District under the supervision of IBEW International Vice-President Lawrence E. Rossa. Hill Dec. at ¶ 11.

**Plaintiff's Response**

      **Admitted.**

5.     IBEW International President Edwin D. Hill, has known that plaintiff Kamen is homosexual since March 2001.  Hill Dec. at ¶¶ 21-31.

**Plaintiff's Response**

      **Admitted.**

6.     IBEW International Vice-President Donald C. Siegel frequently admonished plaintiff Kamen in writing and verbally about his failure to maintain regular contact with the IBEW Third District Office without much effect. Declaration of Donald C. Siegel (hereafter "Siegel Dec.") at ¶¶ 16, 18-22, Declaration of Michael D. Welsh (hereafter "Welsh Dec.") at ¶ 4-6 & 8.

**Plaintiff's Response**

      **Denied.  Siegel did not "frequently admonish" Plaintiff.  To the contrary, Siegel discussed it once with Kamen in or about May 2003 and never once mentioned any problems with communication until November 30, 2004, when Siegel informed Plaintiff that Siegel no longer wanted Kamen working for Siegel.  Welsh never admonished Plaintiff either in writing or verbally.  Kamen Affidavit (Exhibit 9 of Plaintiff's Memorandum).**

7.     On January 20, 2004, International Vice-President Siegel instructed plaintiff Kamen in a

memorandum, which was sent to him by regular mail, to arrange to attend the 2004

IBEW Manufacturing Conference scheduled for May 5-7, 2004 at the Frontier Hotel &

Casino in Las Vegas, Nevada. Siegel Dec. at ¶ 23 and Exhibit No. 1 attached thereto; *see*

*also* Welsh Dec. at ¶ 9.

**Plaintiff's Response**

**Admitted, but the very reason Kamen was unable to attend was because of his**

**serious illness and the inability to coordinate travel arrangements while he was ill**

**and in the hospital.  Kamen D.T. (Exhibit 3 of Plaintiff's Memorandum); Kamen**

**Affidavit (Exhibit 9).**

8.    Plaintiff Kamen decided not to attend the 2004 IBEW Manufacturing Conference even

though he was not instructed by International Vice-President Siegel or any other IBEW

officer or representative not to attend that meeting. Siegel Dec. at ¶ 24; *see also* Welsh

Dec. at ¶ 10.

**Plaintiff's Response**

**Denied.  Kamen was ill, was hospitalized and had no choice whether to attend or not**

**to attend because the arrangements would have had to have been made during the**

**time he was out of work and Plaintiff was physically incapable of making these**

**arrangements.  Id.**

9.    International Vice-President Siegel received a letter by fax on February 27, 2004 that was

signed by seven members of IBEW Local Union No. 1968, which is one of the Local

Unions that plaintiff Kamen was responsible for providing support services. Siegel Dec. at ¶25 and Exhibit No. 2 attached thereto.

**Plaintiff's Response**

**Admitted.**

10.    These union members expressed their dissatisfaction with the support services provided by plaintiff Kamen, stating that he had cancelled three meetings, each at the last minute, during a time in which they were engaged in collective bargaining with their employer. Siegel Dec.  at ¶ 26.

**Plaintiff's Response**

**Admitted as to what was stated in the letter but denied as to its significance.  Id.**

11.    International Vice-President Siegel sent an e-mail to plaintiff Kamen that same day, which asked him to "Call me ASAP." Siegel Dec. at ¶ 27 and Exhibit No. 3 attached thereto.

**Plaintiff's Response**

**Admitted but Kamen was incapable of responding since he was seriously ill at that point.  Siegel was contacted repeatedly during this period of time, however, by Kamen's two sisters, Randy Kamen and Debbie Kamen, who were making repeated efforts to speak with Siegel about Plaintiff's condition.  Randy Kamen Affidavit (Exhibit 7 of Plaintiff's Memorandum); Debbie Kamen Affidavit (Exhibit 8 of Plaintiff's Memorandum).**

12.     Plaintiff Kamen did not even open International Vice-President Siegel's February 27,

2004 e-mail until April 8, 2004. Siegel Dec.. at ¶ 28 and Exhibit No. 4 attached thereto.

**Plaintiff's Response**

   **Admitted, but <u>see</u> Response to No. 11, above.**


13.     Even then, plaintiff Kamen failed to respond to International Vice-President Siegel's

request to "Call me ASAP." Siegel Dec.. at ¶ 29.

**Plaintiff's Response**

   **Admitted, but <u>see</u> Response to No. 11, above.**


14.     On March 1, 2004, International Vice-President Siegel learned that plaintiff Kamen had

been very ill for a couple of weeks and that he was going to be admitted to the hospital.

Siegel Dec. at ¶ 30; *see also* Welsh Dec. at ¶ 11.

**Plaintiff's Response**

   **Denied to the extent Siegel's Declaration is unbelievable given the frequent**

   **communications in February by Debbie Kamen (Debbie Kamen Affidavit (Exhibit**

   **8).  Admitted Siegel knew of Kamen's status <u>no</u> <u>later</u> <u>than</u> March 1, 2004.**


15.     Based on this information concerning plaintiff Kamen's health and the obvious need to

continue providing support and assistance to the Local Unions assigned to him, which

had been contacting the Third District Office for assistance due to plaintiff Kamen's

unavailability, International Vice-President Siegel decided to reassign responsibility for

providing support services to Local Union Nos. 385 and 1968 to other IBEW

International Representatives in the Third District. Siegel Dec. at ¶ 34.

**Plaintiff's Response**

    **Admitted Siegel took responsibility for Locals 385 and 1968 away from Kamen and**

**gave them to other IBEW representatives.  Denied to the extent this suggests the**

**motive was strictly the need to provide continuing support to the local unions and**

**not a discriminatory motive.**

16.    Accordingly, International Vice-President Siegel sent separate letters to International

    Representatives James M. Schosser and Pasguale Gino on March 1, 2004 in which he

    assigned responsibility for providing support services to Local Union Nos. 385 and 1968,

    respectively. *Id.* at ¶ 35 and Exhibit Nos. 5 & 6 attached thereto.

**Plaintiff's Response**

    **Admitted the letters were sent.**

17.    International Vice-President Siegel also sent copies of these letters dated March 1, 2004

    to plaintiff Kamen. Siegel Dec. at ¶ 37.

**Plaintiff's Response**

    **Admitted.**

18.    Thereafter, on March 12, 2004, International Vice-President Siegel learned that plaintiff

    Kamen had once again contacted the IBEW Third District Office and said that he had

been in and out of the hospital during which time tests confirmed that he had viral

meningitis and possibly problems with his gall bladder and that more tests were

scheduled the following week. Siegel Dec. at ¶ 38 and Exhibit No. 9 attached thereto; *see*

*also* Welsh Dec. at ¶¶ 16-18.

**Plaintiff's Response**

**Neither admitted nor denied Siegel was being told repeatedly during February and**

**March about Plaintiff's medical status. Randy Kamen and Debbie Kamen**

**Affidavits 9Exhibits 7 and 8). Siegel was also receiving medical information from**

**Dr. Rocchi which contained information not only referring to the viral meningitis**

**and gall bladder problems but also to possible HIV. See Rocchi Medical Records of**

**March 5, 2004 (Ex. 20 of Kamen D.T. - Exhibit 3 of Plaintiff's Memorandum).**

19.    International Vice-President Siegel was further informed that the earliest plaintiff Kamen

could return to work would be April 1, 2004. Siegel Dec. at ¶ 39 and Exhibit No. 9

attached thereto; *see also* Welsh Dec. at ¶ 19.

**Plaintiff's Response**

**Admitted.**

20.    International Vice-President Siegel decided, upon receiving this information, to reassign

to International Representative Gino responsibility for providing support services to

IBEW Local Union No. 2007 and to International Representative Schlosser responsibility

for providing support services to IBEW Local Union No. 1690, two other Local Unions

heretofore assigned to plaintiff Kamen. Siegel Dec. at ¶ 41.

**Plaintiff's Response**

    **Neither admitted nor denied.  Admitted Siegel reassigned support services for Local Union No. 2007 and Local Union 1690, but denied as to the reason this reassignment was made.**

21.    Accordingly, International Vice-President Siegel sent letters to Mr. Gino and Mr. Schlosser as well as the Business Managers of Local Union No. 2007 and Local Union No. 1690, which advised them of the reassignment of responsibility for providing support services to the Local Union. Siegel Dec.. at ¶ 42 and Exhibit Nos. 10 -13 attached thereto.

**Plaintiff's Response**

    **Admitted.**

22.    International Vice-President Siegel also sent copies of these letters dated March 12, 2004 to plaintiff Kamen. Siegel Dec.. at ¶ 43.

**Plaintiff's Response**

    **Admitted.**

23.    Shortly thereafter, International Vice-President Siegel received a letter dated March 16, 2004 from plaintiff Kamen attached to which was a copy of a note dated March 11, 2004 that was signed by Dr. John R. Rocchi, who plaintiff Kamen identified as his primary care physician. Siegel Dec. at ¶ 44.

**Plaintiff's Response**

     **Admitted.**

24.    Plaintiff Kamen apologized to International Vice-President Siegel in his March 16, 2004 letter for failing to send in a letter from his doctor sooner and for failing to call into the Third District Office. Siegel Dec. at ¶ 45 and Exhibit No. 14 attached thereto.

**Plaintiff's Response**

     **Admitted.**

25.    Plaintiff Kamen's March 16, 2004 letter further stated that he was suffering from viral meningitis and "a gall bladder problem." Siegel Dec.. at ¶ 46 and Exhibit No. 14 attached thereto.

**Plaintiff's Response**

     **Admitted.**

26.    Dr. Rocchi's note, dated March 11, 2004, which was enclosed with plaintiff Kamen's March 16, 2004 letter, stated that plaintiff Kamen "has been very ill since the end of February and continues to have unexplained fevers and illness." Siegel Dec. at ¶ 47 and Exhibit No. 15 attached hereto.

**Plaintiff's Response**

     **Admitted.**

27.     Dr. Rocchi's note further stated that plaintiff Kamen's illness required hospitalization,

         frequent doctor's visits, and that he "has been unable to work since 2/20/04." Siegel Dec.

         at ¶ 48 and Exhibit No. 14 attached thereto.

**Plaintiff's Response**

         **Admitted.**


28.     In closing, Dr. Rocchi's note stated: "to my best approximation [plaintiff Kamen] will be

         able to return to work 4/01/04."  Siegel Dec. at ¶ 49 and Exhibit No. 14 attached thereto.

**Plaintiff's Response**

         **Admitted.**


29.     Subsequently, plaintiff Kamen sent another letter to International Vice-President Siegel

         dated April 6, 2004 with another note from Dr. Rocchi, which was dated April 2, 2004,

         attached. Siegel Dec. at ¶ 50.

**Plaintiff's Response**

         **Admitted.**


30.     Plaintiff Kamen stated in his April 6, 2004 letter that Dr. Rocchi had advised him that he

         should be able to return to work on May 1, 2004. Siegel Dec.  at ¶ 51 and Exhibit No. 16

         attached thereto.

**Plaintiff's Response**

         **Admitted.**

31.    In addition, Dr. Rocchi's April 2, 2004 note stated that Plaintiff Kamen "continues to

recover from multiple serious health conditions including meningitis and diverticulitis."

*Id.* at ¶ 51 and Exhibit No. 17 attached thereto.

**Plaintiff's Response**

**Admitted.  In addition, however, Defendant was receiving medical information from**

**Dr. Rocchi, in particular medical records from office visits on March 5, 2004, March**

**17, 2004, and March 25, 2004, which records reflected Dr. Rocchi's concern Plaintiff**

**was suffering from HIV and the fact that Plaintiff was being given additional tests**

**for HIV.  See Medical Records, Ex. 20 of Kamen D.T. (Exhibit 3 of Plaintiff's**

**Memorandum - see notes of 3/5/04, 3/17/04, etc.).**

32.    The next month, after he resumed working, International Vice-President Siegel met

privately with plaintiff Kamen during the IBEW Third District Progress Meeting, which

was held in Atlantic City, New Jersey, from May 11-14, 2004. Siegel Dec. at ¶ 53.

**Plaintiff's Response**

**Admitted.**

33.    Plaintiff Kamen asked International Vice-President Siegel to reassign to him

responsibility for providing support services to IBEW Local Union Nos. 385, 1968, 1690

and 2007, which International Vice-President Siegel had assigned to other International

Representatives on March 1, 2004 and March 12, 2004, respectively. Siegel Dec. at ¶ 54.

**Plaintiff's Response**

**Admitted.**

34.     International Vice-President Siegel denied plaintiff Kamen's request. Siegel Dec. at ¶ 55.

**Plaintiff's Response**

      **Admitted.**

35.     For his part, International Vice-President Siegel expressed to plaintiff Kamen his

dissatisfaction with plaintiff Kamen's ongoing failure to timely submit his weekly activity

reports and bi-weekly expense reports as well as plaintiff Kamen's failure to timely

complete his assignments. Siegel Dec. at ¶ 57.

**Plaintiff's Response**

      **Admitted in part, denied in part.  Admitted Siegel discussed Plaintiff's submission**

**of his Weekly Activity Reports and Bi-Weekly Expense Reports, but denied the**

**implication this would have been the reason for Plaintiff's assignments being taken**

**away.**

36.     IBEW International Vice-President Lawrence Rossa and his successor, International

Vice-President Donald C. Siegel frequently admonished plaintiff Kamen about the tardy

submission of weekly activity reports and bi-weekly expense reports. Siegel Dec. at ¶ 59.

**Plaintiff's Response**

      **Denied.  The discussions about the reports were hardly "admonishments" in that**

**the other International Representatives were also tardy and also were reminded of**

**submitting reports on time.**

37.    Prior to May 2004, IBEW International Vice-President Donald C. Siegel also had

problems with plaintiff Kamen's failure to complete assignments in a timely fashion.

Siegel Dec. at ¶ 61 and Exhibit No. 21 attached thereto.

**Plaintiff's Response**

**Denied.  The documents regarding open assignments speak for themselves, but**

**denied whether these constituted a "problem" until after Plaintiff developed his**

**serious medical conditions related to HIV and IBEW either knew or reasonably**

**would have inferred the nature of Kamen's problems.**

38.    In addition, International Vice-President Siegel expressed his dissatisfaction with plaintiff

Kamen's chronic failure to maintain communications with the Third District Office,

including his complete lack of responsiveness to various requests for information

submitted to him by e-mail. Siegel Dec.  at ¶ 62.

**Plaintiff's Response**

**Denied.  Siegel did not express dissatisfaction with Plaintiff regarding an alleged**

**chronic failure to maintain communications with the Third District Office.  Kamen D.T.**

**(Exhibit 3 of Plaintiff's Memorandum); Kamen Affidavit (Exhibit 9 of Plaintiff's**

**Memorandum).**

39.    International Vice-President Siegel asked plaintiff Kamen whether the laptop computer

provided by the IBEW to him was not operating properly, and if so to report the problem

to the IBEW Information Technology Department, which would try to resolve the

problem. Siegel Dec. at ¶ 63.

**Plaintiff's Response**

 **Admitted.**


40. He also offered to arrange specific training to teach plaintiff Kamen how to properly use

his laptop computer. Siegel Dec. at ¶ 64.

**Plaintiff's Response**

 **Admitted.**


41. Plaintiff Kamen explained during the May 2004 private meeting with International Vice-

President Siegel that his divorce, the death of his Mother and the distractions attendant to

settling her estate, including disputes with the Internal Revenue Service, as well as his

recent health problems, which included viral meningitis, diverticulitis and gall bladder

problems, had hampered his job performance. Siegel Dec. at ¶ 65.

**Plaintiff's Response**

 **Admitted.**


42. Nonetheless, plaintiff Kamen assured International Vice-President Siegel during their

private meeting at the Third District Progress Meeting in Atlantic City that he would

bring his outstanding assignments up-to-date and file his reports and complete his

assignments on time in the future. Siegel Dec. at ¶ 66.

**Plaintiff's Response**

> **Admitted in part, denied in part.  Admitted Kamen indicated he would bring his**
>
> **outstanding assignments up to date, which he did.  Also admitted Kamen assured**
>
> **Siegel he would complete his assignments on time in the future, which he did.**
>
> **Kamen D.T. (Exhibit 3 of Plaintiff's Memorandum); Kamen Affidavit (Exhibit 9 of**
>
> **Plaintiff's Memorandum).**

43.    At no time during his meeting in May 2004 did plaintiff Kamen tell IBEW International

Vice-President Siegel that he was infected by HIV, that this illness was affecting his

ability to perform his duties as an IBEW International Representative, or that he needed

some kind of accommodation. Siegel Dec. at ¶ 667.

**Plaintiff's Response**

> **Admitted in part, denied in part.  Admitted Plaintiff did not specifically tell Siegel**
>
> **he was infected by HIV, but based on the medical information already provided to**
>
> **IBEW, specifically Siegel, Plaintiff did not need to tell Siegel.  Medical Records of**
>
> **Dr. Rocchi (Exhibit 20 of Plaintiff's Memorandum)(Notes of 3/5/2004, 3/17/2004 and**
>
> **4/12/2004).  Admitted Kamen did not say that the illness would affect his ability to**
>
> **perform his duties once he returned to work, but the fact Kamen had been unable to**
>
> **so much as report to work, and had been hospitalized for a significant portion of the**
>
> **time off on medical leave, speaks for itself as to whether he was able to perform his**
>
> **duties during his medical leave.  Admitted Kamen did not say that he needed any**

**kind of an accommodation because given the fact he only had about 25% of his original duties the accommodation had already effectively been made, namely, that his workload had been substantially reduced.  Whether Kamen would have been capable of performing the full duties he had prior to the time he went off on medical leave is something no one will ever know.**

44.    International Vice-President Siegel subsequently learned that Plaintiff Kamen's weekly activity reports for the weeks ending on January 10, 17, 24 and 31, 2004, were received in the IBEW Third Vice-President's Office on May 11, 2004. Siegel Dec. at ¶ 68.

**Plaintiff's Response**

     **Admitted.**

45.    Thereafter, on May 27, 2004, the IBEW Third District Office received plaintiff Kamen's weekly activity reports for the nine-week period that he was on sick leave beginning sometime on February 23, 2004 through April 30, 2004, as well as his weekly activity reports for the first three weeks of February 2004, before he went on sick leave. Siegel Dec. at ¶ 69.

**Plaintiff's Response**

     **Admitted, but during the same period of time the weekly activity reports for other IBEW Representatives were also either still not submitted or submitted after the time due.  See Exhibit 10 of Plaintiff's Memorandum (Expense Reports/Weekly Reports of IBEW Representatives from November 2002 – December 2007);**

**Defendants' Answers to Admissions (Exhibit 2), Nos. 38-48, 60-85.**

46.    The IBEW Third District Office did not receive another weekly activity report from

plaintiff Kamen until November 30, 2004. Siegel Dec. at ¶ 70.

**Plaintiff's Response**

**Admitted, but during this period of time Plaintiff's duties were reduced at least 75%**

**and other IBEW Representatives continued to either submit their reports late or not**

**at all. Id.**

47.    Notwithstanding his assurances to International Vice-President Siegel that his job

performance would improve, plaintiff Kamen repeatedly failed to respond to e-mail

requests from the IBEW Third Vice-President's Office for information, including a

request on October 5, 2004 for plaintiff Kamen's Per Capita and LM-2 Reporting Form.

Siegel Dec. at ¶ 71.

**Plaintiff's Response**

**Denied. Plaintiff continued to carry out his duties, limited as they were, from May**

**1, 2004, until November 30, 2004, including responding as appropriate to various**

**communications.**

48.    In fact, International Vice-President Siegel became so exasperated by plaintiff Kamen's

lack of responsiveness to his requests for information that he asked the IBEW

Information Technology Department to determine whether plaintiff Kamen's laptop

computer was operating. Siegel Dec. at ¶ 72.

**Plaintiff's Response**

      **Admitted the IBEW Information Technology Department checked Kamen's laptop,**

**but denied as to whether Siegel was "exasperated".**

49.    The IBEW Information Technology Department subsequently informed International

      Vice-President Siegel that someone had accessed plaintiff Kamen's e-mail account on

      October 14, 2004, however, plaintiff Kamen never responded to International Vice-

      President Siegel's October 5, 2004 request for his Per Capita and LM-2 Reporting Form

      by e-mail or any other means. Siegel Dec. at ¶ 73.

**Plaintiff's Response**

      **Admitted someone had accessed Plaintiff Kamen's e-mail account on or about**

**October 14, 2004, but denied to the extent Defendants are suggesting in this**

**paragraph that it was someone other than the IBEW Information Technology**

**Department.  To the contrary, the only reasonable inference to be drawn from the**

**circumstances is that IBEW management ordered the Information Technology**

**Department to access Plaintiff Kamen's e-mail account, which account included**

**private e-mails regarding his HIV status.  Denied Plaintiff never responded to**

**Siegel's request for his Per Capita and LM-2 Reporting Form in that Kamen in fact**

**provided this form in the weeks following.  Kamen Affidavit (Exhibit 9 of Plaintiff's**

**Memorandum).**

50. International Vice-President Siegel sent plaintiff Kamen a letter dated November 22, 2004, which instructed him to attend a meeting with International Vice-President Siegel in the IBEW Third District Office on November 30, 2004 at 10:00 a.m. Siegel Dec.. at ¶ 75 and Exhibit No. 23 attached thereto.

**Plaintiff's Response**

   **Admitted.**


51. During their November 30, 2004 meeting, International Vice-President Siegel advised plaintiff Kamen that International Representatives assigned to the Third District Office are expected to perform their duties and carry out their responsibilities with a minimum of supervision and a maximum of self-direction. Siegel Dec.. at ¶ 79.

**Plaintiff's Response**

   **Admitted.**


52. International Vice-President Siegel also reminded plaintiff Kamen that, notwithstanding this expectation, it was necessary for him on several occasions, including their private meeting at the 2004 Progress Meeting in Atlantic City, New Jersey in May 2004, since he became International Vice-President of the Third District in March 2002, to have conversations with plaintiff Kamen about his failure to regularly submit weekly activity reports and bi-weekly expense reports, to complete outstanding assignments in a timely manner, and his failure to maintain regular contact with the Third District Office.  Siegel Dec. at ¶ 80.

**Plaintiff's Response**

> **Denied Siegel reminded Kamen that it was necessary for Siegel to remind Kamen on "several occasions" of the need to do the various things outlined in Fact 52. To the contrary, the only time Siegel had said anything to Kamen about the timeliness of reports was in May 2004 (other than the general discussions about reports held with all of the IBEW Representatives) and Siegel had <u>never</u> discussed problems with Plaintiff's alleged failure to maintain regular contact with the Third District Office. Siegel D.T. (Exhibit 4 of Plaintiff's Memorandum); Kamen D.T. (Exhibit 3 of Plaintiff's Memorandum).**

53.    International Vice-President Siegel also mentioned plaintiff Kamen's chronic lack of responsiveness to requests from the Third District Office for information, including the October 5, 2004 e-mail requesting his Per Capita and LM-2 Reporting Form that plaintiff Kamen apparently knew about but chose to ignore, and International Vice-President Siegel's offer to provide plaintiff Kamen with training about how to use his IBEW-issued laptop computer. Siegel Dec. at ¶ 81.

**Plaintiff's Response**

> **Denied.  Kamen Affidavit (Exhibit 9 of Plaintiff's Memorandum).**

54.    In fact, International Vice-President Siegel commented to plaintiff Kamen that he had failed to take advantage of the offer of technical assistance and/or computer literacy training. Siegel Dec. at ¶ 82.

**Plaintiff's Response**

      **Denied.  Id.**

55.    In addition, International Vice-President Siegel informed plaintiff Kamen that his neglect

of some of the Local Unions that he was assigned to provide support services as well as

complaints from some of these unions had forced him to reassign the Local Unions to

other International Representatives in the Third District, which is why he refused plaintiff

Kamen's request in May 2004 to reassign these Local Unions back to him. Siegel Dec. at

¶ 83.

**Plaintiff's Response**

      **Denied.  Strikingly, Siegel seems to admit in his declaration that this is the first time**

**he shared with Plaintiff the reasons why Siegel would not reassign certain local**

**unions back to Kamen upon Kamen's return from medical leave.**

56.    Once again, as he had done at their meeting in May 2004, plaintiff Kamen apologized for

his shortcomings and promised to improve his job performance, and blamed them on the

breakup of his marriage, the death of his Mother, and his health problems. Siegel Dec. at

¶ 84.

**Plaintiff's Response**

      **Admitted.  Significantly, IBEW, through Siegel, acknowledges once again its**

**knowledge of Plaintiff's health problems and the extent to which the health**

**problems had interfered with Plaintiff's ability to perform the essential functions of**

**his job.**

57.     Plaintiff Kamen did not, however, advise International Vice-President Siegel during their

November 30, 2004 meeting that he was infected by HIV, or that he needed an

accommodation on account of this disease. Siegel Dec. at ¶ 85.

**Plaintiff's Response**

> **Admitted Kamen did not mention the fact he was infected by HIV, but denied to the
> extent the implication is that IBEW therefore did not know about the HIV.  To the
> contrary, IBEW had in its possession medical records specifically identifying the
> fact Kamen had HIV (Rocchi Medical records of 3/5/04, 3/7/04 and 8/3/04 - Ex. 20 to
> Kamen's D.T. (Exhibit 3 of Plaintiff's Memorandum), and IBEW also accessed
> Plaintiff's computer in October 2004, in which there were multiple references to
> Kamen's HIV status.  The fact Plaintiff did not specifically request an
> accommodation, or use magic words to that effect, does not mean IBEW was not
> reasonably aware of these limitations Plaintiff had and the extent to which these
> limitations were interfering with his ability to perform his job.**

58.     However, International Vice-President Siegel informed plaintiff Kamen that he was either

incapable of improving his job performance or unwilling to do so. Siegel Dec. at ¶ 86.

**Plaintiff's Response**

> **Admitted, but argumentative.  The question is not what Siegel said at this meeting
> but what his true intent was and whether the facts, and the reasonable inferences to**

**be drawn from the facts, support Defendants' argument.  Plaintiff submits they do**

**not.**

59.    For that reason, International Vice-President Siegel advised plaintiff Kamen at their

November 30, 2004 meeting that he no longer had the patience to tolerate plaintiff

Kamen's lack of attention to his duties as an International Representative and, therefore,

he no longer needed him on the Third District staff and that he intended to refer the

matter to International President Hill for further consideration. Siegel Dec. at ¶ 87.

**Plaintiff's Response**

**Admitted Siegel said what he alleges he said, but denied to the extent it is**

**argumentative for purposes of supporting Defendants' position in this case.**

60.    International Vice-President Siegel did not tell plaintiff Kamen during their November

30, 2004 meeting that his employment as an International Representative of the IBEW

would be terminated. Siegel Dec. at ¶ 88.

**Plaintiff's Response**

**Admitted but irrelevant.  The plain meaning of the November 30, 2004, letter was**

**that Siegel was recommending Plaintiff's termination, which termination occurred**

**on December 8, 2004.**

61.    That same day, International Vice-President Siegel called IBEW International President

Hill to tell him that he had met with plaintiff Kamen and advised him that his services as

an International Representative were no longer needed in the Third District. Siegel Dec.

at ¶ 89; *see also* Hill Dec. at ¶ 32.

**Plaintiff's Response**

> **Neither admitted nor denied since Plaintiff is not in possession of the information**
>
> **necessary to confirm whether Siegel did or did not make the phone call on the day in**
>
> **question, but admitted there was some communication between Siegel and Hill**
>
> **following November 30, 2004.**

62.    International Vice-President Siegel then sent an e-mail message to International President

Hill attached to which was a copy of a letter addressed to International President Hill and

dated November 30, 2004, which set forth the reasons for International Vice-President

Siegel's decision not to retain plaintiff Kamen as an International Representative on the

Third District staff. International Vice-President Siegel Dec. at ¶ 90 and Exhibit No. 24

attached thereto.

**Plaintiff's Response**

> **Admitted to the extent the document speaks for itself; denied to the extent the**
>
> **assertions in the e-mail are used for argumentative purposes and are self-serving.**

63.    International Vice-President Siegel's November 30, 2004 letter was also sent to

International President Hill by first-class U.S. Postal Service mail. International Vice-

President Siegel Dec. at ¶ 91.

**Plaintiff's Response**

    **Admitted.**


64.    In addition, International Vice-President Siegel placed in the U.S. Postal Service mail a

memorandum to International President Hill with a copy of spread sheets that track the

date on which the weekly activity reports submitted by each International Representative

assigned to the Third District of their weekly activity reports is received in the Third

District Office. Siegel Dec. at ¶ 92 and Exhibit No. 25 attached thereto.

**Plaintiff's Response**

    **Admitted but, again, argumentative. Moreover, the weekly activity reports**

**referenced in Fact 64 are the very reports showing that multiple IBEW**

**Representatives, most notably Wyatt Earp, were chronically delinquent in**

**submission of their reports.**


65.    The Third District Office has prepared this tracking report in the regular course of

business each week since November 2002. Siegel Dec. at ¶ 93.

**Plaintiff's Response**

    **Admitted.**


66.    International President Hill decided, based on International Vice-President Siegel's

November 30, 2004 letter, that plaintiff Kamen's tenure as an IBEW International

Representative should be terminated inasmuch as it appeared that he was unable to

perform the duties and responsibilities of that position in the manner that he expected.

Hill Dec. at ¶ 39.

**Plaintiff's Response**

**Neither admitted or denied. Notwithstanding Hill's representations he based the decision to terminate Kamen strictly on Siegel's letter of November 30, 2004, the facts speak for themselves, namely, that Hill knew of Plaintiff's homosexuality in 2001, that IBEW was aware of Plaintiff's significant health problems in early 2004, and that IBEW knew by virtue of receiving the medical records no later than November 2004 that Plaintiff had been diagnosed with HIV.**

67.    Subsequently, on the same day, International President Hill notified plaintiff Kamen by letter that based on International Vice-President Siegel's assessment of his job performance his employment as an International Representative of the IBEW would be terminated effective December 31, 2004. Hill Dec. at ¶ 46 and Exhibit No. 6 attached thereto.

**Plaintiff's Response**

**Admitted that the letter of December 8, 2004, speaks for itself. Denied to the extent Defendant is arguing as to the truthfulness of the assertions made within the document.**

68.    International President Hill was not aware that plaintiff Kamen was infected by the human immunodeficiency virus (HIV) at the time he terminated plaintiff Kamen's

employment as an IBEW International Representative on December 8, 2004. Hill Dec. at ¶ 47.

**Plaintiff's Response**

**Denied.  As indicated above, the evidence suggests Hill, either personally or through various representatives at IBEW, was fully aware of Plaintiff's HIV status as of the termination on December 8, 2004.  It will be a matter left to the jury as to whether to believe or disbelieve Hill's representation that Hill himself was not aware of the HIV status as of the time the decision was made to terminate Kamen.**

69.    In fact, International President Hill was not aware that plaintiff Kamen was infected by HIV until he read the Complaint that plaintiff Kamen filed in the above-referenced case against him and the IBEW on June 6, 2006, which alleges that he terminated his employment with the IBEW on December 8, 2004 because, among other things, International President Hill knew he was infected by HIV.  Hill Dec. at ¶ 46.

**Plaintiff's Response**

**Denied for the same reasons given in response to Fact 68, above.**

70.    IBEW International Vice-President Siegel was unaware that plaintiff Kamen is homosexual until he read the Complaint that plaintiff Kamen filed in the above-referenced case against the IBEW and International President Hill on June 6, 2006, which alleges that International President Hill terminated plaintiff Kamen's employment with the IBEW on December 8, 2004 because, among other things, International President Hill

knew plaintiff Kamen is homosexual. Siegel Dec. at ¶ 95; Welsh Dec. at ¶ 23.

**Plaintiff's Response**

> **Denied to the extent regardless of the representations of either Siegel or Welsh that**
>
> **IBEW knew of Plaintiff's homosexuality as early as 2001.  It will be a matter for the**
>
> **jury to decide whether either Siegel or Welsh are to be believed when denying any**
>
> **knowledge whatsoever of Plaintiff's homosexuality when the President of IBEW**
>
> **knew about it for at least three years as of the time of Plaintiff's termination.**
>
> **As for Siegel's alleged lack of awareness, neither admitted nor denied since Plaintiff**
>
> **has no way of knowing what Siegel did or did not know and when he knew it.**
>
> **However, for the reasons identified above, the record raises significant issues of**
>
> **material fact as to whether Siegel, like Hill, was aware of Plaintiff's homosexuality**
>
> **well before Siegel claims he was.**

71.   Similarly, IBEW International Vice-President Siegel was unaware that plaintiff  Kamen
      was infected by HIV until he read the Complaint that plaintiff Kamen filed in the above-
      referenced case against International President Hill and the IBEW on June 6, 2006, which
      also alleges that International President Hill terminated plaintiff Kamen's employment
      with the IBEW on December 8, 2004 because, among other things, International
      President Hill knew plaintiff Kamen was infected by HIV. Siegel Dec. at ¶ 96; Welsh
      Dec. at ¶ 22.

**Plaintiff's Response**

> **Denied to the extent Siegel has already acknowledged he was in possession of**

**medical records in November 2004 which medical records indicated not only the types of conditions Plaintiff was suffering from but the fact that Plaintiff was HIV positive.  See Medical Records (Exhibit 20 of Kamen D.T. (Exhibit 3 of Plaintiff's Memorandum)); Kamen Affidavit (Exhibit 9).**

72.    In October 1998, the IBEW adopted a revised "Anti-Harassment Policy," which was distributed to every IBEW employee, including International Representatives, and incorporated it in the IBEW Personnel Policy Manual. Hill Dec. at ¶ 53 and Exhibit No. 7 attached thereto.

**Plaintiff's Response**

**Admitted but irrelevant in light of Plaintiff's withdrawal of Count IV.**

73.    IBEW International President Hill, in his prior position as IBEW International Secretary, issued this revised Anti-Harassment Policy, which prohibits "unwelcome conduct, whether verbal or physical that is based upon a person's … protected group status," which includes sexual orientation. Hill Dec. at ¶ 54.

**Plaintiff's Response**

**Admitted but irrelevant in light of Plaintiff's withdrawal of Count IV.**

74.    The IBEW "Anti-Harassment Policy," states that "the IBEW will not tolerate harassing conduct that . . . creates an intimidating, hostile, or offensive working environment," and "[i]f an investigation confirms that harassment has occurred, the IBEW will take

corrective action, including such discipline, up to and including immediate termination of employment, as is appropriate." Hill Dec. at ¶ 55.

**Plaintiff's Response**

**Admitted but irrelevant in light of Plaintiff's withdrawal of Count IV.**

75.    Plaintiff Kamen never invoked the IBEW's Anti-Harassment Policy to have the IBEW's alleged policy and practice of hostility and prejudice towards homosexuals investigated and, if the investigation confirmed that such a policy or practice exists, to take corrective action.  Hill Dec. at ¶ 57.

**Plaintiff's Response**

**Admitted but irrelevant in light of Plaintiff's withdrawal of Count IV.**

Respectfully submitted,

s/Joseph H. Chivers
Joseph H. Chivers, Esquire
PA ID No. 39184
Suite 600,  312 Boulevard of the Allies
Pittsburgh, PA 15222
(412) 227-0763
(412) 281-8481 FAX
jchivers@employmentrightsgroup.com

Counsel for Plaintiff
Steve A. Kamen

DATED:  April 7, 2008