UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN A. KAMEN                          )
                                         )      Case No. 1:06CV01063 (RMC)
        Plaintiff,                       )
                                         )
        v.                               )
                                         )
INTERNATIONAL BROTHERHOOD                )
OF ELECTRICAL WORKERS, AFL-CIO and       )
EDWIN D. HILL, an individual,            )
                                         )
        Defendants.                      )
_____ )

## DEFENDANTS' ANSWERS TO PLAINTIFF'S REQUESTS FOR ADMISSION

NOW COME defendants Interarntional Brotherhood of Electrical Workers, AFL-CIO (hereafter referred to the "IBEW") and IBEW International President Edwin D. Hill, by their attorneys, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., in answer to plaintiff's Requests for Admission pursuant to Rule 36, Federal Rules of Civil Procedure, state:

**REQUEST NO. 1:**

Wyatt Earp has held the position of Senior International Representative beginning in 2001.

**ANSWER:**

1.      Defendants admit that Wyatt R. Earp has held the position of Senior International Representative, International since May 1, 1998.

**REQUEST NO. 2:**

Steven Kamen held the same title of Senior International Representative during the years from 2001 forward until he was terminated in December 2004.

**ANSWER:**

2.     Defendants admit that Steven A. Kamen held the title of IBEW Senior International Representative since the years from 2001 until his employment by the IBEW was terminated effective on December 31, 2004.

**REQUEST NO. 3:**

Steven Kamen and Wyatt Earp held the same title, Senior International Representative, from at least 2001 through December 2004.

**ANSWER:**

3.     Defendants admit that Steven A. Kamen and Wyatt R. Earp held the same title, IBEW Senior International Representative, since at least 2001 through December 2004.

**REQUEST NO. 4:**

A Senior International Representative performs the same essential functions as an International Representative.

**ANSWER:**

4.     Defendants admit that an IBEW Senior International Representative performs the same essential functions as an IBEW International Representative.

**REQUEST NO. 5:**

A Senior International Representative is a title within the general job category of International Representative.

**ANSWER:**

5.     Defendants admit that an IBEW Senior International Representative is a title within the general job category of IBEW International Representative.

**REQUEST NO. 6:**

Donald C. Siegel, Vice President of the International Brotherhood of Electrical Workers (IBEW), District 3, became the Vice President of District 3 in or about March 2002.

**ANSWER:**

6.      Defendants admit that Donald C. Siegel became IBEW International Vice-President on or about May 1, 2002.

**REQUEST NO. 7:**

From the time he became Vice President through the present Mr. Siegel has reported directly to the President of JBEW, Edwin Hill.

**ANSWER:**

7.      Defendants admit that Donald C. Siegel has reported directly to IBEW International President Edwin D. Hill since Mr. Siegel was appointed IBEW International Vice-President.

**REQUEST NO. 8:**

Since the time Vice President Siegel was appointed as Vice President both Wyatt Earp and Steven Kamen have reported directly to him.

**ANSWER:**

8.      Defendants admit that during their respective terms of employment both Wyatt R. Earp and Steven A. Kamen reported directly to Donald C. Siegel since he was appointed IBEW International Vice-President.

**REQUEST NO. 9:**

Prior to Mr. Siegel's appointment as Vice President Mr. Rossa was the Vice President of

District 3.

**ANSWER:**

9.     Defendants admit that Lawrence E. Rossa served as IBEW International Vice-President prior to appointment of Donald C. Siegel as IBEW International Vice-President on May 1, 2002.

**REQUEST NO. 10:**

Wyatt Earp and Steven Kamen both reported directly to Mr. Rossa prior to Mr. Siegel's appointment as Vice President.

**ANSWER:**

10.     Defendants admit that during their respective terms of employment both Wyatt R. Earp and Steven A. Kamen reported directly to IBEW International Vice-President Lawrence E. Rossa prior to appointment of Donald C. Siegel as IBEW International Vice-President on May 1, 2002.

**REQUEST NO. 11:**

As an International Representative, Wyatt Earp has been required to provide certain reports on a regular basis.

**ANSWER:**

11.     Defendants object to Request No. 11 because it fails to identify the reports that IBEW International Representative Wyatt R. Earp has been required to provide on a regular basis.

**REQUEST NO. 12:**

This includes a weekly report in which Earp is required to recap his weekly activities.

**ANSWER:**

12.    Defendants admit that IBEW International Representative IBEW International Representative Wyatt R. Earp is required to submit to the IBEW Third District Office weekly activity reports, which recap his weekly activities.

**REQUEST NO. 13:**

Earp is also required to submit a bi-weekly expense report.

**ANSWER:**

13.    Defendants admit that IBEW International Representative Wyatt R. Earp is required to submit to the IBEW Third District Office bi-weekly expense reports.

**REQUEST NO. 14:**

Steven Kamen was required to submit the same reports (weekly activity reports, bi-weekly expense reports) during his employment with IBEW as an International Representative.

**ANSWER:**

14.    Defendants admit that during his employment as an IBEW International Representative, Steven A. Kamen was required to submit the same reports to the IBEW Third District Office (weekly activity reports, biweekly expense reports) that IBEW International Representative Wyatt R. Earp is required to submit.

**REQUEST NO. 15:**

These reports were submitted to Vice President Siegel.

**ANSWER:**

15.    Defendants admit that these reports were submitted to IBEW International Vice-President Donald C. Siegel.

**REQUEST NO. 16:**

Vice President Siegel has had other International Representatives reporting to him since he became Vice President.

**ANSWER:**

16.    Defendants admit that IBEW International Representatives other than Steven A. Kamen have reported to IBEW International Vice-President Donald C. Siegel since he became IBEW International Vice-President.

**REQUEST NO. 17:**

These other International Representatives are required to submit the same reports (weekly activity reports and bi-weekly expense reports) as Earp and Kamen.

**ANSWER:**

17.    Defendants admit that all of the IBEW International Representatives employed in the IBEW Third District, including Wyatt R. Earp and Steven A. Kamen (during the term of his employment), are required to submit weekly activity reports and bi-weekly expense reports.

**REQUEST NO. 18:**

Wyatt Earp does not suffer from any serious health conditions.

**ANSWER:**

18.    Defendants neither admit nor deny that IBEW International Representative Wyatt R. Earp suffers from any serious health conditions inasmuch as they are unaware of the status of Mr. Earp's health.

**REQUEST NO. 19:**

Wyatt Earp has not missed any significant time for health reasons during the nine years that he has worked for IBEW.

**ANSWER:**

19.    Defendants admit that IBEW International Representative Wyatt R. Earp has not missed any significant amount of time from work for health reasons since he has been employed by the IBEW.

**REQUEST NO. 20:**

Wyatt Earp was suspended sixty days in or about May 2002.

**ANSWER:**

20.    Defendants admit that the IBEW suspended IBEW International Representative Wyatt R. Earp without pay for sixty (60) days beginning at 11:59 p.m. on May 5, 2002.

**REQUEST NO. 21:**

Earp returned from his 60-day suspension on or about July 5, 2002.

**ANSWER:**

21.    Defendants admit that IBEW International Representative Wyatt R. Earp was reinstated to his position as International Representative on July 5, 2002 after being suspended without pay since 11:59 p.m. on May 5, 2002.

**REQUEST NO. 22:**

Wyatt Earp received a letter dated May 2, 2002, from Edwin Hill, President of IBEW, regarding this suspension.

**ANSWER:**

22.    Defendants admit that IBEW International Representative Wyatt R. Earp testified in a deposition conducted on behalf of Steven A. Kamen on October 30, 2007 in Philadelphia, Pennsylvania that he received a letter dated May 2, 2002 from IBEW International President

Edwin D. Hill, which notified him that he would be suspended without pay for sixty (60) days beginning at 11:59 p.m. on May 5, 2002.

**REQUEST NO. 23:**

Wyatt Earp was suspended for failure to submit weekly reports and bi-weekly expense reports.

**ANSWER:**

23.    Defendants admit that IBEW International Representative Wyatt R. Earp was suspended without pay for sixty (60) days for, among other things, failure to submit weekly reports and bi-weekly expense reports.

**REQUEST NO. 24:**

Wyatt Earp was also suspended for the refusal to comply with numerous requests and instructions to properly prepare and submit these reports on a timely basis.

**ANSWER:**

24.    Defendants admit that another reason that IBEW International Representative Wyatt R. Earp was suspended without pay for sixty (60) days was because he failed to comply with numerous requests and instructions to properly prepare and submit weekly reports and bi-weekly expense reports on a timely basis.

**REQUEST NO. 25:**

In addition. Earp had received numerous letters from the International Vice President regarding his continued failure to complete his assignments and to bring unresolved assignments up to date.

**ANSWER:**

25.    Defendants admit that IBEW International Representative Wyatt R. Earp received numerous letters from the IBEW International Vice-President regarding his continued failure to complete his assignments and to bring unresolved assignments up to date.

**REQUEST NO. 26:**

Earp was told in the May 2, 2002, letter from President Edwin Hill that if Earp failed to perform his duties or failed to observe or carry out instructions of the International President that he would be subject to immediate discharge.

**ANSWER:**

26.    Defendants admit that IBEW International President Edwin D. Hill warned IBEW International Representative Earp in letter dated May 2, 2002 that he would be subject to immediate discharge if he failed to perform his duties or failed to observe or carry out instructions of the International President after he was reinstated effective July 5, 2002 to the position of International Representative.

**REQUEST NO. 27:**

Earp failed to submit weekly reports and bi-weekly expense reports when they were due after he was reinstated from his suspension (July 5, 2002).

**ANSWER:**

27.    Defendants deny that IBEW International Representative Wyatt R. Earp failed to submit weekly reports and bi-weekly expense reports after he was reinstated from his suspension on July 5, 2002; however, defendants admit that many of the weekly reports and bi-weekly expense reports, which Mr. Earp filed, were submitted well after they were due.

**REQUEST NO. 28:**

Earp was not suspended after July 5, 2002, for failing to submit his weekly reports or bi-weekly expense reports when they were due.

**ANSWER:**

28.    Defendants admit that IBEW International Representative Wyatt R. Earp has not been suspended since July 5, 2002 for failing to submit his weekly reports or bi-weekly expense reports when they were due.

**REQUEST NO. 29:**

Earp was not terminated after July 5, 2002, for failure to submit his weekly reports or bi-weekly expense reports when they were due.

**ANSWER:**

29.    Defendants admit that IBEW International Representative Wyatt R. Earp has not been suspended since July 5, 2002 for failing to submit his weekly reports or bi-weekly expense reports when they were due.

**REQUEST NO. 30:**

Vice President Siegel's office maintains a report tracking submission by the International Representatives in District 3 of the weekly reports and bi-weekly expense reports.

**ANSWER:**

30.    Defendants admit that the IBEW Third District Office maintains separate reports, which track the date that each weekly activity report and each bi-weekly expense report submitted by each of the IBEW International Representatives assigned to the Third District is received.

**REQUEST NO. 31:**

These reports identify for the period beginning no later than November/December 2002 and continuing through the present time when each International Representative submitted a weekly report for a particular workweek.

**ANSWER:**

31.    Defendants  admit  that  the  IBEW  Third  District  Office  has,  since November/December 2002, prepared reports, which list the date that each weekly activity report submitted by each of the International Representatives assigned to the IBEW Third District is received; and that the IBEW Third District Office has, since January 2003, except for the period between June 18, 2006 and December 31, 2006, prepared reports, which list the date that each bi-weekly expense report submitted by each of the IBEW International Representatives assigned to the Third District is received.

**REQUEST NO. 32:**

These reports identify for the period beginning no later than January 2003 and continuing through the present time when each International Representative submitted a weekly report for a particular workweek.

**ANSWER:**

32.    Defendants admit that one of the reports prepared by the IBEW Third District Office lists for each week beginning no later than January 2003 and continuing through the present time the date on which each weekly activity report submitted by each International Representative assigned to the IBEW Third District is received by the IBEW Third District Office.

**REQUEST NO. 33:**

These reports identify for the period beginning no later than January 2004 and continuing through the present time when each International Representative submitted a weekly report for a particular workweek.

**ANSWER:**

33.    Defendants admit that one of the reports prepared by the IBEW Third District Office lists for each week beginning no later than January 2004 and continuing through the present time the date on which each weekly activity report submitted by each International Representative assigned to the IBEW Third District is received by the IBEW Third District Office.

**REQUEST NO. 34:**

These reports identify for the period beginning no later than November/December 2002 and continuing through the present time when each International Representative submitted a bi-weekly expense report for a particular workweek.

**ANSWER:**

34.    Defendants deny that IBEW Third District Office has, since November/December 2002, prepared a report, which lists the date that each bi-weekly expense report submitted by each of the International Representatives assigned to the IBEW Third District is received by the IBEW Third District Office. Such reports, which list the date that each bi-weekly expense report submitted by each of the International Representatives assigned to the IBEW Third District was received by the IBEW Third District Office beginning in January 2003 and continuing through May 2006, when International Representatives began submitting their bi-weekly expense reports

directly to the IBEW International Headquarters Office in Washington, D.C. beginning in June 2006. The IBEW Third District Office did not resume tracking receipt of the bi-weekly expense reports submitted by International Representatives assigned to that Office until January 2007.

**REQUEST NO. 35:**

These reports identify for the period beginning no later than January 2003 and continuing through the present time when each International Representative submitted a hi-weekly expense report for a particular workweek.

**ANSWER:**

35.    Defendants admit that beginning in January 2003, except for the period between June 16, 2006 and December 31, 2006 when International Representatives began to submit their bi-weekly expense reports directly to the IBEW International Headquarters Office in Washington, D.C., the IBEW Third District Office has prepared a report, which lists the date that each bi-weekly expense report submitted by each of the International Representatives assigned to the Third District is received in the Third District International Vice President's Office.

**REQUEST NO. 36:**

These reports identify for the period beginning no later than January 2004 and continuing through the present time when each International Representative submitted a bi-weekly expense report for a particular workweek.

**ANSWER:**

36.    Defendants admit that no later than January 2004, except for the period between June 16, 2006 and December 31, 2006 when International Representatives began to submit their bi-weekly expense reports directly to the IBEW International Headquarters Office in

Washington, D.C., the IBEW Third District Office has prepared a report, which lists the date that each bi-weekly expense report submitted by each of the International Representatives assigned to the Third District is received in the IBEW Third District Office.

**REQUEST NO. 37:**

The only period of time when there was a gap in the tracking of the timeliness of the submission of the weekly reports and the bi-weekly expense reports (from November/December 2002 through the present) is from the middle of 2006 until the end of 2006.

**ANSWER:**

37.   Defendants admit that beginning in January 2003, except for the period between June 16, 2006 and December 31, 2006 when International Representatives began to submit their bi-weekly expense reports directly to the IBEW International Headquarters Office in Washington, D.C., the IBEW Third District Office has prepared a report, which lists the date that each bi-weekly expense report submitted by each of the International Representatives assigned to the Third District is received by the Third District Office.

**REQUEST NO. 38:**

These reports show that Wyatt Earp had more delinquencies in submission of his weekly reports from November/December 2002 through the end of 2004 than Steven Kamen did.

**ANSWER:**

38.   Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each weekly activity report and each bi-weekly expense report submitted by each of the International Representatives assigned to the IBEW Third District is received, indicate that 77 out of 112 weekly activity reports submitted by IBEW International

- 14 -

Representative Wyatt R. Earp during the period from November 2002 through December 31, 2004 were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period and one weekly activity report was never received, and 83 out of 105 weekly activity reports submitted by International Representative Steven A. Kamen during the period from November 2002 through December 31, 2004 were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period and eight (8) weekly activity reports were never received. In addition, 51 out of 51 bi-weekly expense reports submitted by IBEW International Representative Wyatt R. Earp during the period from January 2003 and December 31, 2004 were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period, and that 42 out of 47 bi-weekly expense reports submitted by Mr. Kamen were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period and an additional four bi-weekly reports were never submitted by Mr. Kamen.

**REQUEST NO. 39:**

These reports show that Wyatt Earp had more delinquencies in submission of his bi-weekly expense reports from November/December 2002 through the end of 2004 than Steven Kamen did.

**ANSWER:**

39.    Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each bi-weekly expense report submitted by each of the IBEW International Representatives assigned to the Third District is received, show that 51 out of 51 bi-weekly expense reports submitted by IBEW International Representative Wyatt R. Earp during

- 15 -

the period from January 2003 and December 31, 2004 were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period, and that 42 out of 47 bi-weekly expense reports submitted by Steven A. Kamen were received in the IBEW Third District Office more than ten (10) days after the end of the reporting period and that an additional four bi-weekly expense reports were never submitted by Mr. Kamen.

**REQUEST NO. 40:**

These reports show that Wyatt Earp continued to submit his weekly reports delinquently after December 2004.

**ANSWER:**

40.     Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each bi-weekly expense report submitted by each of the International Representatives assigned to the Third District is received, show that each of the weekly activity reports submitted after December 2004 by IBEW International Representative Wyatt R. Earp was submitted more than ten (10) days after it was due.

**REQUEST NO. 41:**

These reports show that Wyatt Earp continued to submit his bi-weekly expense reports delinquently after December 2004.

**ANSWER:**

41.     Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each bi-weekly expense report submitted by each of the IBEW International Representatives assigned to the Third District is received, show that each of the bi-weekly expense reports submitted by IBEW International Representative Wyatt R. Earp has been

- 16 -

submitted more than ten (10) days after they were due.

**REQUEST NO. 42:**

These reports show that Wyatt Earp had delinquencies that were longer (i.e. where the weekly reports were submitted a greater period of time after the due date) than did Steven Kamen during the years November/December 2002 through 2004.

**ANSWER:**

42.    Defendants object to Request for Admission No. 42 because it fails to identify the "reports" to which it refers.

**REQUEST NO. 43:**

Wyatt Earp has never been told he would be terminated as a result of submitting late reports since his return from suspension on or about July 5, 2002.

**ANSWER:**

43.    Defendants admit that IBEW International Representative Wyatt R. Earp has never been told he would be terminated as a result of submitting late weekly activity reports and bi-weekly expense reports since his return from suspension without pay for sixty (60) days on or about July 5, 2002.

**REQUEST NO. 44:**

Wyatt Earp has never been reminded since the letter of May 2, 2002, that he would be terminated as a result of submitting late reports.

**ANSWER:**

44.    Defendants admit that IBEW International Representative Wyatt R. Earp has never been reminded since IBEW International President Edwin D. Hill sent him a letter dated May 2,

2002 informing him that his employment by the IBEW would be terminated if he continued to fail to submit his weekly activity reports and bi-weekly expense reports in a timely manner.

**REQUEST NO. 45:**

Vice President Siegel's reports show that International Representatives other than (Wyatt Earp and Steven Kamen) submitted weekly reports late after November/December 2002.

**ANSWER:**

45.     Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each weekly activity report and each bi-weekly expense report submitted by each of the IBEW International Representatives assigned to the Third District is received, show that IBEW International Representatives other than Wyatt R. Earp and Steven A. Kamen have submitted weekly activity reports more than ten (10) days after they were due since November/December 2002.

**REQUEST NO. 46:**

Vice President Siegel's reports show that International Representatives other than Wyatt Earp and Steven Kamen submitted bi-weekly expense reports late after November/ December 2002.

**ANSWER:**

46.     Defendants admit that the reports prepared by the IBEW Third District Office, which track the dates that each bi-weekly expense report submitted by each of the International Representatives assigned to the Third District is received, show that International Representatives other than Wyatt R. Earp and Steven A. Kamen have submitted bi-weekly expense reports more than ten (10) days after they were due since November/December 2002.

- 18 -

**REQUEST NO. 47:**

No International Representatives (excluding for the purpose of this question Wyatt Earp and Steven Kamen) were disciplined after November/December 2002 for the late submission of weekly reports.

**ANSWER:**

47.     Defendants admit that no International Representatives (excluding for the purpose of this question Wyatt R. Earp and Steven A. Kamen) have been disciplined since November/ December 2002 for the late submission of weekly activity reports.

**REQUEST NO. 48:**

No International Representatives (excluding for the purpose of this question Wyatt Earp and Steven Kamen) were disciplined after November/December 2002 for the late submission of hi-weekly expense reports.

**ANSWER:**

48.     Defendants admit that no International Representatives (excluding for the purpose of this question Wyatt R. Earp and Steven A. Kamen) have been disciplined since November/December 2002 for the late submission of bi-weekly expense reports.

**REQUEST NO. 49:**

Vice President Siegel recommended termination of Steven Kamen.

**ANSWER:**

49.     Defendants admit that IBEW International Vice-President Donald C. Siegel advised International President Edwin D. Hill in a letter dated November 30, 2004 that he could no longer use Steven A. Kamen as an International Representative in the Third District.

**REQUEST NO. 50:**

Edwin Hill relied upon the information provided by Vice President Siegel regarding Kamen.

**ANSWER:**

50.     Defendants admit that International President Edwin D. Hill relied upon the information concerning Steven A. Kamen's performance of his duties as an International Representative assigned to the Third District, which was provided by IBEW International Vice-President Donald C. Siegel.

**REQUEST NO. 51:**

President Hill accepted the recommendation of Vice President Siegel to terminate Kamen.

**ANSWER:**

51.     Defendants deny that IBEW International Vice-President Donald C. Siegel recommended that IBEW International President Edwin D. Hill terminate the employment of Steven A. Kamen as an IBEW International Representative.

**REQUEST NO. 52:**

Vice President Siegel was aware in 2004 when Kamen was out on medical leave that Kamen had viral meningitis.

**ANSWER:**

52.     Defendants admit that IBEW International Vice-President Donald C. Siegel was aware in 2004 that Steven A. Kamen was on medical leave and that Mr. Kamen told him that he had been diagnosed as having viral meningitis.

**REQUEST NO. 53:**

Vice President Siegel was aware in 2004 when Kamen was off on medical leave that Kamen was having problems with his gall bladder.

**ANSWER:**

53.    Defendants admit that IBEW International Vice-President Donald C. Siegel was aware in 2004 that Steven A. Kamen was on medical leave and that Mr. Kamen told him that he was having problems with his gall bladder.

**REQUEST NO. 54:**

Vice President Siegel wrote the letter of November 30, 2004, from Siegel to President Hill.

**ANSWER:**

54.    Defendants admit that IBEW International Vice-President Donald C. Siegel wrote a letter to IBEW International President Edwin D. Hill dated November 30, 2004.

**REQUEST NO. 55:**

President Hill's letter of December 8, 2004, is based on Siegel's letter of November 30, 2004.

**ANSWER:**

55.    Defendants admit that a letter dated December 8, 2004, which was written by IBEW International President Edwin D. Hill, that informed Steven A. Kamen that his employment by the IBEW would be terminated effective on December 31, 2004 was based on a letter dated November 30, 2004, which was prepared by IBEW International Vice-President Donald C. Siegel.

**REQUEST NO. 56:**

Vice President Siegel never gave Kamen an opportunity to take a job other than International Representative during or after Kamen's medical leave in 2004.

**ANSWER:**

56.    Defendants deny that IBEW International Vice-President Donald C. Siegel failed to give Steven A. Kamen an opportunity to take a job with the IBEW other than as an IBEW International Representative during or after Mr. Kamen's 2004 medical leave inasmuch as there were no other jobs available for Mr. Kamen in the IBEW.

**REQUEST NO. 57:**

Vice President Siegel never considered moving Kamen to a local union site, for example, in the Pittsburgh area after Kamen's return from medical leave.

**ANSWER:**

57.    Defendants admit that IBEW International Vice-President Donald C. Siegel never considered moving Steven A. Kamen to a local union site, for example, in the Pittsburgh area after Mr. Kamen returned to work from medical leave because Mr. Siegel has no authority to offer anyone employment with a Local Union affiliated with the IBEW.

**REQUEST NO. 58:**

Vice President Siegel took away some of Kamen's duties during the time Kamen was on medical leave.

**ANSWER:**

58.    Defendants admit that IBEW International Vice-President Donald C. Siegel reassigned responsibility for IBEW Local Union Nos. 385, 1968, 1690 and 2007, which Steven

A. Kamen was formerly responsible for providing support and assistance, to other IBEW International Representatives assigned to the IBEW Third District during the time that Mr. Kamen was on medical leave in 2004.

**REQUEST NO. 59:**

There were no complaints from Local 385 about Steven Kamen.

**ANSWER:**

59.     Defendants admit that there were complaints from representatives of IBEW Local Union No. 385 in December 2003 and January 2004 about not being able to contact Steven A. Kamen when they needed support and assistance.

**REQUEST NO. 60:**

Vice President Siegel relieved Kamen of his duties for Local 385 while Kamen was on medical leave.

**ANSWER:**

60.     Defendants admit that IBEW International Vice-President Donald C. Siegel relieved Steven A. Kamen of his responsibility for providing support and assistance to IBEW Local No. 385 while Mr. Kamen was on medical leave.

**REQUEST NO. 61:**

Kamen had seven Locals assigned to him prior to commencement of his medical leave in February 2004.

**ANSWER:**

61.     Defendants admit that Steven A. Kamen was responsible for providing support and

assistance to seven IBEW Local Unions prior to commencement of his medical leave in February 2004.

**REQUEST NO. 62:**

Upon his return to work on or about May 1, 2004, Kamen had only four Locals.

**ANSWER:**

62.     Defendants admit that Steven A. Kamen was responsible for providing support and assistance to three IBEW Local Unions when he returned to work on or about May 1, 2004 from medical leave.

**REQUEST NO. 63:**

Other International Representatives (other than Steven Kamen) whose expense reports have been late have not been terminated.

**ANSWER:**

63.     Defendants admit that other International Representatives assigned to the IBEW Third District Office whose expense reports have been submitted late (other than Steven A. Kamen) have not been terminated.

**REQUEST NO. 64:**

On November 30, 2004, in a meeting between Steven Kamen and Vice President Siegel, Vice President Siegel discussed Steven Kamen's illness with Kamen.

**ANSWER:**

64.     Defendants admit that Steven A. Kamen told IBEW International Vice-President Donald C. Siegel during their meeting on November 30, 2004 that he had been ill during the spring of that year, but defendants deny that Mr. Kamen discussed his illnesses in any detail with

Mr. Siegel other than to say that he had been treated for viral meningitis and a gall bladder problem.

**REQUEST NO. 65:**

As of October 22, 2004, Vice President Siegel was in possession of medical documentation showing Kamen suffered from atrial fibrillation, anxiety, depression, coronary artery disease, hyperlipidemia, hypertension and abdominal pain.

**ANSWER:**

65.    Defendants admit that on October 22, 2004, IBEW International Vice-President Donald C. Siegel received an unsolicited copy of a report prepared by Steven A. Kamen's primary care physician, Dr. John R. Rocchi, in support of Mr. Kamen's claim for workers' compensation filed with the District of Columbia Government Office of Workers' Compensation resulting from his absence from work caused by injuries sustained in an automobile accident, which occurred on October 14, 2004 in Butler County, Pennsylvania. Dr. Rocchi's report included a "Problem List" of the following medical conditions: atrial fibrillation, skin rash, anxiety, depression, coronary artery disease, hypertension, hyperlipidemia, rib pain (left sided), tonsillitis, acute, abdominal pain generalized, and neck pain.

**REQUEST NO. 66:**

As of October 22, 2004, Vice President Siegel's office was in possession of medical documentation showing Kamen suffered from atrial fibrillation, anxiety, depression, coronary artery disease, hyperlipidemia, hypertension and abdominal pain.

**ANSWER:**

66.    Defendants admit that on October 22, 2004, IBEW International Vice-President

Donald C. Siegel received an unsolicited copy of a report prepared by Steven A. Kamen's primary care physician, Dr. John R. Rocchi, in support of Mr. Kamen's claim filed with the District of Columbia Government Office of Workers' Compensation resulting from his absence from work caused by injuries sustained in an automobile accident, which occurred on October 14, 2004 in Butler County, Pennsylvania. Dr. Rocchi's report included a "Problem List" of the following medical conditions: atrial fibrillation, skin rash, anxiety, depression, coronary artery disease, hypertension, hyperlipidemia, rib pain (left sided), tonsillitis, acute, abdominal pain generalized, and neck pain.

**REQUEST NO. 67:**

Vice President Siegel received a note from Kamen, the note dated April 6, 2004, with a note from Kamen's physician attached.

**ANSWER:**

67.    Defendants admit that IBEW International Vice-President Donald C. Siegel received a letter from Steven A. Kamen dated April 6, 2004, with a note attached thereto from Mr. Kamen's physician.

**REQUEST NO. 68:**

The doctor's note excused Kamen from work for the month of April while Kamen recovered from multiple serious health conditions including meningitis and diverticulitis.

**ANSWER:**

68.    Defendants admit that the doctor's note attached to an April 6, 2004 letter from Steven A. Kamen to IBEW International Vice-President Donald C. Siegel asked that Mr. Kamen be "excused from work for the month of April while he continues to recover from multiple

- 26 -

serious health conditions including meningitis and diverticulitis." The doctor further stated that Mr. Kamen "is intending to return to work on May 1st without restrictions."

**REQUEST NO. 69:**

Vice President Siegel received a letter dated March 16, 2004, from Kamen.

**ANSWER:**

69.    Defendants admit that IBEW International Vice-President Donald C. Siegel received a letter dated March 16, 2004 from Steven A. Kamen.

**REQUEST NO. 70:**

Vice President Siegel forwarded the letter from Kamen dated April 6, 2004, together with the doctor's note, to President Hill at or about the same time.

**ANSWER:**

70.    Defendants deny that IBEW International Vice-President Donald C. Siegel ever forwarded a letter from Steven A. Kamen dated April 6, 2004, together with a doctor's note, to IBEW International President Edwin D. Hill.

**REQUEST NO. 71:**

Vice President Siegel knew no later than March 12, 2004, that Kamen was on medical leave.

**ANSWER:**

71.    Defendants admit that IBEW International Vice-President Donald C. Siegel knew no later than March 12, 2004 that Steven A. Kamen was on medical leave.

**REQUEST NO. 72:**

Edwin Hill became International President in 2001.

- 27 -

**ANSWER:**

72.    Defendants admit that Edwin D. Hill became IBEW International President on January 29, 2001.

**REQUEST NO. 73:**

Wyatt Earp and Steven Kamen had the same duties but for different locals.

**ANSWER:**

73.    Defendants admit that Wyatt R. Earp and Steven A. Kamen performed essentially the same duties while each was employed as an IBEW International Representative assigned to the IBEW Third District, but were assigned to provide support and assistance to different IBEW Local Unions as well as perform different assignments.

**REQUEST NO. 74:**

Edwin Hill received Vice President Siegel's letter of November 30, 2004, on or about November 30, 2004.

**ANSWER:**

74.    Defendants neither admit nor deny that IBEW International President Edwin D. Hill received a letter dated November 30, 2004 on or about November 30, 2004 from IBEW International Vice-President Donald C. Siegel; however, they admit that Mr. Hill read Mr. Siegel's letter on December 3, 2004.

**REQUEST NO. 75:**

Steven Kamen was not the only International Representative with open assignments before November 30, 2004.

- 28 -

**ANSWER:**

75.    Defendants admit that Steven A. Kamen was not the only IBEW International Representative who had unfinished or incomplete assignments that were overdue before November 30, 2004.

**REQUEST NO. 76:**

Steven Kamen was not the only International Representative with open assignments as of November 30, 2004.

**ANSWER:**

76.    Defendants admit that Steven A. Kamen was not the only IBEW International Representative who had unfinished or incomplete assignments that were overdue as of November 30, 2004.

**REQUEST NO. 77:**

Vice President Siegel would discuss the open assignments of the International Representatives at the staff meetings of International Representatives.

**ANSWER:**

77.    Defendants admit that IBEW International Vice-President Donald C. Siegel regularly discussed IBEW International Representatives' unfinished or incomplete assignments that were overdue at IBEW Third District staff meetings.

**REQUEST NO. 78:**

Kamen was in the hospital when Local Union 1968 needed assistance in bargaining negotiations.

**ANSWER:**

78.    Defendants admit that IBEW International Vice-President Donald C. Siegel learned that Steven A Kamen was in the hospital when representatives of IBEW Local Union No. 1968 complained to him that they were unable to contact Mr. Kamen on repeated occasions when they needed assistance in collective bargaining negotiations.

**REQUEST NO. 79:**

Neither Vice President Siegel nor anyone else in management at IBEW communicated any complaints about Kamen's performance by the Locals to Kamen himself.

**ANSWER:**

79.    Defendants deny that neither IBEW International Vice-President Donald C. Siegel nor any other officer or representative of the IBEW ever communicated complaints to Steven A. Kamen about his performance as an IBEW International Representative inasmuch as Mr. Siegel discussed these matters with Mr. Kamen during their meeting at the IBEW Third District Progress Meeting in Atlantic City, New Jersey on May 11-14, 2004 and during their meeting on November 30, 2004 in the IBEW Third District Office in Coraopolis, Pennsylvania.

**REQUEST NO. 80:**

Vice President Siegel did not inform Kamen prior to November 30, 2004, of any complaints made by the Locals about Kamen.

**ANSWER:**

80.    Defendants deny that neither IBEW International Vice-President Donald C. Siegel nor any other officer or representative of the IBEW ever communicated complaints by representatives of IBEW Local Unions to Steven A. Kamen about his performance as an IBEW

International Representative inasmuch as Mr. Siegel discussed these matters with Mr. Kamen during their meeting at the IBEW Third District Progress Meeting in Atlantic City, New Jersey on May 11-14, 2004 and during their meeting on November 30, 2004 in the IBEW Third District Office in Coraopolis, Pennsylvania.

**REQUEST NO. 81:**

During the progress meeting with Vice President Siegel in May 2004 (after Kamen's return from medical leave) Vice President Siegel said nothing about the weekly activity reports or the bi-weekly expense reports to Kamen.

**ANSWER:**

81.    Defendants deny that IBEW International Vice-President Donald C. Siegel said nothing to Steven A. Kamen about his failure to submit weekly activity reports and bi-weekly expense reports during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 82:**

During the same progress meeting Kamen asked Vice President Siegel that the three Locals taken away from Kamen during Kamen's medical leave (Locals 2007, 1968 and 385) be restored to Kamen.

**ANSWER:**

82.    Defendants admit that Steven A. Kamen asked IBEW International Vice-President Donald C. Siegel during the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave) that three of the IBEW Local Unions, which had been reassigned to other IBEW International Representatives

during Mr. Kamen's medical leave (Local Nos. 2007, 1968 and 385), be reassigned to him.

**REQUEST NO. 83:**

Vice President Siegel refused to restore these Locals to Kamen.

**ANSWER:**

83.    Defendants admit that IBEW International Vice-President Donald C. Siegel denied Steven A. Kamen's request made during the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave) that three of the IBEW Local Unions, which had been reassigned to other IBEW International Representatives during Mr. Kamen's medical leave (Local Nos. 2007, 1968 and 385), be reassigned to him.

**REQUEST NO. 84:**

Vice President Siegel gave Kamen no reason for refusing to restore these Locals to Kamen.

**ANSWER:**

84.    Defendants deny that IBEW International Vice-President Donald C. Siegel failed to give Steven A. Kamen a reason during the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave) for refusing to reassign three of the IBEW Local Unions to him, which had been reassigned to other IBEW International Representatives during Mr. Kamen's medical leave (Local Nos. 2007, 1968 and 385), inasmuch as Mr. Siegel told Mr. Kamen that he did not believe Mr. Kamen was capable of providing the support and assistance that these IBEW Local Unions needed.

**REQUEST NO. 85:**

Kamen was unable to attend the meetings in February 2004 for Local 1968, Town of Rochester Highway employees, because he was seriously ill.

**ANSWER:**

85.    Defendants admit that they learned several weeks later, but did not know at the time, that Steven A. Kamen was unable to attend the meetings in February 2004 for Local 1968, Town of Rochester Highway employees, because he was seriously ill.

**REQUEST NO. 86:**

Kamen was in the hospital when an e-mail was sent from Vice President Siegel to Kamen on February 27, 2004.

**ANSWER:**

86.    Defendants admit that they learned several weeks later, but did not know at the time, that Steven A. Kamen was in the hospital when IBEW International Vice-President Donald C. Siegel sent an e-mail to him on February 27, 2004, which asked Mr. Kamen to contact him "ASAP."

**REQUEST NO. 87:**

During the months of February, March and April 2004, prior to Kamen's return to work on May 1, 2004, Kamen was either in the hospital or was being nursed at home and unable to perform the functions of his job.

**ANSWER:**

87.    Defendants admit that Steven A. Kamen was hospitalized on at least one occasion and was treated for viral meningitis, a gall bladder problem and diverticulitis during the months

of February, March and April 2004, prior to his return to work on May 1, 2004.

**REQUEST NO. 88:**

Steven Kamen communicated primarily with Mike Welsh, not Vice President Siegel, during his medical leave either directly or through his sisters.

**ANSWER:**

88.    Defendants admit that Steven A. Kamen communicated either directly or through his sisters and his ex-wife primarily with IBEW International Representative Michael D. Welsh, not IBEW International Vice-President Donald C. Siegel, during his medical leave.

**REQUEST NO. 89:**

Whenever Kamen would get a physician's note or an update of his physical condition and likely return to work he would provide that information to Vice President Siegel's office during the period of time he was on medical leave.

**ANSWER:**

89.    Defendants admit that IBEW International Vice-President Donald C. Siegel received two letters from Steven A. Kamen during his medical leave of absence dated March 16, 2004 and the other dated April 6, 2004, attached to which were notes prepared by Mr. Kamen's primary care physician dated March 11, 2004 and April 2, 2004, respectively, which stated that he was too sick to work and stated that he would resume his duties when able.

**REQUEST NO. 90:**

Kamen was not informed he had been relieved of duties for Local 385 and Local 1968 prior to April 6, 2004.

**ANSWER:**

90.     Defendants deny that Steven A. Kamen was not informed he had been relieved of responsibility for providing support and assistance to IBEW Local Nos. 385 and 1968 prior to April 6, 2004 inasmuch as IBEW International Vice-President Donald C. Siegel provided copies of letters to Mr. Kamen dated March 1, 2004, which Mr. Siegel addressed to IBEW International Representatives James M. Schlosser and Pasquale Gino and IBEW Local No. 385 Business Manager Scott C. Baker, Sr. and IBEW Local Union No. 1968 Business Manager Andrew P. Bubniak, each of which stated that responsibility for providing support and assistance to those Local Unions was being reassigned from Mr. Kamen to Mr. Schlosser and Mr. Gino, respectively.

**REQUEST NO. 91:**

Kamen was not informed he had been relieved of these Locals until he returned to work after May 1, 2004.

**ANSWER:**

91.     Defendants deny that Steven A. Kamen was not informed he had been relieved of responsibility for providing support and assistance to Local Nos. 385 and 1968 until he returned to work on May 1, 2004 inasmuch as IBEW International Vice-President Donald C. Siegel provided copies to Mr. Kamen of letters dated March 1, 2004, which he sent to IBEW International Representatives James M. Schlosser and Pasquale Gino and IBEW Local No. 385 Business Manager Scott C. Baker, Sr. and IBEW Local Union No. 1968 Business Manager Andrew P. Bubniak, each of which stated that responsibility for providing support and assistance

to those Local Unions was being reassigned from Mr. Kamen to Mr. Schlosser and Mr. Gino, respectively.

**REQUEST NO. 92:**

At no time between May 2003 when Plaintiff met with Vice President Siegel for a performance review and November 30, 2004, was Plaintiff threatened with termination.

**ANSWER:**

92.    Defendants admit that Steven A. Kamen was not told that his employment by the IBEW might be terminated at any time between May 2003 when he met with IBEW International Vice-President Donald C. Siegel for a performance review and November 30, 2004.

**REQUEST NO. 93:**

Between May 1, 2004, when Plaintiff returned to work from his medical leave, and November 30, 2004, when Vice President Siegel recommended Kamen's termination, other International Representatives were delinquent in submitting weekly reports.

**ANSWER:**

93.    Defendants admit that other IBEW International Representatives assigned to the IBEW Third District were delinquent in submitting their weekly activity reports between May 1, 2004, when Steven A. Kamen returned to work from his medical leave, and November 30, 2004, when IBEW International Vice-President Siegel informed Mr. Kamen that he could no longer use him on the IBEW Third District staff and so informed IBEW International President Edwin D. Hill on that date.

**REQUEST NO. 94:**

Between May 1, 2004, when Plaintiff returned to work from his medical leave and November 30, 2004, when Vice President Siegel recommended Kamen's termination, other International Representatives were delinquent in submitting biweekly expense reports.

**ANSWER:**

94.    Defendants admit that other IBEW International Representatives assigned to the IBEW Third District were delinquent in submitting their bi-weekly expense reports between May 1, 2004, when Steven A. Kamen returned to work from his medical leave, and November 30, 2004, when IBEW International Vice-President Siegel informed Mr. Kamen that he could no longer use him on the IBEW Third District staff and so informed IBEW International President Edwin D. Hill on that date.

**REQUEST NO. 95:**

During the period of time May 1, 2004, until November 30, 2004, other International Representatives had open assignments.

**ANSWER:**

95.    Defendants admit that other IBEW International Representatives assigned to the IBEW Third District had unfinished and incomplete assignments, which were overdue, during the period of time from May 1, 2004 until November 30, 2004.

**REQUEST NO. 96:**

No International Representative other than Kamen was suspended, terminated or otherwise disciplined as a result of delinquent weekly reports or bi-weekly expense reports after July 5, 2002, through the present.

**ANSWER:**

96.    Defendants admit that since July 5, 2002, no IBEW International Representative assigned to the IBEW Third District other than Steven A. Kamen was suspended, terminated or otherwise disciplined as a result of failing to timely submit weekly activity reports and/or bi-weekly expense reports.

**REQUEST NO. 97:**

No one in management at IBEW said anything to Kamen from the time he returned from his medical leave until he was informed on November 30, 2004, that Vice President Siegel was recommending he be terminated about IBEW management not being able to reach Kamen during his medical leave.

**ANSWER:**

97.    Defendants deny that no officer or representative of the IBEW said anything to Steven A. Kamen about not being able to contact Mr. Kamen during his medical leave from the time he returned from his medical leave on May 1, 2004 until IBEW International Vice-President Donald Siegel informed him and IBEW International President Edwin D. Hill that he could no longer use Mr. Kamen on the IBEW Third District staff as an International Representative inasmuch as Mr. Siegel discussed this problem with Mr. Kamen during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 98:**

No one in management at IBEW said anything to Kamen from the time he returned from his medical leave until he was informed on November 30, 2004, that Vice President Siegel was

recommending he be terminated that IBEW management had a problem with his inaccessibility during his medical leave.

**ANSWER:**

98.    Defendants deny that no officer or representative of the IBEW said anything to Steven A. Kamen about a problem with Mr. Kamen's inaccessibility during his medical leave from the time he returned from his medical leave on May 1, 2004 until IBEW International Vice-President Donald Siegel informed him and IBEW International President Edwin D. Hill that he could no longer use Mr. Kamen on the IBEW Third District staff as an International Representative inasmuch as Mr. Siegel discussed this problem with Mr. Kamen during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 99:**

No one in management at IBEW said anything to Kamen from the time he returned from his medical leave until he was informed on November 30, 2004, that Vice President Siegel was recommending he be terminated about Kamen not being in communication or IBEW management not being able to communicate with Kamen.

**ANSWER:**

99.    Defendants deny that no officer or representative of the IBEW said anything to Steven A. Kamen about not being in communication or IBEW management not being able to communicate with Mr. Kamen during his medical leave from the time he returned from his medical leave on May 1, 2004 until IBEW International Vice-President Donald Siegel informed him and IBEW International President Edwin D. Hill that he could no longer use Mr. Kamen on

the IBEW Third District staff as an International Representative inasmuch as Mr. Siegel discussed this problem with Mr. Kamen during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 100:**

Prior to the meeting with Vice President Siegel on November 30, 2004, no one in IBEW management informed Kamen of the specific assignments he allegedly failed to complete.

**ANSWER:**

100.    Defendants deny that no officer or representative of the IBEW said anything to Steven A. Kamen about specific assignments he allegedly failed to complete from the time he returned from his medical leave on May 1, 2004 about specific assignments he allegedly failed to complete. IBEW International Vice-President Donald Siegel informed him and IBEW International President Edwin D. Hill that he could no longer use Mr. Kamen on the IBEW Third District staff as an International Representative inasmuch as Mr. Siegel discussed this problem with Mr. Kamen during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 101:**

Prior to Kamen's receipt of his termination letter of December 8, 2004, no one in IBEW management informed Kamen of the specific assignments he allegedly failed to complete.

**ANSWER:**

101.    Defendants deny that no officer or representative of the IBEW said anything to Steven A. Kamen about specific assignments he allegedly failed to complete prior to receipt by

Mr. Kamen of his termination letter from IBEW International President Edwin D. Hill dated December 8, 2004 inasmuch as IBEW International Vice-President Donald Siegel discussed this problem with Mr. Kamen during their meeting at the Third District Progress Meeting in Atlantic City, New Jersey between May 11-14, 2004 (after Mr. Kamen returned from medical leave).

**REQUEST NO. 102:**

Prior to the meeting with Vice President Siegel on November 30, 2004, no one in IBEW management informed Kamen that if he did not get his reports in on time that he would be suspended or terminated.

**ANSWER:**

102.   Defendants admit that no officer or representative of the IBEW informed Steven A. Kamen that his employment by the IBEW would be suspended or terminated if he did not submit his weekly activity reports and bi-weekly expense reports on time prior to his meeting with IBEW International Vice-President Donald Siegel on November 30, 2004.

**REQUEST NO. 103:**

Prior to Kamen's receipt of his termination letter of December 8, 2004, no one in IBEW management informed Kamen that if he did not get his reports in on time that he would be suspended or terminated.

**ANSWER:**

103.   Defendants admit that no officer or representative of the IBEW informed Steven A. Kamen that his employment by the IBEW would be suspended or terminated if he did not submit his weekly activity reports and bi-weekly expense reports on time prior to receipt of a letter from IBEW International President Edwin D. Hill dated December 8, 2004, which

informed Mr. Kamen that his employment by the IBEW would be terminated effective on December 31, 2004.

                    Respectfully submitted,


                    _____
                    TERRY R. YELLIG (D.C. Bar No. 946095)

                    SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
                    900 SEVENTH STREET, N.W.
                    SUITE 1000
                    WASHINGTON, D.C. 20001
                    TELEPHONE NO. (202) 785-9300

                    Attorneys for Defendants International Brotherhood of
                    Electrical Workers, AFL-CIO,
                    and Edwin D. Hill


Dated: March 20, 2008.

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2008, the foregoing Defendants' Answers to Plaintiff's Requests for Admission was served upon the parties in this action by placing a copy thereof in a sealed envelope, and delivering it to United Parcel Service for next-day delivery to the parties addressed as follows:

Joseph H. Chivers, III
312 Boulevard of the Allies
Suite 700
Pittsburgh, PA 15222

Bart T. Valad, Esquire
John Vecchione, Esquire
Valad & Vecchione, PLLC
3863 Plaza Drive
Fairfax, VA 22030

Terry R. Yellig