## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **STEVEN A. KAMEN** | ) | |
| | ) | **Case No. 1:06CV01063 (RMC)** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRICAL WORKERS, AFL-CIO and** | ) | |
| **EDWIN D. HILL, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO FOR SUMMARY JUDGMENT

Defendants International Brotherhood of Electrical Workers, AFL-CIO ("IBEW") and its International President, Edwin D. Hill ("Hill") have filed a Motion for Summary Judgment, which asks the Court to dismiss the residual claims in the Amended Complaint in the above-captioned case: Count I (the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*), Count IV (the District of Columbia Human Rights Act of 1977, D.C. Code Ann. § 2-1401.01 *et seq.*) and Count V (tortious interference).[1] Plaintiff Steven A. Kamen has submitted Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (hereafter "Plaintiff's Mem.")in which, *inter alia*, he stipulates to dismissal of the remaining claims set forth in Count IV and Count V of the Amended Complaint in its entirety. As a result, the only claim left to be resolved in this case is Count I of

---

[1] The Court has already dismissed Counts II, III and all of the claims in Count IV except for allegations that defendants IBEW and Hill "have had and continue to maintain through the present policy and practice of hostility and prejudice towards homosexuals." Amended Complaint at ¶¶ 83 & 84 (*see also* ¶¶ 51-55). *Kamen v. International Brotherhood of Elec. Workers, AFL-CIO and Edwin D. Hill*, 505 F. Supp. 2d 66 (D D.C. 2007) (Document #18).

the Amended Complaint, which alleges that defendant IBEW discharged plaintiff Kamen from his employment as an IBEW International Representative in violation of the ADA because he is infected by the human immunodeficiency virus (HIV).[2]

## ARGUMENT

### DEFENDANT IBEW DID NOT UNLAWFULLY DISCRIMINATE AGAINST PLAINTIFF KAMEN IN VIOLATION OF THE ADA.

Count I of the Amended Complaint alleges that defendant IBEW unlawfully terminated plaintiff Kamen's employment because he is disabled on account of contracting the human immunodeficiency virus (HIV). *See* Amended Complaint at ¶ 60. The Amended Complaint also alleges that defendant IBEW terminated plaintiff Kamen's employment "because of its unwillingness to accommodate Plaintiff's known disability." *Id.* at ¶ 61. The Amended Complaint then alleges that "[d]efendant IBEW's actions were in violation of the ADA's prohibition against discrimination based on disability." *Id.* at ¶ 62.

To establish a *prima facie* case of unlawful discrimination based on disparate treatment in this case, plaintiff Kamen must show, by a preponderance of the evidence, that: (1) he had a disability within the meaning of the ADA; (2) he was qualified for the position with or without reasonable accommodation; and (3) he suffered an adverse employment action (*i.e.*, termination) because of his disability. *Lytes v. District of Columbia Water and Sewer Authority*, C.A. No. 05-402 (RMC) (Document # 62), 2007 U.S. Dist. LEXIS 91154 at *19 (D.D.C., Dec. 13, 2007) (citing *Duncan v. Washington Metropolitan Area Transit Authority* 240 F.3d 1110, 1114 (D.C. Cir. 2001). An additional element essential to establishing a *prima facie* case of discrimination

---

[2]     Defendant Edwin D. Hill should be dismissed from this case since the only claim that remains is Count I of the Amended Complaint, which does not name him as a defendant.

under the ADA where the defendant denies that its decisions were motivated by the plaintiff's disability is proof that the employer had notice of the employee's alleged disability.[3/]

Defendant IBEW asserted in its Motion for Summary Judgment that: (1) plaintiff Kamen can not establish a *prima facie* case of disparate discrimination because IBEW International President Edwin D. Hill, who actually decided to terminate plaintiff Kamen's employment by the IBEW, had no knowledge that plaintiff Kamen was infected by HIV at the time his employment by the IBEW was terminated; (2) plaintiff Kamen cannot present a genuine issue of material fact as to whether he was disabled under the ADA at the time his employment was terminated; (3) defendant IBEW did not fail to provide a reasonable accommodation for plaintiff Kamen's alleged disability in violation of the ADA inasmuch as plaintiff Kamen never requested an accommodation; and (4) plaintiff Kamen failed to allege a reasonable accommodation claim in the charge of discrimination, which he filed with the Equal Employment Opportunity Commission against defendant IBEW and, therefore, failed to exhaust administrative remedies that are a jurisdictional prerequisite for judicial relief under the ADA.[4/]

---

[3/]     The D.C. Circuit has never explicitly adopted the four-prong test, nor has it recognized the distinction between claims of failure to accommodate and claims of disparate treatment. *See Breen v. Dep't of Transp.*, 282 F.3d 839, 840-41 (D.C. Cir. 2002). Judge Urbina recently suggested in *Jones v. University of the District of Columbia*, 505 F. Supp.2d 78, 88 n.6 (D.D.C. 2007) (citing *Morisky v. Broward City*, 80 F.3d 445, 448 (11th Cir. 1996) (reasoning that "it is intuitively clear . . . that an employer cannot fire an employee 'because of' a disability unless it knows of the disability"), that there is no reason to distinguish between the two claims, *see* 42 U.S.C. § 12112(b)(5)(A) (defining failure to make reasonable accommodations as a form of discrimination), and noted that the elements of the two tests are essentially the same. Specifically, Judge Urbina pointed out that the notice requirement of the four-prong test is implied in the three-prong test's requirement of an adverse employment decision due to a disability. *Id.*

[4/]     Plaintiff Kamen failed to offer any response to defendant IBEW's argument that he failed to allege a reasonable accommodation claim in the charge of discrimination, which he filed with the Equal Employment Opportunity Commission against defendant IBEW and, therefore, he failed to exhaust administrative remedies that are a jurisdictional prerequisite for judicial relief

A. **THE COURT SHOULD APPLY THE ANALYTIC FRAMEWORK BASED ON *ADICKES* AND *CELOTEX* TO ITS CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *See* 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2727 (3rd ed. 1998). In order to carry its burden of production, the moving party must produce *either* evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Cobell v. Norton*, 260 F. Supp.2d 110, 117-18 (D.D.C. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-31 (1986) (Brennan, J. dissenting)).[5]

---

under the ADA. It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded. *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *Federal Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 2002 WL 31106569, at *2 (D.D.C. 2002). The District of Columbia Circuit has stated that "the discretion to enforce . . . Rule [7(b)] lies wholly with the district court[,]" *Bender,* 127 F.3d at 67-68 (citing *Twelve John Does v. District of Columbia*, 17 F.3d 571, 577 (D.C. Cir. 1997)), and noted that it "has yet to find that a district court's enforcement of this rule constituted an abuse of discretion." *Id.* (citations omitted).

[5]    Although the Justices in *Celotex* disagreed as to how the standard for summary judgment should have been applied to the facts of the case, they agreed on the nature of the burdens of proof involved in a summary judgment motion. Justice Brennan's dissenting opinion summarized the applicable standards:

> The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production.

If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); A. Friedenthal, A. Miller and M. Kane, *Civil Procedure* 460 (3rd ed. 1999). In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. *See Grey v. Greyhound Lines*, 545 F.2d 169, 174 (D.C. Cir. 1976) (citing *Adickes*, 398 U.S. at 160-61). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *See Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("Federal Rule of Civil Procedure 56(e) makes clear, however, that in opposing a motion for summary judgment that is supported as provided in the Rule, the adverse party 'may not rest upon the mere allegations or denials of

---

The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. ***If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.***

(Emphasis in original omitted and emphasis added) (footnotes and internal citations omitted).

the adverse party's pleading, but . . . affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial'"). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. *See Celotex*, 477 U.S. at 322. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. *See id.*

The analytic framework for resolution of motions for summary judgments is provided by *Adickes* and *Celotex*. There is no question that the two cases have caused some confusion in the lower courts, and that some academic commentators consider them to be inconsistent.[6] However, the cases must be reconciled inasmuch as the Supreme Court in *Celotex* explicitly relied upon and distinguished *Adickes* rather than overruling it. *See* 477 U.S. at 325.

The perceived tension between *Adickes* and *Celotex* may be explained by the fact that the cases focused on different questions. The central question in *Adickes* was whether the moving party had carried its initial burden of production by producing affirmative evidence negating an essential element of the nonmoving party's claim. The central question in *Celotex* was whether the moving party had carried its initial burden of production by showing that the nonmoving party did not have enough evidence to carry its ultimate burden of persuasion at trial. In other

---

[6]    *See, e.g.*, Samuel Issacharoff & George Loewenstein, *Second Thoughts About Summary Judgment*, 100 Yale L.J. 73, 81 (1990) ("*Celotex* represents a retreat from the *Adickes* standard for summary judgment with regard to the burden of production that would be required of a movant for summary judgment."); Melissa L. Nelken, *One Step Forward, Two Steps Back: Summary Judgment after Celotex*, 40 Hastings L.J. 53, 65 & n.60 (1988) ("[*Celotex*] marks a substantial break with precedent regarding the initial burden on a party moving for summary judgment . . . [*Celotex* and *Adickes*] cannot be squared in terms of the initial burden placed on the moving party."); John E. Kennedy, *Federal Summary Judgment: Reconciling Celotex v. Catrett* with *Adickes v. Kress* and the Evidentiary Problem Under Rule 56, 6 Rev. Litig. 227, 247 (1987) (reconciling *Celotex* and *Adickes* as to the moving party's burden is "perverse because it rests upon an interpretation of the Rule rewarding [defendant] Celotex for remaining silent and punishing [defendant] Kress for attempting to satisfy a burden it did not have.").

words, *Adickes* and *Celotex* dealt with the two different methods by which a moving party can carry its initial burden of production.[2/]

In *Adickes*, plaintiff was a white school teacher who, with six black students, sat at a table in a restaurant in an S.H. Kress variety store in Hattiesburg, Mississippi, as part of a civil rights protest. Ms. Adickes was refused service and then, as she left the store, arrested for vagrancy. She brought a civil rights suit against Kress under 42 U.S.C. § 1983, alleging that the store's employees conspired with police to refuse her service because she was a white person "'in the company of Negroes.'" 398 U.S. at 149.

Because Kress was a private company, it could only engage in state action in violation of § 1983 only if it conspired with Hattiesburg police officers in denying service to Ms. Adickes. As plaintiff, Ms. Adickes had the ultimate burden of persuasion at trial to show such a conspiracy. Kress moved for summary judgment on the ground that there was no conspiracy. Kress submitted the deposition of its store manager, which affirmatively stated he had not communicated with the police; an affidavit of the chief of police, which affirmatively stated the store manager had not asked the police department to arrest Ms. Adickes; and identical affidavits of the two arresting officers, which stated they had not consulted with the store manager or anyone else prior to the arrest and that "no one at the Kress store asked that the arrest be made." Kress further noted that Ms. Adickes relied on circumstantial evidence to support her contention that there was an arrangement between Kress and the police, and pointed out that Ms. Adickes said in her deposition that she had no knowledge of any communication between store employees and the police.

---

[2/]    Adam N. Steinman, *The Irrepressible Myth of Celotex: Reconsidering Summary Judgment Burdens Twenty Years After the Trilogy,* 63 Wash. & Lee L. Rev. 81, 124 (Winter 2006).

The Supreme Court asked whether Kress, the moving party without the ultimate burden of persuasion at trial, had produced affirmative evidence negating an essential element of Ms. Adickes' claim, thereby carrying its initial burden of production. The Court concluded that Kress had not carried its initial burden of production because of its failure to foreclose the possibility that there was a policeman in the Kress store while Ms. Adickes was awaiting service, and that this policeman reached an understanding with a Kress employee other than the store manager that Ms. Adickes not be served.

> It is true that Mr. Powell, the store manager, claimed in his deposition that he had not seen or communicated with a policeman prior to his tacit signal to Miss Baggett, the supervisor of the food counter. But [Kress] did not submit any affidavits from Miss Baggett, or from Miss Freeman, the waitress, who actually refused [Ms. Adickes] service, either of whom might well have seen and communicated with a policeman in the store. Further, we find it particularly noteworthy that the two police officers involved in the arrest each failed in his affidavit to foreclose the possibility (1) that he was in the store while petitioner was there; and (2) that, upon seeing petitioner with Negroes, he communicated his disapproval to a Kress employee, thereby influencing the decision not to serve petitioner.
>
> Given these unexplained gaps in the materials submitted by [Kress], we conclude that [Kress] failed to fulfill its initial burden of demonstrating what is a critical element in this aspect of the case - that there was no policeman in the store. If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.

*Id.* at 157-58.

Thus, under *Adickes*, a moving party without the ultimate burden of persuasion at trial does not carry its initial burden of production if it fails to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense. 398 U.S. at 158. By failing to provide affidavits by the food counter supervisor and the waitress, and by providing narrow, artfully drafted affidavits of the two policemen, Kress failed to present evidence negating an

essential element of Ms. Adickes' claim. The Court reasoned that if the food service supervisor and the waitress had no communication from the policemen, Kress could have provided their affidavits so stating. Similarly, the Court said that if the policemen had not been in the store, they could have so stated in their affidavits. "Because [Kress] did not meet its initial burden of establishing the absence of a policeman in the store, [Ms. Adickes] was not required to come forward with suitable opposing affidavits." *Id.* at 160. As the Supreme Court wrote, quoting Professor Moore, "'No defense to an insufficient showing is required.'" *Adickes*, 398 U.S. at 161 (quoting 6 James Wm. Moore et al., Moore's Federal Practice § 56.22 [2] (2d ed. 1966)).

In *Celotex*, Myrtle Catrett sued Celotex Corporation and several other defendants in this court for the wrongful death of her husband, Louis Catrett. 477 U.S. at 319. Mrs. Catrett alleged that her husband had died due to exposure to Celotex's asbestos products. During discovery, Celotex served interrogatories on Mrs. Catrett asking her, among other things, to identify potential witnesses supporting her claim and for detailed information about any work her husband did with asbestos. Mrs. Catrett's answers to these interrogatories failed to identify any such witnesses or information, stating that she would respond later with supplemental answers.

Celotex filed a motion for summary judgment contending that there was no evidence that Mr. Catrett had been exposed to any Celotex asbestos product.[8] Celotex withdrew this motion six weeks later but then filed a second summary judgment motion. *Catrett v. Johns-Manville Sales Corp. (Catrett 1), 756* F.2d 181, 183 & n.2 (D.C. Cir. *1985), rev'd sub nom. Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). This motion asserted that the court should grant summary judgment

---

[8]    David L. Shapiro, *The Story of* Celotex: *The Role of Summary Judgment in the Administration of Civil Justice, in* CIVIL PROCEDURE STORIES: AN IN-DEPTH LOOK AT THE LEADING CIVIL PROCEDURE CASES 343, 348 (Kevin M. Clermont ed., 2004) (hereafter "*Shapiro*").

because Mrs. Catrett had "failed to produce evidence that any [Celotex] product was the proximate cause of the injuries alleged within the jurisdictional limits of [the District] Court." *Celotex,* 477 U.S. at 319-20 (alteration in original) (quoting Celotex's second motion for summary judgment). At the time of his alleged exposure, Mr. Catrett was employed by Anning & Johnson. *Catrett 1,* 756 F.2d at 183.

In opposing the summary judgment motion, Mrs. Catrett relied on three documents: (a) a letter from William O'Keefe of Aetna Casualty & Surety, Aiming & Johnson's insurer, stating that Anning & Johnson had acquired asbestos from a company that Celotex later purchased; (b) a letter from T.R. Hoff, Anning & Johnson's assistant secretary, describing Mr. Catrett's duties there and stating that Arming & Johnson had purchased an asbestos product from a company Celotex now owned; and (c) deposition testimony by Mr. Catrett in an earlier workers' compensation proceeding stating that his duties with Arming & Johnson involved direct contact with asbestos products. *Id.*

The district court granted Celotex's summary judgment motion, stating at the close of oral argument that there had been no showing of exposure to a Celotex product "within the District of Columbia or elsewhere." *Id.* at 183 n.3. On appeal, a divided panel of the D.C. Circuit reversed. *Catrett II,* 826 F.2d at 33. Judge Starr, joined by Judge Wald, held that Celotex had not met its burden under *Adickes,* because it had "offered *no* affidavits, declarations or evidence of any sort whatever in support of its summary judgment motion. To the contrary, Celotex's motion was based solely on Mrs. Catrett's purported failure to produce credible evidence to support her claim." *Catrett 1,* 756 F.2d at 1 84. Relying on *Adickes,* the majority explained:

> In this case Celotex proffered nothing. It advanced only the naked allegation that the *plaintiff* had not come forward in discovery with evidence to support her allegations of the decedent's exposure to the defendant's product. Under settled rules, that barebones approach will not do. Mrs. Catrett was simply not required,

given this state of the record, to offer any evidence in response.

*Id.* at 185 (footnotes omitted).

The Supreme Court granted Celotex's petition for a writ of certiorari and subsequently issued its decision, which consisted of four separate opinions: (1) a majority opinion by Justice Rehnquist, joined by Justices White, Marshall. Powell, and O'Connor; (2) a concurring opinion by Justice White; (3) a dissenting opinion by Justice Brennan, joined by Chief Justice Burger and Justice Blackmun; and (4) a dissenting opinion by Justice Stevens. The net result, by a 5-4 margin, was to reverse the D.C. Circuit's decision and to remand for further proceedings.

Justice Rehnquist's majority opinion rejected the D.C. Circuit's premise that Celotex had to present affirmative evidence that Mr. Catrett had not been exposed to its asbestos products. "Unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. at 323 (emphasis in original). Rather, a defendant moving for summary judgment may discharge its burden by showing that there is "an absence of evidence" to support an essential element of plaintiffs case when the plaintiff will bear the burden of proof at trial. *Id.* at 325.

Justice Rehnquist's majority opinion also rejected the notion that *Adickes* imposed a heavier burden on a moving defendant. Although the majority agreed that the Court in *Adickes* reached the correct result, it stressed that *Adickes* should not "be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Id.* In other words, if "X" is a necessary element of the plaintiffs claim, the defendant is not required to produce affirmative evidence showing "*not-X*;" the

defendant can also meet its burden by showing that the plaintiff lacks sufficient evidence to prove "X" at trial.[9]

Justice Rehnquist's majority opinion explained that when the defendant meets its burden, that is, when its motion is "made and supported as provided in this rule," Rule 56(e) requires the plaintiff "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* (quoting Rule 56(c), (e).). A plaintiff must "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" *Id.* at 323. This "showing, if reduced to admissible evidence," must be "sufficient to carry [the plaintiffs] burden of proof at trial." *Id.* at 327.

Thus, under *Adickes* and *Celotex*, a moving party without the ultimate burden of persuasion at trial may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

> ## B. DEFENDANT IBEW HAD NO KNOWLEDGE THAT PLAINTIFF KAMEN WAS INFECTED BY HIV AT THE TIME IT TERMINATED HIS EMPLOYMENT.

> ### 1. Defendant IBEW, as the Moving Party, Has Carried Its Initial Burden of Production.

Defendant IBEW has carried its initial burden of production by producing affirmative evidence, which negates an essential element of plaintiff Kamen's claim that the IBEW

---

[9]     *Shapiro* at 367 (using "*X*" and "*not-X*" terminology to illustrate basic summary judgment mechanics).

terminated his employment because he was infected by HIV. Both IBEW International President Edwin D. Hill and IBEW International Vice-President Donald C. Siegel have submitted declarations, which state that they did not know that plaintiff Kamen was infected by HIV at the time his employment was terminated on December 8, 2004. Declaration of Edwin D. Hill, International President, International Brotherhood of Electrical Workers at ¶ 47, which is attached to the Defendants' Motion for Summary Judgment (Document # 26-3); and Declaration of Donald C. Siegel (hereafter "Siegel Dec.") at ¶ 96, which is attached to the Defendants' Motion for Summary Judgment (Document # 26-4).

In addition, both IBEW International President Edwin D. Hill and IBEW International Vice-President Donald C. Siegel have submitted the attached supplemental declarations, which state that they have never received any health information about plaintiff Kamen from Dr. John Rocchi or anyone else that indicated plaintiff Kamen is infected by HIV or was suspected of having contracted that disease. Supplemental Declaration of Edwin D. Hill at ¶ 6; Supplemental Declaration of Donald C. Siegel (hereafter "Siegel Supp. Dec.") at ¶¶ 10-18.

This is most significant because the D.C. Circuit held in *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894 (D.C. Cir. 1998), that an employer, which was covered by the Rehabilitation Act of 1973 since it received federal financial assistance, could not have terminated the plaintiff's employment on account of his bipolar disorder, which allegedly made him behave rudely, unless it could be shown that the employer acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability. *Id.* at 896-97. More recently, in *Evans v. Davis Memorial Goodwill Industries*, 133 F. Supp.2d 24 (D.D.C. 2000), the court granted summary judgment to the defendant charitable organization dismissing an ADA plaintiff's allegation that

he was improperly fired because of behavior problems stemming from his brain injury, inasmuch as there was no indication that the plaintiff told his former employer that the injury created a mental condition that would affect his ability to accept criticism and otherwise hold a job. The court explained:

> Employers can only be held liable for discriminating on the basis of "known" disabilities. The disabled employee typically has the burden of providing notice of the disability and the limitations it imposes. It similarly lies with the disabled employee to request needed accommodation.
>
> It is uncontested that plaintiff told Goodwill about his brain injury. Moreover, it is undisputed that [plaintiff] told Goodwill he would need extra time to learn the accounting and financial features of the job -- an accommodation he was apparently given.
>
> However, there is no indication that plaintiff told Goodwill that the injury had created a mental condition that would affect his ability to accept criticism and otherwise hold the job -- the features plaintiff now advances as the basis of his disability.

133 F. Supp.2d at 27 (citations omitted).

Given that under the ADA, the purpose of plaintiff's *prima facie* case, where no direct evidence of intent is available, is to give the plaintiff the benefit of a rebuttable presumption of discriminatory intent if he or she establishes the *prima facie* case, *St. Mary's Honor Ctr.*, 509 U.S. 502, 506 (1993), plaintiff Kamen must establish, as an element of his *prima facie* case, that defendant IBEW, by and through its officers or representatives, knew or believed that the plaintiff was disabled, or knew that the symptoms, which they observed, were caused by the alleged disability. This is a logical element to an ADA plaintiff's *prima facie* case because, unless the employer knew or believed that the plaintiff was disabled, or knew that the symptoms were caused by the alleged disability, it would be impossible for the employer to have made its decision *because of* the disability, let alone *solely because of* the disability. Where the plaintiff cannot prove employer knowledge or belief, there is no reasonable basis for extending to the

plaintiff the inference that the employer discriminated "solely because of" the plaintiff's alleged disability.

Consequently, the declarations submitted by International President Edwin D. Hill and IBEW International Vice-President Donald C. Siegel negate an essential element of plaintiff Kamen's ADA claim against defendant IBEW, which shifts the burden of production to plaintiff Kamen to produce evidence that is sufficient to create a genuine issue of material fact in dispute.

> **2. Plaintiff Kamen's Evidence That Information Was Submitted to the IBEW Prior to Termination of His Employment, Which Indicated He Was Infected and/or Suspected of Being Infected by HIV, Does Not Raise a Genuine Issue of Fact.**

Because defendant IBEW, the moving party, has carried its burden of production, plaintiff Kamen, the nonmoving party, is obliged to produce evidence in response. Such evidence must establish more than "the mere existence of a scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. In addition, plaintiff Kamen, as the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, plaintiff Kamen, as the nonmoving party, must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50 (internal citations omitted).

Plaintiff Kamen attempts to create a genuine issue of fact concerning the IBEW's awareness that he was infected by HIV by asserting, *inter alia*, that information was sent directly to the IBEW concerning plaintiff Kamen's medical condition at about the same time that his doctors suspected and ultimately confirmed that he had contracted HIV, which plaintiff Kamen maintains the IBEW has admitted to having received. *See* Plaintiff's Mem. at 32. Specifically,

plaintiff Kamen states in his affidavit in support of his opposition to defendants' Motion for

Summary Judgment:

> 25. I also know that IBEW was getting information from my doctor, especially Dr. Rocchi.
>
> 26. I personally sent notes from Dr. Rocchi to [IBEW International Vice-President Donald C. Siegel], and I know that my doctor was sending his medical reports and notes to IBEW for purposes of insurance.
>
> 27. IBEW is self-insured, so my doctor was sending the medical reports directly to the IBEW offices in [the District of Columbia].[10]
>
> 28. The medical record contained direct reference to the fact I was suspected of having HIV in March 2004, that tests confirmed HIV in April 2004, and that I was being treated for HIV throughout the remainder of 2004.

Affidavit of Steven A. Kamen (Document # 30-10) (hereafter "Kamen Aff.") at ¶¶ 25-28.[11]

---

[10]    This assertion, like so many made by plaintiff Kamen, is based on mistaken information. IBEW International Secretary-Treasurer Lindell K. Lee explains in the attached declaration that the IBEW does self-insure the medical insurance program it provides for its officers, employees and representatives. Declaration of Lindell K. Lee (hereafter "Lee Dec.") at ¶ 5. However, the IBEW Employees Welfare Benefit Plan ("Plan") is administered by CareFirst, Inc. *Id.* at ¶ 4. Consequently, all claims for payment of health care benefits provided the Plan participants and their dependants are submitted to CareFirst, not the IBEW. *Id.* at 6. In fact, Mr. Lee explains that the IBEW does not receive claims for payment of health care benefits from Plan participants and their dependants or from health care providers and, therefore, IBEW officers, representatives, and employees seeking health information about Plan participants and their dependants would have to submit a request to CareFirst or the Plan participants' health care providers because the IBEW does not receive claims for payment of health care benefits provided to Plan participants and their dependents or have any reason for having access to such information. *Id.* at ¶P 10 & 12.

[11]    Plaintiff Kamen also states:

> 22. I believe IBEW was aware of my HIV well before I was terminated.
>
> 23. When I was out in February to May 2004 my sisters were communicating regularly with IBEW.
>
> 24. I know they were telling [IBEW International Vice-President Donald C. Siegel] and [IBEW Interarntional Representative Michael D. Welsh] that I was out sick, had serious health problems, that these problems were permanent and that I could not return to work until cleared by my physician.

Defendant IBEW has moved to strike portions of these statements as well as portions of

other statements in the Affidavit of Steven Kamen pursuant to Rule 56(e), Fed. R. Civ. P.,

because they are not made on personal knowledge, set forth facts that are not admissible in

evidence, and/or fail to show affirmatively that Mr. Kamen is competent to testify to the matters

stated therein. *Canady v. Erbe Elektronmedizin GmbH*, 384 F. Supp.2d 176, 180 (D.D.C. 2005)

(citing *Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)

(stating that only statements in affidavits that are based on personal knowledge, rather than mere

belief, will survive a motion to strike); *F.S. Bowen Elec. Co. v. J.D. Hedin Constr. Co.*, 114 U.S.

App. D.C. 361, 316 F.2d 362, 364-5 (D.C. Cir. 1963) (holding that affiant must be competent to

testify to the matters stated in the affidavit); *Jameson v. Jameson*, 85 U.S. App. D.C. 176, 176

F.2d 58, 60 (D.C. Cir. 1949); *see also American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569,

---

Kamen Aff. at ¶¶ 22-24. However, neither of plaintiff Kamen's sisters states in her affidavit in support of his opposition to defendants' Motion for Summary Judgment that she told Mr. Siegel or Mr. Welsh that plaintiff Kamen had contracted HIV or even that the physicians treating him suspected that he might have contracted the disease.

Instead, Ms. Randy Kamen states in her affidavit that she "suspected [plaintiff Kamen] might have HIV based upon his lifestyle and his symptoms, and discussed my fears/suspicions with my sister – Debra Kamen." Affidavit of Randy Kamen (Document # 30-8) (hereafter "Randy Kamen Aff.") at ¶ 3. Ms. Kamen further stated: "This diagnosis was confirmed in the spring of [2004] by [plaintiff Kamen's] physicians." *Id.* Ms. Kamen further states in her affidavit that she had great difficulty contacting the IBEW Third District office in Pittsburgh to speak with IBEW International Vice-President Donald C. Siegel and resorted to leaving messages which she describes as "[making it] clear that [plaintiff Kamen] was very sick, had just been released from the hospital and was unable to contact work or otherwise engage in his job because of his serious illnesses," that plaintiff Kamen "could have permanent problems/limitations due to his illnesses and proposed treatment plan," and that his "condition was serious, potential life threatening, and that he needed to have time off to recover and get back on his feet before he could consider coming back to work." Randy Kamen Aff. at ¶¶ 12-14 & 17. *See also* Affidavit of Debra Kamen (Document # 30-9) at ¶¶ 11-13, 15-16 (efforts to contact IBEW Third District Office) and ¶ 14 ("I also made clear that [plaintiff Kamen] was very sick, was in the hospital and was unable to contact work or otherwise engage in his job because of this").

1579 (11th Cir. 1985) (stating that while the information contained in affidavits should be admissible at trial, the affidavits themselves need not be admissible)).

Aside from the questionable propriety of portions of the Affidavit of Steven A. Kamen, which he seeks to use to oppose defendants' Motion for Summary Judgment, it only states that information about plaintiff Kamen, including "direct reference to the fact [he] was suspected of having HIV in March 2004, that tests confirmed HIV in April 2004, and that [he] was being treated for HIV throughout the remainder of 2004," was sent to the IBEW.[12] Kamen Aff. at ¶ 28. Obviously, this information could have been sent to the IBEW, but neither IBEW International President Edwin D. Hill nor IBEW International Vice-President Donald C. Siegel was made aware of the information or provided copies to read. In other words, both plaintiff Kamen's assertion that information about his health condition, including the fact that his doctors suspected he had contracted HIV and subsequently confirmed their suspicion, and the statements by IBEW International President Edwin D. Hill and IBEW International Vice-President Donald C. Siegel that they were unaware that plaintiff Kamen was infected by HIV at the time his employment by the IBEW was terminated, and never saw the health information allegedly submitted to the IBEW by at least one of the physicians who treat plaintiff Kamen could well be true.

The same is true regarding two other incidents that plaintiff Kamen describes in his affidavit, which he claims revealed to the IBEW that he was infected by HIV at the time his employment was terminated. The first incident, which is described in ¶¶ 29-36 of the Affidavit of Steven A. Kamen, relates to an automobile accident involving plaintiff Kamen that occurred in

---

[12]    Although plaintiff Kamen failed to attach copies of the medical reports and notes, which he claims his physician, Dr. John Rocchi, sent to the IBEW, defendant IBEW assumes that the information plaintiff Kamen refers to is the same medical information that he provided to the IBEW on May 1, 2007 as part of Plaintiff's Rule 26(a) (1) Initial Discovery Disclosures. These medical records appear in the record as Exhibit No. 20 attached to the transcript of plaintiff Kamen's November 28, 2007 deposition, which is designated as Document # 30-4.

October 2004. Plaintiff Kamen asserts that the IBEW obtained his medical records from his primary care physician, Dr. John Rocchi after plaintiff Kamen authorized release in conjunction with his application for workers' compensation benefits. Kamen Aff. at ¶¶32-34. Once again, without attaching copies of the medical records allegedly released to the IBEW as a result of this incident, plaintiff Kamen asserts: "These records specifically included references to my various medical problems, my treatments, and the fact that I had been diagnosed with HIV." *Id.* at ¶ 35. Plaintiff Kamen then states that IBEW International Vice-President Donald C. Siegel "has admitted he saw these records before he recommended [plaintiff Kamen] be terminated as of November 30, 2004." *Id.* at ¶ 36.

However, the medical records concerning plaintiff Kamen, which were provided to Vice-President Siegel in October 2004, do not contain any information that would lead a reasonable person to conclude or even suspect that plaintiff Kamen was infected by HIV. These documents and others that were provided to Vice-President Siegel are appended to the Siegel Supp. Dec. as Exhibit No. 1, which is attached hereto. Mr. Siegel describes in his supplemental declaration how he obtained possession of this medical information about plaintiff Kamen and that it consists, *inter alia*, of a copy of Dr. Rocchi's notes concerning his examination of Mr. Kamen on October 19, 2004 after he was involved in an automobile accident a few days earlier and a note signed by Dr. Rocchi dated October 19, 2004, which stated: "Excuse from work 10/15-1025/04 due to injury." Siegel Supp. Dec. at ¶¶ 13-16 and Exhibit No. 1 attached thereto; *see also* Lee Dec. at ¶¶ 14-16 and Exhibit No. 1 attached thereto (corroborates Siegel Supp. Dec.).

Vice-President Siegel's supplemental declaration further states that he has never seen any other medical information about plaintiff Kamen other than Dr. Rocchi's notes concerning

plaintiff Kamen's October 19, 2004 office visit and that he saw nothing in those notes, which indicated that plaintiff Kamen had been diagnosed with HIV. Siegel Supp. Dec. at ¶¶ 17-18.[13/]

The second incident, which is described in his affidavit, which plaintiff Kamen claims revealed to the IBEW that he was infected by HIV at the time his employment was terminated, relates to Vice-President Siegel's discussion in his initial declaration filed in this case about his exasperation concerning what he considered to be plaintiff Kamen's lack of responsiveness to his requests for information. Siegel Dec. at ¶¶ 71-73 (Document # 26-4). Mr. Siegel acknowledged that he requested the IBEW Information Technology Department "to determine whether Mr. Kamen's laptop computer was operating." *Id.* at ¶ 72. He further stated that the IBEW Information Technology Department subsequently informed him that someone had accessed plaintiff Kamen's IBEW-provided electronic mail account on October 14, 2004, however, Mr. Siegel asserted that plaintiff Kamen never responded to his October 5, 2004 request for his Per Capita and LM-2 Reporting Form by electronic mail or any other means. *Id.* at ¶ 73.

Plaintiff Kamen seized upon Vice-President Siegel's statements and declares: "I know that someone at IBEW accessed my e-mail account on my laptop computer in October 2004." Kamen Aff. at ¶ 37. He also says: "My e-mails included discussion about my HIV status with my sisters." *Id.* at ¶ 38. The inference of these statements is that someone in the IBEW Information Technology Department read plaintiff Kamen's electronic mail messages to his sisters in which

---

[13/]    Vice-President Siegel acknowledged earlier in his supplemental declaration that plaintiff Kamen had sent him copies of two notes prepared by Dr. Rocchi several years ago concerning the status of his health, which are dated March 11, 2004 and April 2, 2004. Siegel Supp. Dec. at ¶¶ 7-9 (referring to the Siegel Dec. (Document # 26- 4) at ¶¶ 30, 32, 38-40, 44, and 46-52 and Exhibit Nos. 15 & 17 attached thereto. In addition, Vice-President Siegel describes how counsel for defendants IBEW and Hill showed him the medical information about plaintiff Kamen, which is attached to the transcript of the November 28, 2007 deposition of Steven A. Kamen in the above-entitled case (Document # 30-4 at pages 128-196) as Exhibit No. 20, and asked him whether he had ever seen any of the notes prepared by Dr. Rocchi concerning plaintiff Kamen's office visits in 2004 that appear in Exhibit No. 20. Siegel Supp. Dec. at ¶¶ 10-11.

he allegedly discussed the fact that he was infected by HIV and/or was being treated for HIV infection.

However, plaintiff Kamen once again jumps to an unsubstantiated conclusion. In fact, the IBEW Information Technology Department simply reviewed the IBEW's Microsoft Exchange System Manager, which displays the most recent electronic mail activity in each electronic mail box account assigned to IBEW officers, employees, and representatives, including plaintiff Kamen's electronic mail box account. Declaration of Darren DeMarco at ¶ 7, which is attached hereto. The IBEW Information Technology Department reported to Vice-President Siegel that there had been activity in plaintiff Kamen's electronic mail box account thereby indicating not only that it was operating but also that plaintiff Kamen's IBEW-provided laptop computer was operating. *Id.* at ¶¶ 12 & 14. Notwithstanding plaintiff Kamen's suspicion or belief that Vice-President Siegel's inquiry resulted in eavesdropping by IBEW representatives on the content of plaintiff Kamen's electronic mail messages to his sisters, no IBEW representative or employee read any of the messages in his electronic mail box. *Id.* at ¶ 13.

Thus, contrary to plaintiff Kamen's accusations, there is no evidence in the record that supports plaintiff Kamen's assertions that the IBEW was made aware in 2004 that he was infected by HIV. Moreover, even if such information was made available to IBEW representatives, nevertheless there is a gap in the Affidavit of Steven A. Kamen that renders such evidence insufficient to create a genuine issue of material fact as to whether IBEW International President Edwin D. Hill, the sole person in the IBEW who has the authority to terminate the employment of an IBEW International Representative, was made aware that plaintiff Kamen was infected by HIV at the time his employment was terminated. Specifically, the Affidavit of Steven A. Kamen fails to present any evidence that rebuts the statements by President Edwin D. Hill that

he was unaware that plaintiff Kamen had contracted HIV and never saw any of the information allegedly submitted to the IBEW that indicates in some way that plaintiff Kamen might have contracted HIV or indeed had contracted that disease.

Consequently, summary judgment should be granted to defendant IBEW on plaintiff Kamen's claim that his employment was unlawfully terminated in violation of the ADA because of his alleged disability based on being infected by HIV. *See Celotex*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Similarly, plaintiff Kamen's claims that defendant IBEW terminated his employment because of its alleged unwillingness to accommodate plaintiff Kamen's supposedly known disability and his claim that he was fired because he was perceived as being disabled on account of being infected by HIV should be dismissed inasmuch as there is not even a scintilla of evidence that anyone associated with the IBEW, and certainly not IBEW International President Edwin D. Hill, was aware that plaintiff Kamen might possibly be infected by HIV or that he was, in fact, infected by that disease.

**B. PLAINTIFF KAMEN CAN NOT SUSTAIN HIS BURDEN OF PRESENTING A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HE WAS DISABLED UNDER THE LAW AT THE TIME HIS EMPLOYMENT WAS TERMINATED.**

Another essential element of a *prima facie* case of unlawful discrimination based on disparate treatment in this case is that plaintiff Kamen must be able to prove by a preponderance of the evidence that he was "disabled" within the meaning of that term under the ADA. Defendant IBEW asserted in defendants' Motion for Summary Judgment that there is an absence

of evidence in the record to support plaintiff Kamen's claim that he was "disabled" at the time his employment by the IBEW was terminated. Defendants' Mem. at 17-22.

Defendant IBEW made a reasonable effort, using the normal tools of discovery, to discover whether plaintiff Kamen has enough evidence to carry his burden of persuasion at trial that he was disabled at the time his employment by the IBEW was terminated. Defendant IBEW submitted a series of interrogatories to plaintiff Kamen on August 23, 2007, which is attached to Defendants' Motion for Summary Judgment as Document # 26-8.

IBEW Interrogatory No. 6 asked plaintiff Kamen to "[s]tate each and every fact, which supports the allegation in Paragraph No. 24 of the Amended Complaint that "[your] medical conditions significantly limit [your] ability to perform major life activities . . . as compared to the average person." IBEW Interrogatory No. 6 further requested the names, addresses, and telephone numbers of each person who has knowledge of those facts; and asked plaintiff Kamen to identify each document that he believes supports such fact(s). Plaintiff Kamen responded to the IBEW's interrogatories on October 15, 2007, which is attached to Defendants' Motion for Summary Judgment as Document # 26-9. Specifically, plaintiff Kamen answered IBEW Interrogatory No. 6 with the simple response: "Review medical history."

Accordingly, defendants counsel attempted to question plaintiff Kamen during his deposition on November 28, 2007 about his answer to IBEW Interrogatory No. 6, the transcript of which is attached to Plaintiff's Mem. and designated as Document # 30-4 (pages 108, line 24 through 116, line 13). During this questioning, defendants' counsel referred plaintiff Kamen to IBEW Interrogatory No. 6 and read it aloud as well as his answer to the interrogatory (page 110, lines 10-25). Counsel then asked plaintiff Kamen what major life activities had been substantially limited by *any* of his various medical conditions. *Id.* at page 111, line 19. Plaintiff

Kamen responded that "[s]leeping has been an issue for a number of years. It's caused a number of my heart conditions." *Id.* at page 112, lines 3-4.

Plaintiff Kamen described his medical condition as sleep apnea. *Id.* at page 112, lines 13-15. He explained:

> That [sleep apnea] creates weakening in my heart, ongoing issue and was an ongoing issue in 2004 during the time I was out unless I wasn't sleeping at all because of pain; engaging in strenuous activities, because due to the HIV I'm susceptible to colds, flus (sic), pneumonias, doing anything strenuous weakens the immune system, and it could cause me to be susceptible to other things which a normal individual can easily, you know, fight off. I think that's about it.

*Id.* at page 112, lines 17-25.

Defendants' counsel then asked plaintiff Kamen whether a physician had ever told him whether sleep apnea is attributable to being infected by HIV. Plaintiff Kamen candidly answered that no doctor had ever told him that sleep apnea is caused by or related to HIV and he acknowledged that he has suffered from sleep apnea for many years before he became infected with HIV. *Id.* at page 113, lines 1-6. In fact, review of the medical records provided to defendant IBEW, which are attached to the transcript of plaintiff Kamen's deposition as Exhibit No. 20, reveal that his primary care physician, Dr. John Rocchi, noted as early as September 18, 1997 that he found plaintiff Kamen to have sleep apnea.

Thus, the only major life activity, which plaintiff Kamen described as having been substantially limited is sleeping. However, it appears that this major life activity has been limited for plaintiff Kamen for many years on account of sleep apnea, which by his own admission has no connection to being infected by HIV. As such, plaintiff Kamen does not have enough evidence of the essential element of his ADA claim that he was disabled by HIV at the time the IBEW terminated his employment to carry his ultimate burden of persuasion at trial. Consequently, under the analytical framework in *Celotex*, summary judgment should be granted

to the IBEW on Count I because plaintiff Kamen has failed to create a genuine issue of material fact. *Celotex*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

**CONCLUSION**

For each of the foregoing reasons set forth herein, as well as the reasons set forth in defendants Memorandum of Points and Authorities in Support of Motion for Summary Judgment, the Court should grant defendants' Motion for Summary Judgment and dismiss each of the remaining claims in the Amended Complaint because none states a claim upon which relief can be granted.

Respectfully submitted,

_____
TERRY R. YELLIG (D.C. Bar No. 946095)

SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 SEVENTH STREET, N.W.
SUITE 1000
WASHINGTON, D.C. 20001
TELEPHONE NO. (202) 785-9300

Attorneys for Defendants International
Brotherhood of Electrical Workers, AFL-CIO,
and Edwin D. Hill

Dated: April 17, 2008.