UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN A. KAMEN )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL BROTHERHOOD )<br>OF ELECTRICAL WORKERS, AFL-CIO and )<br>EDWIN D. HILL, an individual, )<br>)<br>    Defendants. )<br>_____) | Case No. 1:06CV01063 (RMC) |

### DECLARATION OF LINDELL K. LEE

I, LINDELL K. LEE, make this declaration based on personal knowledge:

1. I am International Secretary-Treasurer of the International Brotherhood of Electrical Workers, AFL-CIO (hereafter "IBEW").

2. One of my responsibilities as IBEW International Secretary-Treasurer is to serve as the Administrator of the IBEW Employees Welfare Benefit Plan ("Plan").

3. CareFirst, Inc. (hereafter "CareFirst") is the not-for-profit, non-stock parent company of CareFirst of Maryland, Inc. and Group Hospitalization and Medical Services, Inc., affiliates that do business as CareFirst BlueCross BlueShield.

4. CareFirst and the International Brotherhood of Electrical Workers (hereafter "IBEW") are parties to an Administrative Services Only (hereafter "ASO") contract under which CareFirst administers the Plan.

5. Under the ASO contract, the IBEW assumes the financial risk of paying for the Plan participants' health care benefits not to exceed a predetermined amount per Plan participant,

which is defined as the "Specific Stop-Loss Level," and purchases health care insurance coverage from CareFirst for the cost of benefits that exceed the Specific Stop-Loss Level; and CareFirst, as the third-party administrator, performs the ministerial functions necessary to administer the Plan, such as processing claims, applying plan eligibility rules, communicating with Plan participants, and calculating benefits.

6. The Plan provides that claims for payment of health care benefits provided to Plan participants and their dependants can be submitted to CareFirst by either the Plan participant or his/her health care provider for processing and payment.

7. The IBEW makes weekly payments to CareFirst for its administrative services, which are based on the estimated amount paid for Plan participants' health care benefits, less any claims in excess of the "Specific Stop-Loss Level," plus a non-claims experience charge based on the average weekly amount paid for the previous six months, which is known as the "Paid Experience."

8. Each month, CareFirst and the IBEW reconcile the Paid Experience for the prior month with the sum of the weekly payments received by CareFirst as follows: (1) If the IBEW's weekly payments for the previous month are greater than the Paid Experience for the same month, one or more of the IBEW's weekly payments for the following month will be decreased by the amount of the difference; or (2) If the IBEW's weekly payments for the previous month are less than the Paid Experience for the same month, one or more of the IBEW's weekly payments for the following month will be increased by the amount of the difference.

9. This reconciliation process does not require or provide that the IBEW will receive underlying health information pertaining to any Plan participant or his/her dependents.

10. Moreover, the IBEW does not receive claims for payment of health care benefits from Plan participants and their dependants or from their health care providers.

11. Under the payment system described above, claims for payment of health care benefits provided to Plan participants and their dependants are sent directly to CareFirst and the IBEW does not routinely receive health information pertaining to any Plan participant or his/her dependants, nor is there any reason for the IBEW to receive such information.

12. Hence, IBEW officers, representatives, and agents seeking health information about Plan participants and their dependants would have to submit a request to CareFirst or the Plan participants' health care providers because the IBEW does not receive claims for payment of health care benefits provided to Plan participants and their dependants or have any other reason having access to such information..

13. I have read the Affidavit of Steven A. Kamen filed in support of Mr. Kamen's Opposition to Defendants' Motion for Summary Judgment in the above-referenced case (hereafter "Kamen Aff."), which I have been advised was docketed as Document # 30-10.

14. Specifically, Mr. Kamen states in ¶¶ 25-28 of his affidavit that he knows that the IBEW received information about his medical condition in 2004 because the "IBEW is self-insured" and so "[his] doctor was sending the medical reports directly to the IBEW offices in D.C." Kamen Aff. at ¶ 27.

15. Accordingly, I asked the IBEW staff to examine IBEW records in order to determine whether one or more of Mr. Kamen's physicians may have mistakenly submitted claims forms and/or physician statements, notes or reports and/or laboratory reports of test results, etc. to the IBEW.

16. That search failed to produce any such information about Mr. Kamen's medical condition in 2004 other than two pages of notes prepared by Dr. John R. Rocchi concerning his examination of Mr. Kamen on October 19, 2004, and a note prepared by Dr. Rocchi, dated October 19, 2004, which instructs or asks that Mr. Kamen should be excused from work from October 16, 2004 through October 25, 2004 on account of injuries he suffered in an automobile accident, both of which were submitted to the IBEW by either Mr. Kamen or Dr. Rocchi in support of Mr. Kamen's application for workers' compensation. *See* Exhibit No. 1 attached hereto.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
LINDELL K. LEE

Dated: April 16, 2008.

**William A. DiCuccio M.D. & Associates**
480 E. Jefferson Street Butler, PA 16001
724-282-1530 Fax

October 19, 2004

Post-it® Fax Note  7671  Date 10/21/04  # of pages ▶ 3
To: Janice
Co./Dept.
Phone #
Fax # 202 728 6262

From: Myriam
Co. H Paul Tanklu
Phone # 412 718 4048
Fax # 412 738 4041

**10/19/2004 - Office Visit: Follow-up Visit**
Provider: John R. Rocchi MD
Location of Care: William A. DiCuccio M.D. & Associates

## OFFICE VISIT

### History of Present Illness
History from: patient
Chief Complaint: f/u
History of Present Illness: Car accident on Thursday - follow up to ER visit - Whip lash, back pain and lt shoulder pain Neck and shoulder still bother him. Was rear ended while at a stop. Neck and left shoulder still sore. Had many xrays in er. Xrays with some degenerative changes of neck and lumbar spine.

### Past, Family, and Social History
Past History (reviewed - no changes required): 1 a fib
2. sleep apnea
3. hypercholesterolemia
4. viral meningitis, 3/04
Social History (reviewed - no changes required): divorced

### Risk Factors

### Review of Systems
General: Denies fevers, chills, sweats, anorexia, fatigue, malaise, weight loss.
Cardiovascular: Denies chest pains, palpitations, syncope, dyspnea on exertion, orthopnea, PND, peripheral edema.
Respiratory: Denies cough, dyspnea, excessive sputum, hemoptysis, wheezing.
Musculoskeletal: Complains of see HPI, back pain, stiffness.

### Vital Signs
Height: 76 inches
Weight: 284 pounds
Pulse rate: 70
Respirations: 16
Blood Pressure: 120/72 mm Hg

### Physical Exam
General appearance: well nourished, well hydrated, no acute distress

### Respiratory
Respiratory effort: no intercostal retractions or use of accessory muscles
Auscultation: no rales, rhonchi, or wheezes

### Cardiovascular
Auscultation: S1, S2, no murmur, rub, or gallop
Periph. circulation: no cyanosis, clubbing, edema, or varicosities

### Gastrointestinal
Abdomen: soft, non-tender, no masses, bowel sounds normal

**EXHIBIT No. 1**

**William A. DiCuccio M.D. & Associates**
480 E. Jefferson Street Butler, PA 16001
724-282-1530 Fax

October 19, 2004
Page 2
Chart Document



Liver and spleen: no enlargement or nodularity

### Musculoskeletal
Head and neck: tender over lateral left neck muscles Tender over upper left anterior chest and colar bone Slight decrease in rom of neck. NO real bruising over this area.

### Assessment & Plan
Assessment & Plan: neck, left upper chest and shoulder contusion - continue analgesia prn.

**Problem List:**
ATRIAL FIBRILLATION (ICD-427.31)
SKIN RASH (ICD-782.1)
ANXIETY DEPRESSION (ICD-300.4)
CORONARY ARTERY DISEASE (ICD-414.00)
HYPERTENSION (ICD-401.9)
HYPERLIPIDEMIA (ICD-272.4)
RIB PAIN, LEFT SIDED (ICD-848.3)
TONSILLITIS, ACUTE (ICD-463)
ABDOMINAL PAIN, GENERALIZED (ICD-789.07)
NECK PAIN (ICD-723.1)

**Current Allergies:**
PENICILLIN
SULFA
VERAPAMIL
MORPHINE

**Current Medications:**
LIPITOR 10 MG TAB (ATORVASTATIN CALCIUM) 1 po qd
AVAPRO 150 MG TAB (IRBESARTAN) q d.
LOPRESSOR 50 MG TAB (METOPROLOL TARTRATE) b.i.d.
COUMADIN 7.5 MG TAB (WARFARIN SODIUM) as directed
ZOLOFT 50 MG TAB (SERTRALINE HCL) 1 po qd
TIKOSYN 250 MCG CAP (DOFETILIDE) 1 po q 12 hrs
VICODIN ES 7.5-750 MG TAB (ACETAMINOPHEN-HYDROCODONE) 1 po q6hrs prn
AMBIEN 5 MG TAB (ZOLPIDEM TARTRATE) 1 po qhs prn insomnia
ZOLOFT 100 MG TAB (SERTRALINE HCL) 1 po qd
VALIUM 10 MG TABS (DIAZEPAM) 1 po qd prn

**New Orders:**
Added new Service order of Est 99213 (CPT-99213) - Signed

Signed by John R. Rocchi MD on 10/19/2004 at 3:39 PM

**William A. DiCuccio M.D. & Associates**
480 E. Jefferson Street   Butler, PA 16001
724-282-1530

Steven A Kamen

Excuse from work 10/15 - 10/25/04 due to injury.

_____
John R. Rocchi MD                                October 19, 2004