## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN A. KAMEN | ) | **Case No. 1:06CV01063 (RMC)** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRICAL WORKERS, AFL-CIO and** | ) | |
| **EDWIN D. HILL, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF STEVEN A. KAMEN

### INTRODUCTION

Plaintiff Steven A. Kamen submitted his own affidavit in opposition to the Motion for Summary Judgment filed by the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"). *See* Affidavit of Steven A. Kamen (Document # 30-10) ("Kamen Affidavit" or Kamen Aff."). The IBEW has moved to strike ¶¶ 12, 13, 22, 23, 24, 25, 26, 27, 34, and 38 from the Kamen Affidavit

Plaintiff Kamen opposes most of the IBEW's Motion to Strike. *See* Plaintiff's Memorandum in Opposition to Defendant IBEW's Motion to Strike ("Plaintiff's Mem."). That is, plaintiff Kamen has stipulated to striking ¶¶ 13 and 38 in their entirety. *See* Plaintiff's Mem. at 2, 5. Additionally, Plaintiff Kamen has stipulated to the Court striking portions of ¶¶ 26 and 27, which the IBEW moved to strike. *See* Plaintiff's Mem. at 4, 5. Plaintiff Kamen argues, however, that ¶¶ 12, 22, 23, 24, 25, and 34 are proper and, therefore, should not be struck from the Kamen Affidavit As explained below, the Court should reject plaintiff Kamen's arguments.

Moreover, the Court should grant the IBEW's motion to strike ¶¶ 12, 23, 24, and 34 pursuant to Local Rule 7(b), because plaintiff Kamen failed to respond to the IBEW's arguments that the Court should strike the statements in these paragraphs because they are based on hearsay. *See* LCvR 7(b).

## ARGUMENT

**I.    THE COURT SHOULD STRIKE ¶¶ 12, 22, 23, 24, 25, AND 34 OF THE KAMEN AFFIDAVIT BECAUSE THESE PARAGRAPHS ARE NOT BASED ON PERSONAL KNOWLEDGE.**

Plaintiff Kamen's principal argument as to why ¶¶ 12, 22, 23, 24, 25, and 34 should not be struck from his affidavit is that "Kamen has satisfied the requirement in his Affidavit that his statements be based either on personal knowledge *or* on competent evidence of record." *See* Plaintiff's Mem. at 2 (emphasis added). Thus, Plaintiff Kamen claims that an affidavit executed in support of an opposition to a motion for summary judgment may be based on *either* personal knowledge or competent record evidence. This is simply incorrect.

Nothing in the text of Rule 56(e), Fed. R. Civ. P., or in case law provides support for plaintiff Kamen's claim that an affidavit may be based on competent record evidence. The text of Rule 56(e) provides that an affidavit submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), Fed. R. Civ. P. Moreover, this Court has explained that Rule 56(e)'s "'requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented.'" *Elliott v. Federal Bureau of Prisons*, 2006 U.S. Dist. LEXIS 94342, *19 (D.D.C. Oct. 17, 2006) (*quoting Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)).

- 2 -

Here, plaintiff Kamen is attempting to circumvent the personal knowledge requirement in Rule 56(e) by claiming it is permissible for him to base statements in his affidavit on competent evidence of record. Under Rule 56(e) and this Court's precedent, the Court should reject this argument and strike from the Kamen Affidavit ¶¶ 12, 22, 23, 24, 25, and 34 because they are not based on the affiant's personal knowledge.

Moreover, the purpose of an affidavit must be to "set out facts that would be admissible in evidence." 56(e), Fed. R. Civ. P. The objected-to portions of the Kamen Affidavit, however, do not set forth admissible facts. Instead, ¶¶ 12, 22, 23, 24, 25, and 34 of the Kamen Affidavit are essentially an attempt by plaintiff Kamen to summarize, in a manner favorable to him, the facts, which he alleges are already in evidence. Indeed, plaintiff Kamen essentially concedes this point with regard to ¶¶ 12 and 34 when he states in his memorandum that "Kamen is simply restating what is already of record." *See* Plaintiff's Mem. at 2, 5. Restating evidence that is already of record is not a permissible purpose of an affidavit under Rule 56(e). Thus, the Court should strike ¶¶ 12, 22, 23, 24, 25, and 34, which simply restate evidence that is allegedly already in the record.

In addition to rejecting plaintiff Kamen's argument that an affidavit may be based on competent record evidence, which should lead the Court to strike ¶¶ 12, 22, 23, 24, 25, and 34 of the Kamen Affidavit, the Court should reject the following additional arguments presented by plaintiff Kamen in response to the motion to strike ¶ 22.

With regard to ¶ 22, plaintiff Kamen argues that although the "paragraph itself is a conclusory statement, it is based on evidence already of record and already discussed in Plaintiff's Memorandum." (Plaintiff's Mem. at 3). As stated above, the fact that an affiant's statement is based on evidence already of record should not prevent the court from striking the

paragraph because it is not based on personal knowledge.  Plaintiff Kamen also appears to argue that an affidavit may be based on evidence "already discussed in Plaintiff's Memorandum."  This argument must also be rejected.

The purpose of a Rule 56(e) affidavit is to provide factual support for the arguments contained in a party's memorandum in support of or opposition to a motion for summary judgment.  Here, plaintiff Kamen turns this principal on its head, arguing that his memorandum provides factual support for the factual allegations contained in the Kamen Affidavit. Surely plaintiff Kamen cannot base a statement in his affidavit on a statement made in his own memorandum. This would blur the line between argument and fact. Plaintiff Kamen's memorandum may be based on facts contained in the record evidence and in supporting affidavits; however, his affidavit may not be based on facts alleged in his own memorandum. The Court should, therefore, reject plaintiff Kamen's argument that the statement contained in ¶ 22 is permissible because it is based upon evidence "already discussed in Plaintiff's Memorandum."

Plaintiff Kamen also admits that the statement contained in ¶ 22 is conclusory. As discussed in the IBEW's Memorandum in of Points and Authorities in Support of Motion to Strike Portions of the Affidavit of Steven A. Kamen ("IBEW Mem."), a conclusory statement does not satisfy the requirements of Rule 56(e).  *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001) (*citing Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) (explaining that the personal knowledge required by Rule 56(e) "must concern facts as opposed to conclusions, assumptions, or surmise"). Accordingly, the Court should also strike ¶ 22 of the Kamen Affidavit because it merely states a conclusion.

**II.    THERE IS NO EVIDENCE IN THE RECORD OF THIS CASE THAT SUPPORTS PLAINTIFF KAMEN'S CLAIM THAT THE IBEW KNEW HIS DOCTORS SUSPECTED HE HAD CONTRACTED HIV OR THAT THEY HAD CONFIRMED THAT HE HAD CONTRACTED THAT DISEASE.**

Assuming, without admitting that a Rule 56(e) affiant may refer to facts in the record of which he or she lacks any personal knowledge, none of the record evidence cited in the Kamen Affidavit supports his claim in ¶¶ 22, 25, and 34 of his affidavit that the IBEW was aware that his physicians suspected he was infected by the human immunodeficiency virus (HIV) and later confirmed their suspicion "well before" the IBEW terminated his employment. Kamen Aff. at ¶¶ 22, 25, and 34.

Although this assertion lacks any basis in his personal knowledge and is admittedly conclusory, plaintiff Kamen nevertheless contends "that [it] is supported by competent evidence in the record." Plaintiff's Mem. at 3. However, plaintiff Kamen's assertion that the IBEW was aware that he had contracted HIV before it terminated his employment lacks any support in the record evidence in this case and, therefore, is nothing more than theoretical speculation, which will not create a genuine issue of fact that can defeat a motion for summary judgment. *Cf. Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (*citing Pennsylvania Dental Ass'n v. Medical Service Ass'n*, 745 F.2d 248, 262 (3d Cir. 1984), *cert. denied* 471 U.S. 1016 (1985) (patent holder failed to create a genuine issue of material fact because the opinion expressed by its expert witness in a supporting affidavit, which was the only evidence concerning the material fact that the patent holder disputed, was based on facts not in the record).

Nonetheless, plaintiff Kamen, in an apparent attempt to buttress his "belief" that the IBEW was aware that he had contracted HIV before it terminated his employment; states in his affidavit that he "knows" the IBEW received information from his physician. Kamen Aff. at ¶

25. Plaintiff Kamen subsequently explains in his affidavit that he knows the IBEW received information from Dr. Rocchi because he (Mr. Kamen) personally sent notes from Dr. Rocchi to IBEW International Vice-President Donald Siegel. Kamen Aff. at ¶ 26.

There is no dispute that plaintiff Kamen sent copies of two notes prepared by Dr. John R. Rocchi, which are dated March 11, 2004 and April 2 2004, respectively. *See* Declaration of Donald C. Siegel (Document # 26-4) at ¶¶ 47-49 and 52, and Exhibit Nos. 15 and 17 attached thereto. However, there is no reference in either of Dr. Rocchi's notes to the fact that plaintiff Kamen's physicians suspected he had contracted HIV or that tests subsequently confirmed that suspicion.

Plaintiff Kamen then embellishes his affidavit testimony by asserting that he "knows" Dr. Rocchi sent reports directly to the IBEW concerning his medical condition, which "contained direct reference to the fact [that plaintiff Kamen] was suspected of having HIV in March 2004, that tests confirmed HIV in April 2004, and that [he] was being treated for HIV throughout the remainder of 2004." Kamen Aff. at ¶¶ 26-28.  Plaintiff Kamen has since stipulated to striking the statements in paragraphs 26 and 27 of his affidavit that he knows Dr. Rocchi sent his medical reports, which are described in paragraph 28, directly to the IBEW. Plaintiff's Mem. at 4-5. Nonetheless, plaintiff Kamen continues to insist that "competent evidence of record shows" that IBEW International Vice-President Donald C. Siegel has admitted that in October 2004 he received medical reports prepared by Dr. Rocchi, which indicated that plaintiff Kamen was suspected of having contracted HIV in March 2004, that tests confirmed he was infected by HIV in April 2004, and that he was being treated for HIV throughout the remainder of 2004. *Id.*

Specifically, plaintiff Kamen states in his affidavit that he gave Dr. Rocchi written authorization in October 2004 to release to the IBEW information regarding treatment of

plaintiff Kamen for injuries, which he suffered in a work-related automobile accident. Kamen Aff. at ¶¶ 29-33. There is no dispute that Dr. John R. Rocchi submitted to the District of Columbia Government Office of Workers' Compensation a medical report dated October 19, 2004, which he prepared after examining plaintiff Kamen following a traffic accident in which he was involved that occurred on October 14, 2004. *See* Supplemental Declaration of Donald C. Siegel (Document # 32-2) at ¶ 15 and Exhibit No. 1 attached thereto. Moreover, there is no dispute that the IBEW obtained a copy of Dr. Rocchi's October 19, 2004 medical report concerning plaintiff Kamen from the St. Paul Travelers Insurance Companies, Inc. (known since 2007 as the Travelers Companies, Inc.), which is the IBEW's workers' compensation insurance carrier, on or about October 21, 2004, or that Dr. Rocchi's October 19, 2004 medical report about plaintiff Kamen was conveyed to IBEW International Vice-President Siegel on October 22, 2004. *Id.*

Plaintiff Kamen claims in his affidavit that the medical records provided to the IBEW in October 2004 "included references to [his] various medical problems, [his] treatments, and the fact [that he] had been diagnosed with HIV." Kamen Aff. at ¶ 35. Notwithstanding the IBEW's disagreement as to whether it indicates in any way that plaintiff Kamen had been diagnosed as having contracted HIV, Dr. Rocchi's October 19, 2004 medical report about plaintiff Kamen's medical condition speaks for itself and, therefore, the IBEW did not move to strike the final phrase of paragraph 35 of the Kamen Affidavit inasmuch as it appeared that plaintiff Kamen was simply describing what he believes is contained in Dr. Rocchi's October 19, 2004 medical report.[1]

---

[1]      Defendant IBEW wishes to reserve the right to move to strike the final phrase in ¶ 35 of the Kamen Affidavit at a later time, if necessary.

However, plaintiff Kamen has now made it clear that his reference to "these records" in paragraph 35 of his affidavit is not limited to just Dr. Rocchi's October 19, 2004 medical report. Plaintiff's Mem. at 4. Instead, plaintiff Kamen asserts that record evidence in this case supports his claim that IBEW Vice-President Donald C. Siegel has admitted "that IBEW had received certain medical documentation in October 2004 which information included reference to HIV." *Id.* In particular, plaintiff Kamen claims that portions of Vice-President Siegel's deposition testimony, the IBEW's Answers to Plaintiff's Requests for Admissions and the Medical Reports of Dr. Rocchi from March 2004 through November 1004, all of which is in the record of this case, proves that the IBEW was aware prior to termination of plaintiff Kamen's employment on December 8, 2004 that his physicians first suspected he had contracted HIV and later confirmed that suspicion. Plaintiff's Mem. at 5.

Nevertheless, contrary to plaintiff Kamen's characterization, none of the record evidence in this case that he cites supports his assertion that the IBEW knew about his alleged disability on account of HIV infection prior to terminating his employment. Regarding deposition testimony by IBEW Vice-President Siegel in the record of this case, plaintiff Kamen maintains that Mr. Siegel admitted on pages 59 and 60 of the transcript of his deposition that he received information in October 2004, which revealed that plaintiff Kamen had contracted HIV or was suspected of having contracted HIV. Notwithstanding plaintiff Kamen's characterization, review of the transcript of Vice-President Siegel's deposition testimony indicates that plaintiff Kamen's counsel was questioning Vice-President Siegel about the documents that he received on October 22, 2004 under a fax cover page from William Bohné, the IBEW's Director of Personnel at the time. *See* Deposition of Donald C. Siegel attached to plaintiff Kamen's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (Document # 30-5)

- 8 -

at page 57, line 17, through page 60, line 16. These are the same documents that Vice-President Siegel acknowledged receiving from Mr. Bohné in his supplemental declaration (Document # 32-2) at ¶ 15 and Exhibit No. 1 attached thereto. There is nothing in these documents that indicates plaintiff Kamen's physicians even suspected he had contracted HIV.

Plaintiff Kamen also claims that the IBEW admitted in its Answers to Plaintiff's Requests for Admissions Nos. 65 and 66 that it was aware that plaintiff Kamen's physicians either suspected or had confirmed that he had contracted HIV prior to terminating his employment on December 8, 2004. Plaintiff's Mem. at 5. Like his characterization of Vice-President Siegel's deposition testimony, plaintiff Kamen's characterization of the IBEW's Answers to his Requests for Admissions Nos. 65 and 66 is inaccurate to say the least.

Plaintiff's Request for Admission No. 65 asked the IBEW to admit:

> As of October 22, 2004, Vice-President Siegel was in possession of medical documentation showing Kamen suffered from atrial fibrillation, anxiety, depression, coronary artery disease, hyperlipidemia, hypertension and abdominal pain.

Defendants' Answers to Plaintiff's Request for Admissions (Document # 30-3) at 25.

The IBEW responded to Plaintiff's Request for Admission No. 65 as follows:

> 65.    Defendants admit that on October 22, 2004, IBEW International Vice-President Donald C. Siegel received an unsolicited copy of a report prepared by Steven A. Kamen's primary care physician, Dr. John R. Rocchi, in support of Mr. Kamen's claim for workers' compensation filed with the District of Columbia Government Office of Workers' Compensation resulting from his absence from work caused by injuries sustained in an automobile accident, which occurred on October 14, 2004 in Butler County, Pennsylvania. Dr. Rocchi's report included a "Problem List" of the following medical conditions: atrial fibrillation, skin rash, anxiety, depression, coronary artery disease, hypertension, hyperlipidemia, rib pain (left sided), tonsillitis, acute, abdominal pain generalized, and neck pain.

*Id.*

In addition, Plaintiff's Request for Admission No. 66 asked the IBEW to admit:

As of October 22, 2004, Vice President Siegel's office was in possession of medical documentation showing Kamen suffered from atrial fibrillation, anxiety, depression, coronary artery disease, hyperlipidemia, hypertension and abdominal pain.

*Id.*

The IBEW responded to Plaintiff's Request for Admission No. 65 as follows:

66.    Defendants admit that on October 22, 2004, IBEW International Vice-President Donald C. Siegel received an unsolicited copy of a report prepared by Steven A. Kamen's primary care physician, Dr. John R. Rocchi, in support of Mr. Kamen's claim filed with the District of Columbia Government Office of Workers' Compensation resulting from his absence from work caused by injuries sustained in an automobile accident, which occurred on October 14, 2004 in Butler County, Pennsylvania. Dr. Rocchi's report included a "Problem List" of the following medical conditions: atrial fibrillation, skin rash, anxiety, depression, coronary artery disease, hypertension, hyperlipidemia, rib pain (left sided), tonsillitis, acute, abdominal pain generalized, and neck pain.

*Id.* at 25-26.

Neither of these requests for admissions asks the IBEW to admit that it was aware at the time it terminated plaintiff Kamen's employment on December 8, 2004 or at any time prior to that date that plaintiff Kamen's physician suspected he was infected by HIV or knew that he had contracted that disease. Similarly, and more importantly, there is nothing in the IBEW's answers to these requests for admissions, which indicates that the IBEW was aware at the time it terminated plaintiff Kamen's employment on December 8, 2004 that plaintiff Kamen's physician suspected he had been infected by HIV or knew that he had contracted that disease.

Finally, plaintiff Kamen claims that the medical reports about him prepared by Dr. Rocchi from March 2004 through November 2004, which are part of an exhibit attached to the transcript of plaintiff Kamen's deposition transcript, prove that the IBEW was aware at the time it terminated plaintiff Kamen's employment on December 8, 2004 that his physician suspected he had been infected by HIV or knew he had contracted that disease. Plaintiff's Mem. at 5. There

is no dispute that certain of his medical reports concerning plaintiff Kamen indicate that Dr. Rocchi and at least one other physician treating plaintiff Kamen suspected he might have contracted HIV and at least one other report indicates that plaintiff Kamen had contracted HIV. *See* Exhibit No. 20 attached to Deposition of Steven A. Kamen (Document # 30-4) (Chart Document dated March 17, 2004 prepared by Dr. John R. Rocchi at 1 (notes that Dr. McGill was concerned that plaintiff Kamen's symptoms "may be consistent with primary HIV")); (Chart Document dated March 25, 2004 prepared by Dr. John R. Rocchi at 2 (notes under heading "Assessment & Plan" "Awaiting viral lode HIV")); and (Chart Document dated August 3, 2004 prepared by Dr. John R. Rocchi at 1 (notes under heading "Assessment & Plan" "HIV+ continue to follow with Dr. McGill, will vaccinate hepB and pneumovax")).

Certainly, there would be a genuine issue of material fact in dispute concerning whether the IBEW knew plaintiff Kamen had contracted or was suspected of having contracted HIV when it terminated his employment on December 8, 2004 if there was record evidence that tends to prove that this information was available to the IBEW prior to that date. However, there is no record evidence in this case that any of *these* medical reports prepared by Dr. Rocchi was in the possession of any officer, representative or agent of the IBEW prior to or at the time plaintiff Kamen's employment by the IBEW was terminated.

Thus, even assuming without admitting that a Rule 56(e) affiant may refer to facts in the record of which he or she lacks any personal knowledge, none of the record evidence cited in the Kamen Affidavit supports his claim that the IBEW was aware that his physicians suspected he was infected by HIV and that they subsequently confirmed their suspicion "well before" the IBEW terminated his employment. Therefore, the Court should strike ¶¶ 22, 25, and 34 because they are not based on personal knowledge *or* competent evidence of record.

- 11 -

**III.    THE COURT SHOULD STRIKE ¶¶ 12, 23, 24, 25, AND 34 OF THE KAMEN AFFIDAVIT BECAUSE PLAINTIFF KAMEN HAS CONCEDED THAT THESE PARAGRAPHS CONTAIN HEARSAY EVIDENCE.**

The IBEW also argues that the Court should strike ¶¶ 12, 23, 24, 25, 26, 27, and 34 of the Kamen Affidavit because each one contains inadmissible hearsay evidence. Plaintiff Kamen has stipulated to the Court striking ¶¶ 26 and 27. With respect to the remaining paragraphs, plaintiff Kamen failed to respond to the IBEW's argument that these statements contain hearsay evidence. Pursuant to Local Rule 7(b), plaintiff Kamen, by failing to respond to the IBEW's hearsay arguments, has conceded that these paragraphs contain hearsay evidence, which should be struck from his affidavit.

Local Rule 7(b) provides that "an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." LCvR 7(b). Pursuant to Local Rule 7(b), this Court has held that "where a party files an opposition to a motion and addresses only certain arguments raised by the movant, this court routinely treats the unaddressed arguments as conceded pursuant to Local Rule 7(b)." *Institute for Policy Studies v. U.S. Central Intelligence Agency*, 246 F.R.D. 380, 386 (D.D.C. 2007). *See also Elliott v. U.S. Dept. of Justice*, No. 07-cv-205, 2007 U.S. Dist. LEXIS 79904 (D.D.C. Oct. 30, 2007); *Slovinec v. Am. Univ.*, 520 F. Supp. 2d 107 (D.D.C. 2007); *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007); *Watts v. U.S.*, No. 06-cv-1531, 2007 U.S. Dist. LEXIS 71311 (D.D.C. Sept. 26, 2007); *Buggs v. Powell*, 293 F. Supp. 2d 135 (D.D.C. 2003).

Here, the IBEW has argued that the Court should strike ¶¶ 12, 23, 24, 25, and 34 of the Kamen Affidavit because the statements contained therein are not based on hearsay evidence rather than personal knowledge. *See* Defendant's Mem. at 4-5, 7, 8, 9-10, 13-14. Plaintiff

Kamen has failed to address the IBEW's arguments that ¶¶ 12, 23, 24, 25, and 34 of the Kamen Affidavit contain hearsay evidence. Instead, plaintiff Kamen's arguments focus exclusively on the IBEW's allegation that his statements are not based on personal knowledge. Therefore, the Court should treat the IBEW's hearsay arguments as conceded inasmuch as plaintiff Kamen has failed to challenge them, and strike ¶¶ 12, 23, 24, 25, and 34 of the Kamen Affidavit.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in the Defendant's Memorandum in of Points and Authorities in Support of Motion to Strike Portions of the Affidavit of Steven A. Kamen, the Court should strike ¶¶ 12, 13, 22, 23, 24, 25, 26, 27, 34, and 38 of the Kamen Affidavit

Respectfully submitted,

TERRY R. YELLIG (D.C. Bar No. 946095)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Telephone No. (202) 785-9300

Attorneys for Defendants International Brotherhood of
Electrical Workers, AFL-CIO, and Edwin D. Hill

Dated: May 12, 2008.